SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
RONALD J. HOLLAND Cal. Bar No. 148687
rholland@sheppardmullin.com
ELLEN M. BRONCHETTI, Cal. Bar No. 226975
ebronchetti@sheppardmullin.com
PAUL S. COWIE, Cal. Bar No. 250131
pcowie@sheppardmullin.com
Four Embarcadero Center, 17th Floor
San Francisco, California  94111-4109
Telephone:   415-434-9100
Facsimile:   415-434-3947

Attorneys for Swift Transportation Co.,
of Arizona LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN BURNELL, GILBERT SAUCILLO, and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> SWIFT TRANSPORTATION CO., OF ARIZONA LLC, <br><br> Defendant. | Case No. EDCV10-00809-VAP (OPx) <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT SWIFT TRANSPORTATION CO. OF ARIZONA, LLC'S MOTION FOR JUDGMENT ON THE PLEADINGS AS TO MINIMUM WAGE – FAAAA PREEMPTION** <br><br> The Hon. Virginia A. Phillips <br><br> Hearing Date:   March 17, 2014 <br> Time:   2:00 PM <br> Courtroom:   2 <br><br> Complaint Filed:   March 22, 2010 <br> Trial Date:   None Set |

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.   INTRODUCTION ..................................................................................... 1

II.  RELEVANT BACKGROUND ................................................................. 2

    A.   Plaintiffs' Claims ........................................................................... 2

    B.   Swift's Operations And The Piece-Rate Compensation System ........... 3

    C.   Procedural Status Of This Action And Meet And Confer Efforts .......... 4

III. LEGAL STANDARD .............................................................................. 5

IV.  ARGUMENT ........................................................................................... 6

    A.   Scope of the FAAAA's Preemption Clause. ..................................... 6

    B.   California Minimum Wage Laws Are Preempted As Applied To Mileage-Based Piece Rate Compensation Systems. ............................ 7

        1.   Plaintiffs' Minimum Wage Claims Are Related To Price .......... 9

        2.   Plaintiffs' Minimum Wage Claims Effect Services .................. 11

        3.   Wage Order 9 Applies Specifically to the Transportation Industry ............................................................................... 12

    C.   California's Minimum Wage Laws, Are Preempted As A Matter of Law ............................................................................................ 12

    D.   Plaintiffs' Derivative Claims are Preempted ................................... 14

V.   CONCLUSION ...................................................................................... 15

SMRH:410444033.4

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF DEFT'S MOTION FOR JUDGMENT ON THE PLEADINGS-FAAAA PREEMPTION

1

## <u>**TABLE OF AUTHORITIES**</u>

2

3

<u>**Page**</u>(s)

4

<u>Federal Cases</u>

5

*Aguiar v. California Sierra Exp., Inc*.
   2:11-CV-02827-JAM, 2012 WL 1593202 (E.D. Cal. May 4, 2012) .......... 13, 14

6

7

*American Trucking Ass'ns, Inc. v. City of Los Angeles,*
   559 F.3d 1046 (9th Cir. 2009) ................................................................... 7

8

9

*Burnham v. Ruan Transportation*, SACV 12-0688 AG ANX
   (C.D. Cal. Aug. 16, 2013) ........................................................... passim

10

11

*Californians for Safe & Competitive Dump Truck Transportation v.
Mendonca*, 152 F.3d 1184, 1189 (9th Cir. 1998) ...................................... 8, 9, 12

12

13

*Campbell v. Vitran Express, Inc.*, 2012 WL 2317233, at *2
   (C.D. Cal. June 8, 2012) ..................................................................... 6, 14

14

15

*Chamberlan v. Ford Motor Co.*
   314 F. Supp. 2d 953, 956 (N.D. Cal. 2004).......................................... 5

16

17

*Cole v. CRST, Inc.*, EDCV 08-1570-VAP OPX, 2012 WL 4479237
   (C.D. Cal. Sept. 27, 2012) ........................................................... 5, 13, 14

18

19

*Dilts v. Penske,* 819 F.Supp.2d 1109 (S.D. Cal. 2011),
   *appeal docketed,* No. 128 (9th Cir. Apr. 18, 2012)............................... 6

20

*Dworkin v. Hustler Magazine, Inc.*
   867 F.2d 1188 (9th Cir. 1989) ........................................................... 5

21

22

*Esquivel v. Vistar Corp.*
   2012 WL 516094 (C.D. Cal. Feb. 8, 2012) ...................................... 6, 14

23

24

*Hishon v. King & Spalding*
   467 U.S. 69, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984) .......................... 5

25

26

*Jasso v. Citizens Telecomms. Co. of Cal., Inc.*
   2007 U.S. Dist. LEXIS 54866, 14 (E.D. Cal. July 30, 2007). .......... 5

27

*Kent v. Daimlerchrysler Corp.*
   200 F. Supp. 2d 1208, 1212 (N.D. Cal. 2002)................................... 5

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Morales v. Trans World Airlines, Inc.*
  504 U.S. 374, 112 S. Ct. 2031, 119 L. Ed. 2d 157 (1992) ...................... 4, 6, 7, 8

*New Hampshire Motor Transport Ass'n v. Rowe*
  448 F.3d 66 (1st Cir. 2006) ............................................................... 7, 13

*Rowe v. New Hampshire Motor Transport Ass'n*
  552 U.S. 364, 128 S. Ct. 989, 169 L. Ed. 2d 933 (2008) ........................... 4, 6, 8

*Wirtz v. Highway Transp., Inc.*, 310 F.2d 643, 644
  (4th Cir. 1962) ....................................................................................... 3

Federal:  Statutes, Rules, Regulations, Constitutional Provisions

The Airline Deregulation Act ("ADA") ................................................. 6, 7

Federal Aviation Administration Authorization Act of 1994 ("FAAAA") ..... passim

Fed. R. Civ. P. 12(c) ............................................................................... 5

49 U.S.C.
  § 14501 ............................................................................................ 13
  § 14501(c)(1) ....................................................................................... 6
  § 41713(b)(1) ....................................................................................... 6

State:  Statutes, Rules, Regulations, Constitutional Provisions

California Business and Professions Code
  § 17200 ("UCL") ........................................................................... 2, 14

California Labor Code
  §§ 201-203 ................................................................................... 2, 14
  § 203 of the California Labor Code ...................................................... 2
  §§ 204, 223, 1194, 1197 and 1198 ...................................................... 2
  § 212(a) of the California Labor Code ................................................ 2
  § 226(a) of the California Labor Code ........................................... 1, 2, 14
  § 226.7 and 512 of the California Labor Code ...................................... 2
  § 2698 ("PAGA") ........................................................................ 2, 14
  § 2802 of the California Labor Code .................................................... 2

Local Rule 7-3 ....................................................................................... 4

-iii-

<u>Other Authorities</u>

William W. Schwarzer, A. Wallace Tashima & James M. Wagstaffe, *Federal Civil Procedure Before Trial* § 9:319–323 ......................................................... 5

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF
DEFT'S MOTION FOR JUDGMENT ON THE PLEADINGS-
FAAAA PREEMPTION

# I.     <u>INTRODUCTION</u>

Defendant Swift Transportation Co. of Arizona, LLC ("Swift" or "Defendant") seeks judgment on the pleadings regarding Plaintiffs' first cause of action for alleged minimum wage violations because that claim is preempted by the Federal Aviation Administration Authorization Act of 1994 ("FAAAA") as a matter of law.  The same issue was recently decided by the Central District of California in *Burnham v. Ruan Transportation*, SACV 12-0688 AG ANX (C.D. Cal. Aug. 16, 2013) which held that plaintiffs' compensation claims based on California's minimum wage law are preempted because they are "related to a price."  The *Burnham* Court concluded that "[c]hanges to price at the margin are economically significant" and that changing an "'activity-based' Compensation Plan to hourly pay, or another system . . . would affect labor costs, as well as … overall costs." The *Burnham* Court concluded: "Any other ruling would thwart the legislative intent of 'maximum reliance on competitive market forces, thereby stimulating efficiency, innovation, and low prices, as well as variety and quality.'"

Here too, Plaintiffs' theory that Defendant must pay the required statutory minimum hourly wage for tasks other than driving would inevitably impact labor costs and prices.  Changes to the compensation system paid to Defendant's drivers, whether by additional payments or a change from piece rate to an hourly wage would directly affect labor costs and pricing.  No summary judgment type analysis is required because the scope of preemption is broad and "if a state law is preempted as to one carrier, it is preempted as to all carriers."  Thus, consistency in preemption mandates dismissing Plaintiffs' first cause of action for alleged minimum wage violations and all derivative causes of action, including: fourth (alleged failure to timely furnish accurate itemized wage statements under Lab. Code §226(a)); sixth (failure to timely pay all earned final wages under Lab. Code §§ 201-203); seventh

-1-

1  (unfair competition under Cal. Bus. & Prof. Code §§ 17200, *et seq.*); and eighth
2  (PAGA penalties Lab. Code §2698 *et. seq*).

## II.   RELEVANT BACKGROUND

**A.   Plaintiffs' Claims**

5       Plaintiff John Burnell filed this action on March 22, 2010 on behalf of all
6  current and former employee drivers employed in California within the last four
7  years.  (Declaration of Paul Cowie ("Cowie Decl.") ¶ 2.)  On October 6, 2010,
8  Plaintiff amended his Complaint to add Jack Pollock as a named Plaintiff.  On
9  August 27, 2013, Plaintiffs amended their Complaint to add Gilbert Saucillo as a
10 named Plaintiff, and to dismiss Jack Pollock as a named Plaintiff.  Plaintiffs' Second
11 Amended Complaint alleges eight causes of action on behalf of themselves and the
12 putative class: (1) unpaid minimum wage pursuant to Sections 204, 223, 1194, 1197
13 and 1198 of the California Labor Code, (2) failure to provide meal and rest periods
14 pursuant to Sections 226.7 and 512 of the California Labor Code; (3) failure to
15 indemnify and reimburse business expenses pursuant to Section 2802 of the
16 California Labor Code; (4) failure to timely furnish accurate itemized wage
17 statements pursuant to Section 226(a) of the California Labor Code; (5) unlawful
18 payment instruments pursuant to Section 212(a) of the California Labor Code;
19 (6) failure to timely pay all earned final wages pursuant to Section 203 of the
20 California Labor Code; (7) unfair competition pursuant to Section 17200 of the
21 California Business and Professions Code ("UCL") and (8) civil penalties pursuant
22 to Section 2698 of the California Labor Code ("PAGA").  (Cowie Decl. ¶ 3).

23      On April 9, 2013, Defendant moved for judgment on the pleadings as to
24 Plaintiffs' meal and rest break claims on the basis that they are preempted by the
25 Federal Aviation Administration Authorization Act of 1994 ("FAAAA") as a matter
26 of law.  This Court granted Defendant's Motion and dismissed Plaintiff's Second
27 Cause of Action.  This Court also found that Plaintiffs were not entitled to recover

28

-2-

1  on their fourth, sixth, seventh, and eighth claims to the extent that these claims were

2  based on misconduct alleged in the second claim.  (Cowie Decl. ¶ 4 Docket #82.).[1]

3  **B.**     **Swift's Operations And The Piece-Rate Compensation System**

4       Swift is one of the largest truckload motor carrier services in the world

5  providing transportation services on a national and international basis.  Swift's

6  customers are located throughout the country and Swift employs drivers to deliver

7  property to its customers.  Swift's drivers regularly transport goods in interstate

8  commerce and is a motor carrier subject to the Department of Transportation

9  regulation, including the federal Hours of Service ("HOS") Regulations.

10       The trucking industry has relied on the mileage-based compensation system

11  for decades as a means by which to drive competition.  ("customary in the

12  transportation industry" to compensate truck drivers upon mileage basis).  Plaintiffs

13  are paid according to a piece rate mileage-based compensation system, which

14  Plaintiffs challenge as unlawful.  (*See, for example,* Second Amended Complaint ¶¶

15  40-41 – "Defendants maintained a practice of refusing to pay hourly rates of at least

16  the state-mandated minimum wage for time spent . . . doing activities that include:

17  Driving miles in excess of the estimated miles for which they were paid; Performing

18  pre- and post-trip inspections; Fueling vehicles; Hooking and unhooking empty

19  trailers.")   Plaintiffs' theory is that it is unlawful to pay commercial truck drivers by

20  the mile because that does not compensate drivers for essential tasks that must be

21  performed by law or by necessity before any miles can be driven, such as fueling

22  and DOT mandated pre- and post-trip inspections.

23

24

25

26  [1] A successive motion for judgment on the pleadings is permitted where, as here, a party is moving to dismiss a cause of action. Fed. R. Civ. Pro. 12(h)(2); *Sprint*

27  *Telephony PCS, L.P. v. County of San Diego*, 311 F. Supp. 2d 898, 903 (S.D. Cal. 2003).

28

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF DEFT'S MOTION FOR JUDGMENT ON THE PLEADINGS-FAAAA PREEMPTION

C.     **Procedural Status Of This Action And Meet And Confer Efforts**

On September 27, 2013, Defense counsel sent a letter to Plaintiffs' counsel to meet and confer regarding this proposed Motion.  (Cowie Decl. ¶ 5, Exh. A.)  In that letter Defense counsel explained:

> We believe that Plaintiffs' minimum wage claims are preempted by the Federal Aviation Administration Authorization Act 1994 (FAAAA).  Specifically, the issue was recently addressed by the Central District of California in *Burnham v. Ruan Transportation*, **SACV 12-0688 AG ANX (C.D. Cal. Aug. 16, 2013)**, which granted summary judgment on the grounds that the FAAAA preempted Plaintiffs' meal and rest break claims, as well as their minimum wage and overtime claims.  *Id.* at slip op., pp. 7-10.  The Court "join[ed] the growing number of district courts that have found that California's meal and rest break laws are preempted by the FAAAA," including Judge Phillip's decision in *Cole v. CRST, Inc.*, EDCV 08-1570-VAP OPX, 2012 WL 4479237 (C.D. Cal. Sept. 27, 2012).
>
> Additionally, the *Burnham* Court applied the same rationale to conclude that plaintiffs' minimum wage claims were also preempted.  Citing to *Rowe v. New Hampshire Motor Transp. Ass'n, 552 U.S. 364, 371 (2008)* and *Morales v. Trans World Airlines, Inc., 112 S.Ct 2031, 2031 (1992))*.

On October 11, 2013, the parties held a conference of counsel to meet and confer about this Motion in accordance with Central District Local Rule 7-3.  (Cowie Decl. ¶ 6).  During the conference, Defense counsel asked Plaintiffs' counsel to stipulate to dismiss Plaintiffs' minimum wage claims and any derivative claims.  The parties discussed Judge Guilford's decision in *Burnham* and the fact that the same conclusion should be reached in this case.  Thus, a stipulation to dismiss would avoid wasted costs, fees and judicial resources associated with this Motion.  Defendant indicated its intent to file a Motion for Judgment on the Pleadings if Plaintiffs did not agree to dismiss their minimum wage claims.  Plaintiffs' refused to dismiss their minimum wage and derivative claims primarily asserting that FAAAA preemption was a matter for summary judgment.  *Id.*

Thereafter, the parties further met and conferred about Defendant's Motion for Judgment on the Pleadings and also agreed that in light of Defendant's proposed

1  Motion it was in the interests of judicial economy to stipulate to vacate the class

2  certification briefing schedule because if Defendant's Motion was successful it

3  would make certain discovery unnecessary, including out-of-state depositions.

4  (Cowie Decl. ¶ 7).  The stipulation to vacate the class certification briefing schedule

5  was filed at Docket # 111 and the Court's Order granting that stipulation was issued

6  on November 6, 2013 at Docket # 112.

7  ### III.   <u>LEGAL STANDARD</u>

8       A motion for judgment on the pleadings is a vehicle for summary

9  adjudication, but the standard is like that of a motion to dismiss. *Hishon v. King &*

10  *Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Dworkin v.*

11  *Hustler Magazine, Inc.,* 867 F.2d 1188, 1192 (9th Cir. 1989).  It is "functionally

12  identical" to a motion to dismiss for failure to state a claim; the only significant

13  difference is that a motion for judgment on the pleadings is properly brought "after

14  the pleadings are closed-but early enough not to delay trial." Fed. R. Civ. P. 12(c);

15  *Dworkin,* 867 F. 2d at 1192; see William W. Schwarzer, A. Wallace Tashima &

16  James M. Wagstaffe, *Federal Civil Procedure Before Trial* § 9:319–323.  *See Cole*

17  at *5-6.

18       This issue is ripe for determination on the pleadings because the fact of

19  preemption means that Plaintiffs have failed to state a claim.  "Where a State law

20  claim is preempted by federal law, that claim must be dismissed for failure to state a

21  claim because the claimant cannot prove any set of facts that will support the claim

22  for relief."  *Chamberlan v. Ford Motor Co.*, 314 F. Supp. 2d 953, 956 (N.D. Cal.

23  2004) (citing *Kent v. Daimlerchrysler Corp.*, 200 F. Supp. 2d 1208, 1212 (N.D. Cal.

24  2002)); *see also Jasso v. Citizens Telecomms. Co. of Cal., Inc.*, 2007 U.S. Dist.

25  LEXIS 54866, 14 (E.D. Cal. July 30, 2007).

26

27

28

-5-

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF
DEFT'S MOTION FOR JUDGMENT ON THE PLEADINGS-
FAAAA PREEMPTION

# IV.   <u>ARGUMENT</u>

**A.**   <u>Scope of the FAAAA's Preemption Clause.</u>

Federal preemption occurs when either: "(1) a Congressional statute explicitly preempts state law, (2) state law actually conflicts with federal law, or (3) federal law occupies a legislative field to such an extent that one can reasonably conclude that Congress left no room for state regulation in that field." *Campbell v. Vitran Express, Inc.*, 2012 WL 2317233, at *2 (C.D. Cal. June 8, 2012).  The FAAAA states that: "[A] State ... may not enact or enforce a law ... related to a price, route, or service of any motor carrier ... with respect to the transportation of property."  49 U.S.C. § 14501(c)(1).  The Supreme Court has identified four principles applicable to preemption by the FAAAA:

> (1) that "[s]tate enforcement actions having a connection with, or reference to" carrier " 'rates, routes, or services' are pre-empted," ... (2) that such pre-emption may occur even if a state law's effect on rates, routes or services "is only indirect," ... (3) that, in respect to pre-emption, it makes no difference whether a state law is "consistent" or "inconsistent" with federal regulation, ... (4) that pre-emption occurs at least where state laws have a "significant impact" related to Congress' deregulatory and pre-emption related objectives.

*Rowe v. New Hampshire Motor Transport Ass'n,* 552 U.S. 364, 370–71, 128 S. Ct. 989, 169 L. Ed. 2d 933 (2008), quoting *Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 112 S. Ct. 2031, 119 L. Ed. 2d 157 (1992); *Dilts v. Penske,* 819 F.Supp.2d 1109 (S.D. Cal. 2011), *appeal docketed,* No. 128 (9th Cir. Apr. 18, 2012); *Esquivel v. Vistar Corp.,* 2012 WL 516094, at *4 (C.D. Cal. Feb. 8, 2012).

The FAAAA was introduced to level the playing field between the trucking industry and the airline industry, which in 1978 implemented the Airline Deregulation Act ("ADA") to preempt state regulation "relating to rates, routes or services" of an air carrier.  49 U.S.C. § 41713(b)(1); *Morales* 504 U.S. at 378-379. The purpose of the ADA was to eliminate the "patchwork" of state regulations to allow "competitive market forces" to best further "efficiency, innovation and low

prices." *Morales* 504 U.S. at 378.  In enacting the FAAAA, Congress intended to preempt state regulation of the trucking industry in the same way as it had preempted the airline industry under the ADA.  *Rowe*, 552 U.S. 364, 368 (explaining that the ADA and FAAAA are subject to the same analysis because both contain identical preemption provisions).  See *Miller v. Southwest Airlines, Co.* 2013 WL 556963 (N.D. Cal. February 12, 2013) at *5.

Moreover, FAAAA preemption is broad because it prohibits state laws that have a "connection with, or reference to" carrier "rates, routes, or services" even where such laws only have an indirect effect.  *Rowe*, 552 U.S. 364, 370 (quoting *Morales*, 504 U.S. at 384).  See also *Cole* at *9-10.  FAAAA preemption carries an "expansive sweep . . . conspicuous for its breadth" because it means "to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with." *Morales, supra,* 504 U.S. at 383.  The Ninth Circuit has confirmed this broad preemption: "[t]here can be no doubt that when Congress adopted the [FAAAA] it intended to broadly preempt state laws that were 'related to a price, route or service' of a motor carrier." *American Trucking Ass'ns, Inc. v. City of Los Angeles,* 559 F.3d 1046, 1053 (9th Cir. 2009).

Critically, as affirmed by the U.S. Supreme Court: "**if a state law is preempted as to one carrier, it is preempted as to all carriers**." *New Hampshire Motor Transport Ass'n v. Rowe,* 448 F.3d 66, 72 (1st Cir. 2006), *aff'd Rowe*, 552 U.S. 364.  As discussed below, this broad preemption should result in dismissal of Plaintiffs' minimum wage claims and all derivative claims just as it has done with respect to Plaintiffs' meal and rest break claims.

**B.     California Minimum Wage Laws Are Preempted As Applied To Mileage-Based Piece Rate Compensation Systems.**

This exact issue was recently addressed by Judge Guilford in ***Burnham v. Ruan Transportation*, SACV 12-0688 AG ANX (C.D. Cal. Aug. 16, 2013)**, which

-7-

1   found plaintiff truck drivers' minimum wage claims were preempted by  the

2   FAAAA.  *Id.* at slip op., pp. 7-10.  The Court  "join[ed] the growing number of

3   district courts that have found that California's meal and rest break laws are

4   preempted by the FAAAA," including this Court's decision in  *Cole v. CRST, Inc.*,

5   EDCV 08-1570-VAP OPX, 2012 WL 4479237 (C.D. Cal. Sept. 27, 2012), as well

6   as the instant case.  *Id.*  at *7.  Additionally, the *Burnham* Court applied the same

7   rationale to conclude that plaintiffs' minimum wage claims were also preempted by

8   the FAAAA.  Citing to *Rowe v. New Hampshire Motor Transp. Ass'n, 552 U.S. 364,*

9   *371 (2008)* and *Morales v. Trans World Airlines, Inc., 112 S.Ct 2031, 2031 (1992))*

10  Judge Guilford held that:

11
>   The minimum wage laws that form the basis of Plaintiffs'
>   Compensation Claims are "related to a price" of Defendant's services.
12  >   Changes to price at the margin are economically significant. This Court
>   finds that changing Defendant's "activity-based" Compensation Plan to
13  >   hourly pay, or another system that might be required under such laws,
>   would affect labor costs, as well as Defendant's overall costs. Any
14  >   other ruling would thwart the legislative intent of "maximum reliance
>   on competitive market forces, thereby stimulating efficiency,
15  >   innovation, and low prices, as well as variety and quality."

16  *Burnham* at slip op., p 8 citing to *Rowe, supra*.

17      The Court in *Burnham* relied upon "clear market principles" and held that:

18  "The effects involved here, as with the Meal and Rest Break Claims, are more than

19  'tenuous, remote, or peripheral.'" *Burnham* at slip op., *9 citing to *Rowe, supra*, 552

20  U.S. at 371.  As explained in *Burnham*, "labor costs are the single greatest expense

21  that drives prices and rates" and a piece-rate compensation system "encourages

22  efficiency and productivity."  *Id.* at 9.

23      Additionally, the *Burnham* Court explained why that case, like the instant

24  case, is distinguishable from the Ninth Circuit's decision in *Mendonca*, 152 F.3d

25  1184:

26
>   In *Mendonca*, the court held that the effect of the California Prevailing
>   Wage Law on public works contractors' transportation-related prices,
27  >   routes, and services was too "indirect, remote, and tenuous" to be
>   preempted by the FAAAA. *Id.* at 1189 (citing *Cal. Div. of Labor*
28  >   *Standards Enforcement v. Dillingham Const., N.A., Inc.*, 519 U.S. 316

-8-

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF
                                        DEFT'S MOTION FOR JUDGMENT ON THE PLEADINGS-
                                        FAAAA PREEMPTION

1
2
3

(1997)). Unlike *Mendonca*, this case involves a type of mileage- or activity-based compensation plan commonly used across a specific competitive industry, which ties the compensation in this case more closely to prices and the competitive market.

4  *Burnham* at slip op., p 10.

5        Here too, Plaintiffs challenge Defendant's mileage/activity-based

6  compensation plan that is used across the same industry as that in *Burnham v. Ruan*.

7  Thus, consistent with the Central District's decision in *Burnham*, applying the

8  Supreme Court's reasoning in *Rowe*, Plaintiffs' minimum wage claims in this case

9  are also preempted.

10        **1.**    **Plaintiffs' Minimum Wage Claims Are Related To Price**

11        The U.S. Supreme Court has held that the question for the courts is "whether

12  the provision, directly or indirectly binds the carrier to a particular *price*, route or

13  service and thereby interferes with competitive market forces within the industry."

14  *Rowe*, 552 U.S. at 371; *ATA I*, 660 F.3d 384, 397 (9th Cir. 2011)(emphasis added).

15  Put simply, an increase in the amount paid to drivers will impact price. That is an

16  inescapable fact as concluded by the Central District in *Burnham*.

17        However, the impact of California's minimum wage laws runs much more

18  deeply because Plaintiffs' theory purports to change the payment method used by

19  trucking companies for decades, to require companies to pay drivers an hourly rate

20  for tasks rather than a piece rate. The application of law sought by Plaintiffs is

21  surely preempted by the FAAAA in an industry that relies on the piece-rate as it's

22  competitive driving force.

23        Under the current piece rate system drivers are compensated based upon miles

24  driven. Thus, drivers are incentivized to complete non-driving tasks as efficiently as

25  possible and "keep the truck moving." In an industry where drivers are out on their

26  own, the entire system depends upon the ability to complete deliveries efficiently

27  and on time because pricing models are based on cents per mile. *Shotgun Delivery*

28

*v. United States*, 269 F.3d 969, 970 (9th Cir. Cal. 2001) (customer billed primarily on the mileage from the pick-up to the delivery location).  The piece rate mileage-based system maintains this equilibrium by compensating drivers in a like manner.  If trucking companies were required to pay drivers for each individual task rather than as a piece the pricing model for the entire industry would be placed in jeopardy.  For example, a customer ships a truckload of goods 400 miles at a price of $.50 per mile for a total cost of $200.  The driver is then paid $.30 per mile or $120.  If, however, the trucking company was required to separately pay the driver for fueling, pre- and post-trip inspections, hooking of trailers, the base-line cost input used to calculate the price would materially change.  As stated By Judge Guilford in *Burnham*: "Changes to price at the margin are economically significant."  *Burnham* at slip op., p 8.  It is common sense that interference with Defendant's compensation system will impact price where a piece-rate system is the industry-standard method of payment.  If, instead, as Plaintiffs' assert, Defendant was required to pay separately for each task, labor costs would inevitably spiral directly impacting price.  At a minimum, such changes would directly interfere with competitive market forces used to drive price thus: "thwart[ing] the legislative intent of "maximum reliance on competitive market forces, thereby stimulating efficiency, innovation, and low prices, as well as variety and quality."  *Burnham* at slip op., p 8 citing to *Rowe, supra*.

Furthermore, Plaintiffs' interpretation of California minimum wage laws would effectively bind carriers to hourly rates rather than the use of piece rates because it would be logistically impractical to pay a separate piece rate for every individual task, such as completing paperwork, fueling, pre- and post-trip inspections, hooking trailers, (many of which tasks are performed simultaneously), without in turn being accused of running afoul of California's minimum wage laws.  For example, if Defendant paid its drivers a flat rate of $4 to complete paperwork,

-10-

1  which usually takes only a few minutes, that would, however, violate California law

2  if on any occasion it happened to take more than thirty minutes.  The same is true

3  for all such individual tasks.  The only way to protect against such claims would be

4  to pay an hourly rate.  Alternatively, Defendant would be required to pay an inflated

5  flat rate so as to avoid the risk of such minimum wage claims.  This would be

6  another increased cost that would impact Defendant's prices.

7      Thus, this is not simply a case of increased costs, which itself is sufficient to

8  engage FAAAA preemption, but more specifically Plaintiffs argue that Defendant is

9  required to change from a piece rate compensation system to an hourly paid system

10 (at least in part).  The compensation system, of course, dictates labor costs and

11 affects pricing because any change to the piece rate system would discourage

12 efficiency which is essential to this industry.  Requiring Defendant to adjust its

13 method of payment will inevitably interfere with competitive market forces where

14 mileage-based pay is the industry standard for compensating drivers.  For each of

15 these reasons Plaintiffs' minimum wage claims are related to price and are

16 preempted.

17      **2.  <u>Plaintiffs' Minimum Wage Claims Effect Services</u>**

18      The very basis for piece rate compensation systems is to encourage

19 "efficiency and productivity."  *Morrison v. United States Dep't of Labor*, 713 F.

20 Supp. 664, 674 (S.D.N.Y. 1989) ("Use of a piece-rate results in increased

21 productivity over the use of an hourly wage"); *Burnham* at slip op., *9.  Piece rates

22 in the transportation industry encourage drivers to transport property efficiently in

23 order to maximize production in a day to earn more money.  The harder and faster

24 drivers work—the more money they make.  Without the incentive to work

25 productively, as created by the piece rate system, service would be impacted as less

26 deliveries would be made.  Consequently, requiring trucking companies to pay

27 separate hourly rates for enumerated tasks is likely to impact service as well as

28

-11-

price.  Thus, Plaintiffs' minimum wage claims are also preempted by the FAAAA because of the effect on services.

### 3.   Wage Order 9 Applies Specifically to the Transportation Industry

Plaintiffs' minimum wage claims arise under Wage Order 9, Section 4, which sets the minimum wage for the transportation industry in California. "Transportation Industry" is defined as "any industry, business, or establishment operated for the purpose of conveying persons or property from one place to another whether by rail, highway, air, or water, and all operations and services in connection therewith." Wage Order 9 Section 2(P).  In *Mendonca*, the court found that a state prevailing wage law had an effect on motor carrier prices, routes, and services, and therefore was "related" to them. *Californians for Safe & Competitive Dump Truck Transportation v. Mendonca*, 152 F.3d 1184, 1189 (9th Cir. 1998).  However, because the law applied to all employers equally, regardless of whether they were in the transportation industry, the court concluded the law was one of general applicability, and held it was not preempted because the effect on motor carrier prices, routes and services was only tenuous.

Here, however, because Wage Order 9 specifically targets the transportation industry, it is not a law of general applicability such as the minimum wage statute in *Mendonca*.  Rather the Wage Order targets businesses "operated for the purpose of conveying persons or property from one place to another," which include motor carriers as defined by the FAAAA.  Therefore, as held in *Burnham*, the Ninth Circuit's decision in *Mendonca* is distinguishable and Plaintiffs' minimum wage claims that rely upon Wage Order 9 are preempted.

### C.   California's Minimum Wage Laws, Are Preempted As A Matter of Law

Based upon the parties' meet and confer efforts Defendant anticipates that Plaintiffs will argue that this issue can be resolved only through summary judgment type evidence.  Indeed, Defendant understands that Plaintiffs will file a motion to

-12-

1   compel discovery of evidence allegedly needed to respond to this Motion.

2   However, no such evidence is needed because: "**if a state law is preempted as to**

3   **one carrier, it is preempted as to all carriers**." *New Hampshire Motor Transport*

4   *Ass'n v. Rowe,* 448 F.3d 66, 72 (1st Cir. 2006), *aff'd Rowe*, 552 U.S. 364.

5        Although the court in *Burnham* decided this issue on summary judgment, that

6   does not detract from the fact that: "**if a state law is preempted as to one carrier, it**

7   **is preempted as to all carriers**." *Id.*  As recognized in *Burnham* "[e]ven if it is true

8   that some other competitors use separate hourly compensation, Defendant would

9   still face significant competition with the many competitors that continue to use

10  mileage-based or activity-based compensation systems." *Burnham* at *9.  To hold

11  that the FAAAA preempts California's minimum wage as to only some trucking

12  companies would inevitably interfere with competitive market forces by allowing

13  rival companies to compete under different rules.  Any other result would

14  compromise the very purpose of the FAAAA to preserve competitive market forces.

15       Indeed, to hold otherwise would create the very "patchwork of regulation"

16  that the FAAAA was introduced to eradicate.  "Congress enacted the FAAAA to

17  preempt and eliminate burdensome state laws that affect the interstate trucking

18  industry." *Aguiar v. California Sierra Exp., Inc.*, 2:11-CV-02827-JAM, 2012 WL

19  1593202, *1 (E.D. Cal. May 4, 2012); *see* 49 U.S.C. § 14501.  The FAAAA thus

20  preempts laws that effectively "interfere[] with competitive market forces in the

21  industry as to routes, services, or pricing." *Id., citing  Am. Trucking Ass'ns, Inc. v.*

22  *City of L.A.,* 660 F.3d 384, 397 (9th Cir. 2011).  Competitive market forces could

23  not drive "pricing" if carriers were held to different legal standards regarding their

24  underlying costs.  Thus, it is unnecessary and improper to determine the FAAAA

25  preemption issue carrier-by-carrier.  Rather, given that the Central District has

26  already ruled that the FAAAA preempts minimum wage claims that relate to

27

28

-13-

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF
                                              DEFT'S MOTION FOR JUDGMENT ON THE PLEADINGS-
                                              FAAAA PREEMPTION

1  "mileage- or activity-based compensation plan[s]" so too the same conclusion

2  should be reached here without the need for summary judgment-type evidence.

3       As explained in *Cole*: "no factual analysis is required to decide this question

4  of preemption" because "evidence outside the pleadings . . . is not necessary to

5  determine whether the Meal and Rest Break laws have an impact on prices, routes,

6  or service." *Cole* at *13-14.  Rather, it is common sense that requiring a driver to

7  stop every five hours, regardless of circumstance, to take an off-duty thirty-minute

8  meal period and every four hours (or major fraction thereof), to take a ten minute

9  rest break will impact the routes he can take, the services he can provide and

10  ultimately price.  Although, *Cole* discussed meal and rest break laws, the same

11  rationale applies to minimum wage claims because as explained above, under

12  Plaintiffs' theory Defendant would effectively be limited in its choice of payment

13  methods or at a minimum would be required to change its compensation system in a

14  way that would directly impact price.  Accordingly, Plaintiffs' minimum wage

15  claims are preempted as a matter of law.

16  **D.**    **Plaintiffs' Derivative Claims are Preempted**

17       It is well-settled that because Plaintiffs' minimum wage claims are

18  preempted, any derivative claims must also fail.  *Leipart v. Guardian Indus*., 234

19  F.3d 1063, 1071 (9th Cir. Cal. 2000) (derivative claims only survive preemption if

20  original claims survive).  This was the conclusion reached in *Burnham, Penske,*

21  *Esquivel, Aguiar, Campbell and Cole*, as well as this Court in dismissing Plaintiffs'

22  meal and rest break claims.  See Docket at # 82.  Here too, the Court should dismiss

23  all causes of action that are derivative of Plaintiffs' minimum wage claims,

24  including: fourth (alleged failure to timely furnish accurate itemized wage

25  statements under Lab. Code §226(a)); sixth (failure to timely pay all earned final

26  wages under Lab. Code §§ 201-203); seventh (unfair competition under Cal. Bus. &

27

28

SMRH:410444033.4

1  Prof. Code §§ 17200, *et seq*.); and eighth (PAGA penalties Lab. Code §2698 *et.*
2  *seq*).

3                                    **V.    <u>CONCLUSION</u>**

4            The District Court's decision in *Burnham* should be applied here because
5  changing the method of payment or requiring additional payments to drivers in the
6  highly competitive trucking industry impacts labor costs and Defendant's overall
7  costs, thereby directly effecting price.  Likewise, an interference with the piece rate
8  compensation system used to incentivize drivers' productivity would also negatively
9  impact service.  For each of these reasons, Defendant respectfully requests the Court
10 to dismiss Plaintiffs' first cause of action for alleged minimum wage violations and
11 all derivative claims with prejudice because they are preempted by the FAAAA.

12

13

14 Dated:  November 11, 2013

15                              SHEPPARD, MULLIN, RICHTER & HAMPTON
16                              LLP

17

18                    By        */s/ Ronald J. Holland*
19                                      RONALD J. HOLLAND
                                        ELLEN M. BRONCHETTI
20                                      PAUL S. COWIE

21                              Attorneys for Swift Transportation Co.,
22                              of Arizona LLC

23

24

25

26

27

28

-15-
                                        MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF
                                        DEFT'S MOTION FOR JUDGMENT ON THE PLEADINGS-
                                        FAAAA PREEMPTION