UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION

| | |
|---|---|
| John Burnell et al., <br><br> Plaintiffs, <br><br> v. <br><br> Swift Transportation Co of Arizona, LLC, <br><br> Defendant. | EDCV 10-809-VAP (SPx) <br><br> **ORDER DENYING CLASS CERTIFICATION** |

On January 22, 2016, Plaintiffs John Burnell and Gilbert Saucillo filed a Motion for Class Certification. (Doc. No. 134.) On March 16, 2016, Defendant Swift Transpiration Company of Arizona, LLC ("Swift") filed its Opposition. (Doc. No. 140.) On April 6, 2016, Plaintiffs filed their Reply. (Doc. No. 154.) After considering all papers filed in support of, and in opposition to, the Motion, as well as the arguments advanced at the hearing, the Court rules as follows.

## I. BACKGROUND

Plaintiffs are California residents who worked for Swift as drivers during all relevant time periods. (SAC ¶¶ 9–10.) Plaintiffs allege that Swift had a policy of violating a number of California Labor Code provisions, including the requirement to pay minimum wages for all hours worked and the requirement to provide meal and rest breaks.

Swift removed this case from the California Superior Court for the County of San Bernardino on June 2, 2010. (Not. of Removal (Doc. No. 1).) Plaintiffs filed a First Amended Complaint ("FAC") on October 6, 2010, and filed a Second Amended Complaint ("SAC") on August 27, 2013. (See SAC (Doc. No. 107).)

On January 20, 2011, the Court stayed the case pending the California Supreme Court's decision in Brinker Restaurant Corp. v. Superior Court, 165 Cal. App. 4th 25 (2008). (Doc. No. 34.) On April 12, 2012, the California Supreme Court announced its decision in Brinker. The Court lifted the stay on August 8, 2012. (Doc. No. 46.)

## II. LEGAL STANDARD

Recognizing that "[t]he class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only," Federal Rule of Civil Procedure 23 demands that two requirements be met before a court certifies a class. Comcast Corp. v. Behrend, 133 S.Ct. 1426, 1432 (2013).

A party must first meet the requirements of Rule 23(a), which demands that the party "prove that there are in fact sufficiently numerous parties, common questions of law or fact, typicality of claims or defenses, and adequacy of representation." Behrend, 133 S.Ct. at 1432. Although not mentioned in Rule 23(a), the moving party must also demonstrate that the class is ascertainable. Keegan v. Am. Honda Motor Co., Inc., 284 F.R.D. 504, 521 (C.D. Cal. 2012); Rodmakers, Inc. v. Newport Adhesives & Composites, Inc., 209 F.R.D. 159, 163 (C.D. Cal. 2002) ("Prior to class certification, plaintiffs must first define an ascertainable and identifiable class.").

If a party meets Rule 23(a)'s requirements, the proposed class must also satisfy at least one of the requirements of Rule 23(b). Here, Plaintiffs invoke Rule 23(b)(3) (Mot. at 13), which demands that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The predominance inquiry inherent in a Rule 23(b)(3) analysis asks "whether proposed classes are sufficiently cohesive to warrant adjudication by representation," focusing on "the relationship between common and individual issues." In re Wells Fargo Home Mortg. Overtime Pay Litig., 571 F.3d 953, 957 (9th Cir. 2009) (further noting that the express purpose of Rule 23(b)(3) is to "achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated.").

The law gives district courts broad discretion to grant or deny a motion for class certification. Bateman v. American Multi-Cinema, Inc., 623 F.3d 708, 712 (9th Cir. 2010). The party seeking class certification bears the burden of showing affirmative compliance with Rule 23. See Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551 (2011). This requires a district court to conduct a "rigorous analysis" that frequently "will entail some overlap with the merits of the plaintiff's underlying claim." Id. The merits, however, can be considered only to the extent they are "relevant to determining whether the Rule 23 prerequisites to class certification are satisfied." Amgen Inc. v. Conn. Ret. Plans & Trust Funds, 133 S.Ct. 1184, 1195 (2013).

## III.  DISCUSSION

**A. Does a Class Exist? Rule 23(a) and Rule 23(b)**

1. **Rule 23(a)**

   a. **Numerosity**

To satisfy the numerosity requirement under Rule 23(a)(1), joinder of all class members must be "impracticable," but not necessarily impossible. Parkinson v. Hyundai Motor Am., 258 F.R.D. 580, 588 (C.D. Cal. 2008). Courts have not required evidence of a specific class size or identity of class members to satisfy the requirements of Rule 23(a)(1). Robidoux v. Celani, 987 F.2d 931, 935 (2d Cir. 1993).

Here, Plaintiffs contend, and Swift does not dispute, that there are thousands of putative class members. (Humphrey Decl., Exh. 9, Koogle Depo. 11:24-12:10. 15:10-23, 52:14-24 (Doc. No. 135).) Hence, Plaintiffs have satisfied the numerosity requirement.

   b. **Commonality**

Commonality "requir[es] a plaintiff to show that 'there are questions of law or fact common to the class.'" Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551-52 (2011) (quoting Fed. R. Civ. P. 23(a)(2)).  Even a single common question will suffice.  Id. at 2556. Here, Plaintiffs argue that there exist common questions of law or fact capable of class-wide resolution. (Mot. at 14.)

   i. **Minimum Wage Claims**

Plaintiffs argue that the Minimum Wage class should be certified because of the following common question: "whether Swift's piece rate compensation system,

which builds pay for many non-driving tasks into the mileage rate, violates California law." (Mot. at 16.)

At the motion hearing, Plaintiffs' counsel argued that it was improper for the Court to consider the merits when deciding a motion for class certification, even though both Plaintiffs and Swift argue at length the merits of the case. (See generally, Mot. at 16-22; Opp. at 7-16.) This is incorrect as a matter of law. A "rigorous analysis" of the Rule 23 factors frequently entails "some overlap with the merits of a plaintiff's underlying claim," and courts may consider the merits as far they are "relevant to determining whether the Rule 23 prerequisites to class certification are satisfied." Amgen Inc., 133 S.Ct. at 1195. Hence, the Court will discuss the merits of the case to the extent it informs the Rule 23 analysis.

In Wal-Mart, the Supreme Court provided guidance on how a court must approach the issue of commonality for purposes of class certification. A plaintiff must show "significant proof that [an employer] operated under a general policy . . . ." Wal-Mart, 131 S. Ct. at 2553. In other words, Plaintiffs must show that Swift had a general policy of not paying minimum wage to its drivers. Plaintiffs do not make this showing.

Plaintiffs premise their argument for certification of the Minimum Wage Class on the following: drivers were paid for estimated miles driven and were not paid additionally for non-driving tasks. Therefore, the common question of unpaid working time remains and applies to the entire class. Plaintiffs, however, fail to demonstrate commonality because they are unable to show that Swift had an unlawful policy, i.e., one of failing to pay minimum wage to its drivers.

It is undisputed that Swift compensated drivers based on an estimate of miles driven, and not by the hour. (Opp. at 7.) It is also undisputed that Swift did not pay drivers additional compensation for certain non-driving duties; however, the evidence submitted in support of, and in opposition to, this motion shows that there was wide variation as to if, when, and for how long any particular driver performed any of these allegedly uncompensated tasks (e.g., waiting, conducting pre- and post-trip vehicle inspections, filling out and submitting paperwork, refueling, and communicating with dispatchers). (Mot. at 16-17.) Plaintiffs provide no evidence demonstrating that Swift had a general policy not to pay drivers minimum wage for all work completed pursuant to a general policy.

In its Opposition, Swift sets forth the following hypothetical: assuming a driver was paid $100 per mile for a 10-mile trip that took 30 minutes but required a "drop and hook",[1] Plaintiffs contend that there would be a minimum wage violation, despite the driver having been paid $1000 for 30 minutes work, an amount exceeding the California minimum wage. (Opp. at 9.)

Similarly, Burnell testified that it took him between 20 minutes and one hour to perform pre-trip inspections, but other drivers completed pre- and post-trip inspections in 10 minutes or less. (Burnell Depo. 191:23-192:2; 193:21-25; Compendium, ¶¶4-5.) With respect to post-trip inspections, Saucillo testified that the time "fluctuates a lot" based on a number of factors (Saucillo Depo. 166:13-167:15), and other drivers declared that post-trip inspections take even less time. (Compendium, ¶¶4-5.) Plaintiffs have not presented evidence that shows the

---

[1] This is a term used to describe when a driver "drops" a trailer at a customer location and "hooks" to another trailer.

putative class was denied a minimum wage in a manner appropriate for class-wide resolution.

These examples demonstrate that an individualized inquiry is required, not only to determine the amount of damages, but to determine whether Swift is liable for not paying minimum wage. Plaintiffs fail to demonstrate that non-driving duties are not adequately compensated by Swift's mileage-based compensation system. Without proof of a general policy that Swift denied minimum wage to drivers, Plaintiffs cannot demonstrate liability in a manner capable of class-wide resolution.

Hence, Plaintiffs have not satisfied the commonality requirement as to the Minimum Wage Class.

### ii. Meal and Rest Periods Claims

Plaintiffs contend that Swift does not provide its employees meal and rest breaks. In Brinker Rest. Corp. v. Superior Court, 53 Cal. 4th 1004 (2012), the California Supreme Court articulated employers' obligations with respect to meal and rest breaks. Under Brinker, an employer satisfies its obligation when it "relieves its employees of all duty, relinquishes control over their activities and permits them a reasonable opportunity to take an uninterrupted 30-minute break, and does not impede or discourage them from doing so." Id. at 1040. According to Brinker, an employer is not obligated to police employees to ensure that meal breaks are taken; rather, the employer must not prevent employees from taking meal breaks. Id. Moreover, the Brinker Court made clear that employers could satisfy this obligation in different ways, and that the court did not need to delineate every instance of compliance. Id.

Plaintiffs misstate the appropriate standard when they contend that Swift does not provide its drivers with meal and rest breaks because it does not schedule them. (Mot. at 24.) Swift's only affirmative obligation is to notify its drivers of California's meal and rest break rules. See Cal. Labor Code § 1183(d). Swift fulfilled this obligation by distributing its Meal Period Waiver Form (Malchesky Depo. 27:16-17, 28:23-29:3), describing Swift's meal and rest break policy during driver orientation (Id. at 22:20-23:10; 27:4-12), training and instructing Swift managers about meal and rest breaks (Id. at 24:12-25:19), and posting applicable Wage Orders in all of its California locations (Arnold Decl. ¶3).

While Brinker directly addresses employers' obligations regarding meal breaks, it interprets language in IWC wage orders that apply to both meal and rest breaks. District courts have relied on this guidance in denying certification of rest period classes. See, e.g., Ordonez v. Radio Shack, Inc., No. CV 10-7060-CAS (JCGx), 2013 WL 210223, at *11 (C.D. Cal. Jan. 17, 2013), Cummings v. Starbucks Corp., No. CV 12-06345-MWF (FFMx), 2014 WL 1379119, at *23 (C.D. Cal. Mar. 24, 2014).

Here, Plaintiffs do not submit any class-wide evidence to support their theory that Swift uniformly imposed unrealistic scheduling requirements. Whether a driver's schedule permitted a break depends on facts unique to each driver and each trip.

Plaintiffs have not shown that Swift had a general policy of preventing its drivers from taking meal and rest breaks. They have not made this showing because a number of drivers acknowledge that they took meal and rest breaks when needed,

without interference from Swift. (See Compendium ¶9 ("50 drivers have declared that they always or almost always had sufficient time to take fully off-duty meal and rest breaks whenever they wanted.").)

Plaintiffs' meal and rest break certification argument rests on the assumption that Swift's failure to maintain an affirmative policy scheduling meal and rest breaks creates a rebuttable presumption that the breaks were not taken. This argument fails because no such presumption exists. Brinker held unambiguously that employers are not obligated to police or ensure that employees take meal breaks; rather, employers must not prevent employees from taking meal breaks. Id. at 1040. Similarly, there are post-Brinker district court cases that found that employers' liability springs not simply from a defective policy, but from proof that rest breaks were unlawfully denied. (See, e.g., James Cole v. CRST, Inc., et al., No. CV 08-1570-VAP (SPx), 2016 WL 1367016 (C.D. Cal. Apr. 1, 2016); Ordonez v. Radio Shack, Inc., No. CV 10–7060–CAS ( JCGx), 2013 WL 210223 (C.D. Cal. Jan. 17, 2013); In re Taco Bell Wage & Hour Actions, No. CV F 07-1314-LJO (DLBx), 2013 WL 204661 (E.D. Cal. Jan. 17, 2013).

At the motion hearing, Plaintiffs' counsel argued that Swift does not provide a reasonable opportunity for drivers to take meal and rest breaks because drivers are always responsible for their loads, i.e. Swift does not relieve drivers of all duties. The Court is not persuaded by this theory.

First, the Brinker Court held that there was no textual basis in California wage orders or statutes for the proposition that employers must prohibit work from being done during meal or rest breaks. Brinker, 53 Cal. 4th 1039. An employer is not

9

obligated to police meal breaks and ensure no work is performed. The relinquishing of control satisfies an employer's obligation, and work by a relieved employee during a meal break does not create liability for premium pay. Id. at 1041.

Second, California courts have held that "on-call" rest breaks do not violate California labor law. See, e.g. Augustus v. ABM Sec. Servs., Inc., 233 Cal. App. 4th 1065, 1078 (2014). In Augustus, plaintiffs argued that a security guard's on-call rest time constitutes work in violation of California rest break laws. The court disagreed holding that California law "does not require that a rest period be distinguishable from the remainder of the workday, it requires only that an employee not be required 'to work' during breaks. Even if an employee did nothing but remain on call all day, being equally idle on a rest break does not constitute working." Id.

As Plaintiffs cannot show that Swift had a general policy of preventing drivers from taking meal and rest breaks, and because there is evidence in the record of drivers taking meal and rest breaks without interference from Swift, Plaintiffs cannot demonstrate liability in a manner capable of class-wide resolution.

Hence, Plaintiffs have not satisfied the commonality requirement as to the Meal and Rest Period Class.

### iii. Inaccurate Wage Statement, Section 203, and UCL Claims

Plaintiffs' wage statement claim, California Labor Code §203 claim, and UCL claim are derivative of their minimum wage and meal and rest period claims and cannot be adjudicated on a class basis for the same reasons. See Amey v. Cinemark USA Inc., 2015 WL 2251504, at *20 (N.D. Cal. 2015).

### c. Typicality

The Ninth Circuit in <u>Hanlon v. Chrysler Corp.</u> explained that "representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." <u>Hanlon v. Chrysler Corp.</u>, 150 F.3d 1011, 1020 (9th Cir. 1998). Thus, to find typicality, a "court does not need to find that the claims of the purported class representatives are identical to the claims of the other class members." <u>Haley v. Medtronic, Inc.</u>, 169 F.R.D. 643, 649 (C.D. Cal. 1996).

Here, Plaintiffs argue that they are typical of the classes they seek to represent because (1) they were employed by Swift as California-based truck drivers during the relevant time period; (2) they were subjected to the same Swift policies and practices as the potential class, and as a result of these policies and practices, were denied wages for all time worked, work performed, and for rest breaks; (3) they were not provided with meal and rest breaks; and (4) they were not provided with accurate itemized wage statements. (Burnell Decl. ¶¶ 3, 6-12, 13; Saucillo Decl. ¶¶ 3, 14-15.)

Swift disputes that Plaintiffs are typical representatives of the class because their testimony contradicts the experiences of some putative class members. (Opp. at 25.) For example, Plaintiffs contend that they were never able to take meal and rest breaks, while other putative class members said they were able to take some meal and rest breaks. (Cowie Decl., Exh. 2, Burnell Depo. 265:4-267:15; Exh. 3, Saucillo Depo. 249:8-250:3, 317:16-20, 391:13-20 (Doc. No. 141); <u>cf.</u> Compendium ¶¶8-9 (Doc. No. 146).)

Though Plaintiffs' claims are not identical to those of all putative class members, they do not need to be. To find typicality, the Court does not need to find that the claims of the putative class representatives are identical to the claims of the other class members; rather, they need to be "reasonably co-extensive" with those of absent class members.  See Hanlon, 150 F.3d at 1020; Haley, 169 F.R.D. at 649

Hence, Plaintiffs have satisfied the typicality requirement.

### d. Adequacy of Representation

Rule 23(a)(4) demands that "representative parties will fairly and adequately protect the interests of the class."  This determination "is a question of fact that depends on the circumstances of each case." In re Nat'l W. Life Ins. Deferred Annuities Litig., 2010 WL 2735732, at *5 (S.D. Cal. July 12, 2010) (citing McGowan v. Faulkner Concrete Pipe Co., 659 F.2d 554, 559 (5th Cir. 1981)). "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class member[s], and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" Hanlon, 150 F.3d at 1020.

Plaintiffs, as class representatives, assert claims that are reasonably co-extensive with the putative class and do not assert claims that would raise a conflict of interest with the putative class. (Mot. at 16.) Swift argues that since Plaintiffs' employment experiences are not identical to the experiences of other putative class members, Plaintiffs are not adequate representatives. (Opp. at 27.) This argument fails because Swift applies the wrong legal standard. Rule 23(a)(4) asks the Court to decide whether conflicts of interest exist between the class representatives and the

putative class, not whether the class representatives' recollection of events that occurred many years ago is 100% consistent.

Moreover, the Court finds unpersuasive Swift's argument that Plaintiffs are inadequate class representatives because some of their deposition testimony is inconsistent with later filed declarations. (Id.) Swift's failure to obtain information in the depositions does not preclude Plaintiffs from presenting more detailed testimony in their declarations.

Lastly, Swift's argument that Plaintiffs are inadequate class representatives because they do not understand their roles and obligations fails. (Id. at 26-27.) The Court has reviewed carefully Swift's citations to Plaintiffs' depositions, and while Plaintiffs did not recite the Black Letter Law as to their roles and obligations as class representatives, the Court finds that they understood their roles sufficiently enough to avoid any conflicts of interest with the putative class. Hence, Plaintiffs have satisfied the adequacy of representation requirement.

Though Plaintiffs have not met all of the Rule 23(a) requirements, the Court turns to the Rule 23(b) requirements.

### 2.  Rule 23(b)

Plaintiffs seek class certification under Rule 23(b)(3). (Mot. at 16.) Rule 23(b)(3) applies where "the court finds that the questions of law or fact common to the class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and

efficiently adjudicating the controversy." This is commonly called the "predominance" and "superiority" analysis. Hanlon, 150 F.3d at 1023.

### a. Predominance

The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation" and "focuses on the relationship between the common and individual issues." Hanlon, 150 F.3d at 1022. "When common questions represent a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is a clear justification for handling the dispute on a representative rather than on an individual basis." Wright, Miller & Kane, Federal Practice and Procedure: Civil 3d § 1778.

Plaintiffs argue that there are no individualized inquiries required because allegedly drivers were not compensated for certain work and not provided with meal and rest breaks. Thus, Plaintiffs argue, common questions predominate. (Id. at 16-23.) Swift argues that individual issues predominate because individualized inquiries would be necessary to determine whether a particular driver performed the tasks Plaintiffs contend were not compensated: how often a driver performed those tasks, for how long, and whether the driver's pay for any particular hour of work fell below the minimum wage. (Opp. at 7.) Similar individualized inquiries would be required to determine whether drivers took meal and rest breaks, and more importantly, if they did not, why not.

The Court finds that individual issues predominate in Plaintiffs' minimum wage claims. First, liability as to any particular driver will depend on whether that driver, in fact, performed any of the tasks Plaintiffs allege were not compensated,

and for how long. Second, there is evidence that Swift compensated drivers with additional pay for a variety of tasks depending upon the customer, the type of freight, the geography, the time period, and whether the driver asked to be paid, requiring individual inquiries to identify the task and whether it was compensated. (See generally, Fitzsimmons Depo.; Fitzsimmons Decl. ¶¶ 4-5, 7-12; Muschetto Decl. ¶15; Muise Decl. ¶ 23; Compendium ¶1, 7, 8.) Third, individualized issues predominate as to whether a particular driver's pay was reduced below the minimum wage for each hour worked.

Similarly, the Court finds that individual issues predominate in Plaintiffs' meal and rest period claims because Plaintiffs have not shown Swift had a general policy of not providing meal and rest breaks, and there is evidence in the record of drivers taking meal and rest breaks without interference from Swift. (See Compendium ¶9 ("50 drivers have declared that they always or almost always had sufficient time to take fully off-duty meal and rest breaks whenever they wanted.") Thus, individualized inquiries would be necessary to determine why some drivers did not take meal and rest breaks.

Lastly, as Plaintiffs' inaccurate wage statement claim, § 203 claim, and UCL claim are derivative of the minimum wage and rest and meal period claims, individual issues predominate in these claims as well. Hence, Plaintiffs have not shown that common issues predominate.

  **b.**  **Superiority**

"[T]he purpose of the superiority requirement is to assure that the class action is the most efficient and effective means of resolving the controversy." <u>Wolin v. Jaguar Land Rover N. Am., LLC</u>, 617 F.3d 1168, 1175 (9th Cir. 2010).

  Litigating this case as a class action is not the most efficient and effective means of resolving this controversy because Plaintiffs' claims cannot be resolved on a class-wide basis. (<u>See supra</u>, Part III(A)(1)(b), (2)(a).) If Plaintiffs' claims were to be litigated as a class action, the case would be unmanageable. For example, the parties have provided conflicting evidence as to whether drivers took rest breaks, and Plaintiffs have not offered a viable method of determining if or when a particular driver took a rest break on a particular day. Based on the evidence presented, the Court finds that obtaining testimony from each driver would be the only way to prove Plaintiffs' claims. Thus, class treatment would not be superior because it would require individual class members to establish that they were not paid a minimum wage and the reason for any missed break. Hence, Plaintiffs have not shown that class treatment is superior.

  Accordingly, Plaintiffs have not met the Rule 23(b) requirements.

## B. Evidentiary Objections

  The Ninth Circuit has not directly addressed the evidentiary standard at the class certification stage; however, other "courts have held that on a motion for class certification, the evidentiary rules are not strictly applied and courts can consider evidence that may not be admissible at trial." <u>Parkinson v. Hyundai Motor Am.</u>, 258 F.R.D. 580, 599 (C.D. Cal. 2008) (quoting <u>Rockey v. Courtesy Motors, Inc.</u>, 199

F.R.D. 578, 582 (W.D. Mich. 2001)); see, e.g., Syed v. M-I, L.L.C., 2014 WL 6685966, at *6 (E.D. Cal. Nov. 26, 2014); see also Davis v. Social Service Coordinators, Inc., 2012 WL 3744657, *7 (E.D. Cal. Aug. 28, 2012) ("Many courts have relaxed the evidentiary requirements for plaintiffs at the conditional certification stage because the evidence has not been fully developed through discovery and the evidence will be subjected to greater scrutiny at the second stage"); see also Dominguez v. Schwarzenegger, 270 F.R.D. 477, 483 n. 5 (N.D. Cal. 2010) ("[U]nlike evidence presented at a summary judgment stage, evidence presented in support of class certification need not be admissible eat trial.").

Swift filed objections to some of Plaintiffs' evidence. (Doc. No. 162.) While many of Swift's objections would be sustained at trial, Swift provides no authority, binding or otherwise, to support its argument that such evidence is inadmissible during the class certification stage.  On the contrary, the Court finds persuasive authority finding that at the class certification stage evidentiary requirements should be relaxed.

Accordingly, the evidence found in declarations provided by both Plaintiffs and Swift is admissible with respect to determining class certification.

## IV. CONCLUSION

For the reasons stated above, the Court DENIES Plaintiffs' Motion for Class Certification as to all claims and classes.

Dated: 5/4/16

                                                      Virginia A. Phillips
                                                  United States District Judge