**SHEPPARD, MULLIN, RICHTER & HAMPTON** LLP
PAUL S. COWIE, Cal. Bar No. 250131
pcowie@sheppardmullin.com
379 Lytton Ave.
Palo Alto, California 94301
Telephone: 650.815.2600  Facsimile:  650.815.2601

**SHEPPARD, MULLIN, RICHTER & HAMPTON LLP**
JOHN D. ELLIS Cal. Bar No. 269221
jellis@sheppardmullin.com
CORINNE K. HAYS Cal. Bar No. 248576
chays@sheppardmullin.com
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone: 415.434.9100  Facsimile:  415.434.3947

**SHEPPARD, MULLIN, RICHTER & HAMPTON** LLP
ROBERT MUSSIG, Cal. Bar No. 240369
rmussig@sheppardmullin.com
333 South Hope Street, 43rd Floor
Los Angeles, California 90071-1422
Telephone: 213.620.1780  Facsimile:  213.620.1398

Attorneys for Defendants SWIFT TRANSPORTATION CO.
OF ARIZONA, LLC, and SWIFT TRANSPORTATION COMPANY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN BURNELL, et al.<br><br>Plaintiffs,<br><br>v.<br><br>SWIFT TRANSPORTATION COMPANY OF ARIZONA, LLC, et al.<br><br>Defendants.<br><br>and<br><br>JAMES R. RUDSELL,<br><br>Plaintiff,<br><br>v.<br><br>SWIFT TRANSPORTATION COMPANY OF ARIZONA, LLC<br><br>Defendant | Case No. 5:10-cv-00809-VAP-OP; and Case No. 5:12-cv-00692 VAP OP;<br><br>Hon. Virginia A. Phillips<br><br>**JOINT SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF THE PARTIES' CLASS ACTION SETTLEMENT**<br><br>Date of Hearing:  August 12, 2009<br>Time:                     2:30 p.m.<br>Room:                   8A – First Street |

-1-

Case No. 5:10-cv-00809-VAP-OP

**JAMES R. HAWKINS, APLC**
James R. Hawkins, Esq. SBN 192925
Gregory E. Mauro, Esq. SBN 222239
9880 Research Drive, Suite 200
Irvine, CA 92618
TEL: (949) 387-7200
FAX: (949) 387-6676
Attorneys for Plaintiff, JAMES R. RUDSELL, on behalf of
himself and all others similarly situated

**MARLIN & SALTZMAN, LLP**
Stanley D. Saltzman, Esq. (SBN 90058)
29800 Agoura Road, Suite 210
Agoura Hills, California 91301
Telephone: (818) 991-8080
Facsimile: (818) 991-8081
ssaltzman@marlinsaltzman.com

**SETAREH LAW GROUP**
Shaun Setareh, (SBN 204514)
315 South Beverly Drive, Suite 315
Beverly Hills, CA 90212
Telephone: (310) 888-7771
Facsimile: (310) 888-0109
shaun@setarehlaw.com
Attorneys for Plaintiffs GILBERT SAUCILLO, et al.

Case No. 5:10-cv-00809-VAP-OP
SMRH:4812-6567-9261.3   JOINT SUPPLEMENTAL BRIEF IN SUPPORT OF  MOTION FOR PRELIMINARY APPROVAL
OF THE PARTIES' CLASS ACTION SETTLEMENT

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ...................................................................... 8

II.     APPLICABLE STANDARDS ....................................................... 10

III.    ARGUMENT ............................................................................ 12

    A.     The Court Will Likely Be Able to Certify A Settlement Class
        Following a Final Fairness Hearing ............................................. 12

        1.     Rule 23(a) ................................................................ 13

            a.     Numerosity ..................................................... 13

            b.     Commonality ................................................... 13

            c.     Typicality ....................................................... 15

            d.     Adequacy ........................................................ 16

        2.     Rule 23(b)(3) ............................................................ 17

            a.     Predominance .................................................. 17

            b.     Superiority ...................................................... 18

    B.     The Court Will Likely Be Able to Conclude the Proposed Settlement
        is Fair, Reasonable and Adequate Following a Final Fairness Hearing ....... 19

        1.     "The Class Representatives and Class Counsel Have
            Adequately Represented the Class" ................................... 20

        2.     "The Proposal Was Negotiated at Arm's Length" ............................. 21

        3.     "The Relief Provided for the Class Is Adequate" ............................. 22

        4.     "The Proposal Treats Class Members Equitably Relative to
            Each Other" ................................................................ 28

IV.    CONCLUSION ......................................................................... 29

SMRH:4812-6567-9261.3          JOINT SUPPLEMENTAL BRIEF IN SUPPORT OF  MOTION FOR PRELIMINARY APPROVAL
OF THE PARTIES' CLASS ACTION SETTLEMENT

# TABLE OF AUTHORITIES

**Page(s)**

Federal Cases

*Amchem Prod., Inc. v. Windsor*
    521 U.S. 591 (1997)...................................................................................10

*In re Anthem, Inc. Data Breach Litig.*
    327 F.R.D. 299 (N.D. Cal. 2018)................................................................20

*Ayala v. U.S Xpress Enterprises, Inc.*
    2019 WL 1986760 (C.D. Cal. 2019) ...........................................................25

*Burnell v. Swift Transportation Co of Arizona, LLC*
    2016 WL 2621616 (C.D. Cal. 2016) ...........................................................24

*Castillo v. Cox Commc'ns, Inc.*
    2012 WL 12953434 (S.D. Cal. 2012)..........................................................28

*Chevron, U.S.A., Inc. v. NRDC, Inc.*
    467 U.S. 837 (1984)....................................................................................26

*Class Plaintiffs v. City of Seattle*
    955 F.2d 1268 (9th Cir. 1992) ....................................................................19

*Cole v. CRST, Inc.*
    2017 WL 1234215 (C.D. Cal. 2017) ...........................................................26

*In re Cooper Companies Inc. Sec. Litig.*
    254 F.R.D. 628 (C.D. Cal. 2009).................................................................13

*Coopers & Lybrand v. Livesay*
    437 U.S. 463 (1978)....................................................................................24

*Corson v. Toyota Motor Sales U.S.A., Inc.*
    2016 WL 1375838 (C.D. Cal. 2016) ...........................................................19

*Davis v. Social Service Coordinators, Inc.*
    2012 WL 3744657 (E.D. Cal. 2012)............................................................11

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*
    2013 WL 12333442 (N.D. Cal. 2013) ...................................................11, 14

SMRH:4812-6567-9261.3   JOINT SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL
OF THE PARTIES' CLASS ACTION SETTLEMENT

*Eisen v. Porsche Cars N. Am., Inc.*
   2014 WL 439006 (C.D. Cal. 2014) ............................................................ 22

*Fowler v. Union Pac. R.R. Co.*
   2018 WL 6318836 (C.D. Cal. 2018) ................................................ 15, 18, 19

*Gatdula v. CRST Int'l, Inc.*
   2015 WL 12765542 (C.D. Cal. 2015) (C.J. Phillips) ..........................*passim*

*Glass v. UBS Fin. Servs., Inc.*
   2007 WL 221862 (N.D. Cal. 2007) ............................................................ 21

*Hanlon v. Chrysler Corp.*
   150 F.3d 1011 (9th Cir. 1998) ...............................................................*passim*

*Henry v. Cent. Freight Lines, Inc.*
   2019 WL 2465330 (E.D. Cal. 2019).......................................................... 25

*Lane v. Facebook, Inc.*
   696 F.3d 811 (9th Cir. 2012) ..................................................................... 22

*Linney v. Cellular Alaska P'ship*
   151 F.3d 1234 (9th Cir. 1998) ................................................................... 23

*Mares v. Swift Transportation Co. of Arizona, LLC*
   2017 WL 10592147 (C.D. Cal. 2017) ...................................................... 24

*Mares v. Swift Transportation Co. of Arizona, LLC* (C.D. Cal. 2018)............................ 26

*Marshall v. Nat'l Football League*
   787 F.3d 502 (8th Cir. 2015) ..................................................................... 25

*McCrary v. Elations Co., LLC*
   2015 WL 12746707 (C.D. Cal. 2015) ...................................................... 18

*McKenzie v. Fed. Exp. Corp.*
   2012 WL 2930201 (C.D. Cal. 2012) ........................................................ 23

*McKinsty v. Swift Transportation Co. of Arizona, LLC*
   2017 WL 10059288 (C.D. Cal. 2017) ...................................................... 24

*Moody v. Charming Shoppes of Delaware, Inc.*
   2009 WL 10699672 (N.D. Cal. 2009) ...................................................... 28

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*
    221 F.R.D. 523 (C.D. Cal. 2004)..................................................19, 21, 26

*In re New Motor Vehicles Canadian Exp. Antitrust Litig.*
    269 F.R.D. 80 (D. Me. 2010)..................................................................11

*Nunez v. BAE Sys. San Diego Ship Repair Inc.*
    292 F. Supp. 3d 1018 (S.D. Cal. 2017)....................................................17

*Officers for Justice v. Civil Serv. Com.*
    688 F.2d 615 (9th Cir. 1982) ......................................................20, 22, 23

*Parkinson v. Hyundai Motor Am.*
    258 F.R.D. 580 (C.D. Cal. 2008)............................................................11

*In re Paxil Litig.*
    212 F.R.D. 539 (C.D. Cal. 2003)............................................................15

*In re: Processed Egg Prod. Antitrust Litig.*
    2016 WL 3584632 (E.D. Pa. 2016) ........................................................11

*Rodriguez v. Penske Logistics, LLC*
    2017 WL 4132430 (E.D. Cal. 2017)..........................................10, 15, 17

*Rodriguez v. W. Publ'g Corp.*
    563 F.3d 948 (9th Cir. 2009) ..........................................................19, 22

*Shy v. Navistar Int'l. Corp.*
    No. C3-92-333, 1993 WL 1318607 (S.D. Ohio 1993)..............................20

*In re Syncor ERISA Litig.*
    516 F.3d 1095 (9th Cir. 2008) ...............................................................19

*Torchia v. W.W. Grainger, Inc.*
    304 F.R.D. 256 (E.D. Cal. 2014) ............................................................18

*In re Toys-R-Us-Delaware, Inc. – Fair and Accurate Credit Transactions
    Act Litig.*
    295 F.R.D. 438 (C.D. Cal. 2014)......................................................23, 24

*Valdez v. Neil Jones Food Co.*
    2016 WL 4247911 (E.D. Cal. 2016).......................................................21

*Vinole v. Countrywide Home Loans, Inc.*
    571 F.3d 935 (9th Cir. 2009) ..................................................................24

Case No. 5:10-cv-00809-VAP-OP

JOINT SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL
OF THE PARTIES' CLASS ACTION SETTLEMENT

*Wang v. Chinese Daily News, Inc.*
   737 F.3d 538 (9th Cir. 2013) ...................................................................... 17

*Wright v. Linkus Enters., Inc.*
   259 F.R.D. 468 (E.D. Cal. 2009) .......................................................... 11, 27

Docketed Cases

*Peck v. Swift Transportation Co. of Arizona*
   2:17-cv-06173, Dkt. 3 .................................................................................. 28

Federal: Statutes, Rules, Regulations, Constitutional Provisions

Administrative Procedures Act .......................................................................... 26

Federal Rules of Civil Procedure
   Rule 23 .................................................................................................*passim*
   Rule 30 ............................................................................................... 16, 20

Title 49 United States Code
   § 31141 ........................................................................................... 14, 25, 26

Title 5 United States Code
   § 706 .......................................................................................................... 26

SMRH:4812-6567-9261.3          JOINT SUPPLEMENTAL BRIEF IN SUPPORT OF  MOTION FOR PRELIMINARY APPROVAL
OF THE PARTIES' CLASS ACTION SETTLEMENT

# I.  __INTRODUCTION__

Pursuant to the Court's July 19, 2019 minute order, the Parties hereby submit this joint supplemental brief in support of Plaintiffs' motion for preliminary approval of the Parties' class settlement. *Rudsell* Dkt. 32; *Burnell* Dkt. 51.  The Court requested further information regarding "(1) certification of the proposed class for settlement purposes and (2) the fairness, adequacy and reasonableness of the settlement."

Rule 23(e)(1)(B) provides that the Court should preliminarily approve a proposed class settlement and direct notice to the proposed class so long as the Parties have demonstrated that the Court "will likely be able to: (i) approve the proposal under Rule 23(e)(2) [i.e. find that it is fair, reasonable, and adequate following a final fairness hearing]; and (ii) certify the class for purposes of judgment on the proposal."  Here, the Parties' settlement and evidence submitted demonstrate that each of these conditions are satisfied.

Certification is appropriate under Rule 23(a) and (b) because the proposed settlement class meets the numerosity, typicality, adequacy, and commonality requirements.  There is no question the settlement class is sufficiently numerous—there are over 19,000 settlement class members. It is similarly undeniable that common questions predominate over any questions affecting only individual class members. These common questions include not only whether Swift's class-wide policies and practices resulted in systematic wage and hour violations (which Swift denies) but also whether current legislative and political efforts have or will render some or all of the claims in the case invalid.  Indeed, as set forth in the preliminary approval motion, these efforts may already have rendered the meal and rest break claims invalid, and it is undeniable that in the current political climate it is a distinct possibility there could be

1   further efforts that would render the remaining claims invalid as well.  Plaintiffs are

2   typical and adequate class representatives because they were subject to all the same

3   policies and procedures as the other settlement class members and their claims therefore

4   rise and fall with those of the other settlement class members.  Finally, as discussed at

5   length in the preliminary approval motion, the Rule 23(b) superiority requirement is

6   relaxed in the context of a settlement, and is met here because the settlement is a

7   comprehensive resolution of a multitude of issues and obviates any need for individual

8   actions.

9        As for the fairness, adequacy and reasonableness of the settlement, it is very clear

10   that the amount of the settlement—$7.25 million—is more than adequate when viewed in

11   light of the significant hurdles Plaintiffs and the settlement class would have to overcome

12   in order to recover the maximum exposure amount—$211,000,000.   Not only would

13   Plaintiffs face numerous obstacles and **years** of further litigation just to attempt to prevail

14   on a contested class certification motion, for which success is by no means guaranteed,

15   but additionally, given the current political climate it is entirely possible that further

16   administrative or legislative action would further eviscerate the case before Plaintiffs

17   could bring the case to trial.  It is well within the range of potential outcomes that

18   Plaintiffs could spend hundreds of thousands of dollars seeking to obtain class

19   certification only to have the rug pulled out from under them halfway through.  The

20   fairness and reasonableness of the settlement amount must evaluated in light of the

21   significant probability that the settlement class members will obtain **nothing** if the

22   settlement is not approved.

23

24

1    For all these reasons, the parties respectfully request that the Court grant

2    preliminary approval of the settlement and authorize the dissemination of notice of the

3    settlement to the members of the settlement class.

4    ## II.   **APPLICABLE STANDARDS**

5    In deciding whether to preliminarily approve a class settlement, the Court does not

6    make a final determination as to the fairness of the settlement or whether a settlement

7    class can ultimately be certified.  Rather, Rule 23(e)(1)(B), as amended in 2018, only

8    requires the Court to make a preliminary determination that it will ***likely*** be able to certify

9    a settlement class and  conclude that a proposed class settlement is fair, reasonable and

10   adequate.  *See* Advisory Committee Notes to 2018 Rule 23 Amendments ("the parties

11   must ensure that the court has a basis for concluding that it likely will be able, after the

12   final hearing, to certify the class… The ultimate decision to certify the class for purposes

13   of settlement cannot be made until the hearing on final approval of the proposed

14   settlement").

15   In order to certify a settlement class, the Court must find that the four elements of

16   Rule 23(a) are satisfied and that the proposed class falls within at least one of the

17   categories described in Rule 23(b).  *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 613-

18   14 (1997).  The showing necessary to certify a settlement class is different and less

19   onerous that obtaining certification of a class for litigation, because " a district court need

20   not inquire whether the case, if tried, would present intractable management problems"

21   when certifying a settlement class.  *Id.* at 620; *see also Rodriguez v. Penske Logistics,*

22   *LLC*, 2017 WL 4132430, at *4 (E.D. Cal. 2017) ("despite the Supreme Court's cautions

23   in *Amchem*, see 521 U.S. at 620 n.16, a cursory approach appears the norm" for

24   preliminary approval of settlement classes).

1    As noted in Plaintiffs' preliminary approval motion, an order denying certification

2  of a litigation class does not preclude certification of a settlement class because of the

3  different considerations at stake.  *See*, *e.g.*, *In re Dynamic Random Access Memory*

4  *(DRAM) Antitrust Litig.*, 2013 WL 12333442, at *56 (N.D. Cal. 2013) ("it has long been

5  recognized that a court may decline to certify a class for litigation purposes only to later

6  certify the same or a similar class for the limited purpose of settling the litigation."); *In*

7  *re: Processed Egg Prod. Antitrust Litig.*, 2016 WL 3584632, at *8 (E.D. Pa. 2016)

8  ("common questions of fact and law may predominate with regards to a settlement class,

9  while separate individual questions could nevertheless prevent certification of a litigation

10  class"); *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 269 F.R.D. 80 (D. Me.

11  2010) (certifying settlement class where circuit court had vacated prior certification of

12  identical litigation classes).  Further, "on a motion for class certification, the evidentiary

13  rules are not strictly applied and courts can consider evidence that may not be admissible

14  at trial."  *Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580, 599 (C.D. Cal. 2008); *see*

15  *also Davis v. Social Service Coordinators, Inc.*, 2012 WL 3744657, *7 (E.D. Cal. 2012)

16  ("Many courts have relaxed the evidentiary requirements for plaintiffs at the conditional

17  certification stage").

18    In determining whether a proposed class settlement is fair, reasonable and adequate

19  at the preliminary approval stage, the Court need only "evaluate the terms of the

20  settlement to determine whether they are within a range of possible judicial approval."

21  *Wright v. Linkus Enters., Inc.*, 259 F.R.D. 468, 472 (E.D. Cal. 2009).  Rule 23(e)(2)

22  directs the Court to consider whether "(A) the class representatives and class counsel

23  have adequately represented the class; (B) the proposal was negotiated at arm's length;

24  (C) the relief provided for the class is adequate…[and] D) the proposal treats class

1   members equitably relative to each other."   Under the "relief provided for the class is

2   adequate" factor, Rule 23(e)(2) lists a number of subfactors for the Court to consider,

3   including "the costs, risks, and delay of trial and appeal."

## III. ARGUMENT

**A.   The Court Will Likely Be Able to Certify A Settlement Class Following a Final Fairness Hearing**

7         The Court should find that it will likely be able to certify a settlement class

8   following a final fairness hearing, because each of the Rule 23(a) conditions are satisfied

9   and the proposed settlement class qualifies for treatment under Rule 23(b)(3).   Under

10   Rule 23(a), class certification is appropriate if "(1) the class is so numerous that joinder

11   of all members is impracticable; (2) there are questions of law or fact common to the

12   class; (3) the claims or defenses of the representative parties are typical of the claims or

13   defenses of the class; and (4) the representative parties will fairly and adequately protect

14   the interests of the class."   A class may be certified under Rule 23(b)(3) when "the court

15   finds that the questions of law or fact common to class members predominate over any

16   questions affecting only individual members, and that a class action is superior to other

17   available methods for fairly and efficiently adjudicating the controversy."

18         For the reasons described below, the Parties' proposed settlement class consisting

19   of "All Drivers and other similarly-titled employees with similar job duties employed by

20   Defendants to perform work in the State of California who earned mileage based

21   compensation between March 22, 2006 through January 31, 2019" satisfies each of these

22   elements.

23

24

SMRH:4812-6567-9261.3          JOINT SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL
                               OF THE PARTIES' CLASS ACTION SETTLEMENT

### 1.  Rule 23(a)

#### a.  Numerosity

As described in the declaration of Robert Mussig submitted with Defendant's Reply in support of preliminary approval, there are 19,626 persons who meet the proposed class definition.  Dkt 45-1, ¶ 4.  As general rule, classes of more than 40 persons are presumed sufficiently numerous to satisfy Rule 23(a)(1).  *In re Cooper Companies Inc. Sec. Litig.*, 254 F.R.D. 628, 634 (C.D. Cal. 2009).  The proposed settlement class of 19,626 easily qualifies.  *See Gatdula v. CRST Int'l, Inc.*, 2015 WL 12765542, at *3 (C.D. Cal. 2015) (settlement class of over 10,000 persons in employment case against trucking company satisfies numerosity requirement) (C.J. Phillips).

#### b.  Commonality

A settlement class has "sufficient commonality 'if there are questions of fact and law which are common to the class.'"  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) (quoting Rule 23(a)(2)).  "Rule 23(a)(2) has been construed permissively" and  "[a]ll questions of fact and law need not be common to satisfy the rule.  The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class."  *Id.*

Here, the proposed class consists of a discrete group of individuals who were employed by Defendant as truck drivers to perform work in California and who earned mileage-based pay.  Plaintiffs' allegations in these cases are that these drivers were not authorized and permitted to take meal and rest periods as a result of alleged job responsibilities and lack of affirmative scheduling of breaks, that Swift's class wide mileage-based compensation systematically fails to pay drivers for all hours worked performing non-driving tasks (such as completing paperwork), and that Swift did not

JOINT SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF THE PARTIES' CLASS ACTION SETTLEMENT

1    reimburse the proposed class for expenses such as cell phone usage, gas, and tolls.

2    *Burnell* Dkt. 107; *Rudsell* Dkt. 1, Exh. A; Saucillo Decl., ¶ 4; Rudsell Decl., ¶ 4.

3    Plaintiffs further assert derivative claims that the entire settlement class was not provided

4    accurate wage statements and was not paid wages timely upon separation of employment.

5    *Id.*

6         While Defendant disputes both the legal and factual validity of these claims, they

7    present common issues that support certification of a settlement class.  Other common

8    issues in this case are the effect and validity of the December 21, 2018 Federal Motor

9    Carrier Safety Administration ("FMCSA") determination that California's meal and rest

10   laws are preempted under 49 U.S.C. § 31141 and whether the Court's denial of

11   certification of a litigation class should be reversed.[1]  *See In re DRAM Antitrust Litig.*,

12   2013 WL 12333442 at *56 ("the proposed settlement classes have a common interest in

13   the outcome of an appeal of the denial of litigation class certification that predominates

14   over any individual certification issues for purposes of Rule 23(b)(3).")

15        Indeed, courts have regularly held that similar wage and hour claims arising from

16   similar allegations present common issues of fact and law for purposes of a settlement

17   class.  In *Gatdula v. CRST Int'l, Inc.*, 2015 WL 12765542, at *3 (C.D. Cal. 2015), this

18   court held that a proposed settlement class of employee truck drivers asserting claims

19   similar to the ones in this case demonstrated sufficient commonality to certify a

20   settlement class.  *Id.* ("Plaintiffs contend the class members share common questions

21   arising out of CRST's policies regarding hourly compensation, its indemnification of

22   employee expenses, and its payment of wages owed upon termination…these contentions

23

24  

[1] A copy of the FMCSA's preemption determination is attached to this supplemental brief as Exhibit A.

satisfy the commonality inquiry."). Likewise, *Rodriguez v. Penske Logistics, LLC*, 2017 WL 4132430, at *6 (E.D. Cal. 2017) found sufficient commonality to certify a settlement class in a case challenging the lawfulness of a motor carrier's piece-rate compensation system similar to the challenge Plaintiffs assert in this case. In *Rodriguez*, as here, "the parties agree[d] the class [wa]s subject to common compensation policies" and "whether each of those policies violates California law presents several common questions" for purposes of certifying a settlement class. *Id.*; *see also Fowler v. Union Pac. R.R. Co.*, 2018 WL 6318836, at *3 (C.D. Cal. 2018) ("there are questions of law and fact common to the settlement class, including Defendant's alleged uniform unlawful policy or systematic practice of failing to pay its former employees wages due to them on a timely basis upon separation of their employment").

For these reasons, there is a sufficient record of commonality to support preliminary approval of the Parties' settlement.

### c.   Typicality

Under Rule 23(a)(3), "representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. "The class representative must be able to pursue his or her claims under the same legal or remedial theories as the represented class members." *In re Paxil Litig.*, 212 F.R.D. 539, 549 (C.D. Cal. 2003).

Here, both settling Plaintiffs were California residents employed by Swift as drivers earning mileage-based pay during the settlement class period. Saucillo Decl., ¶ 2; Rudsell Decl., ¶ 2. Both Plaintiffs allege that their mileage-based pay did not compensate them for all of their worktime, that there were unable to take meal and rest breaks, and that certain work expenses went unreimbursed. *Burnell* Dkt. 107; *Rudsell* Dkt. 1, Exh. A;

-15-

1    Saucillo Decl., ¶ 4; Rudsell Decl., ¶ 4.  Plaintiffs' claims are therefore typical of the

2    proposed class's claims, and Rule 23(a)(3) is satisfied for purposes of certification of a

3    settlement class.  *See Gatdula*, 2015 WL 12765542, at *4 (typicality satisfied where

4    "Plaintiffs both allege they were CRST employees and that CRST failed to pay them a

5    minimum wage, failed to reimburse them for business expenses, and failed to pay them

6    all vacation owed to them upon termination").

7              d.   Adequacy

8             "Resolution of two questions determines legal adequacy: (1) do the named

9    plaintiffs and their counsel have any conflicts of interest with other class members and

10   (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf

11   of the class?"  *Hanlon*, 150 F.3d at 1020.  Plaintiffs' counsel have no conflicts with the

12   proposed class and are highly capable attorneys with substantial California wage and

13   hour class action experience who have vigorously litigated this action many years, which

14   included taking 7 Rule 30(b)(6) depositions of Defendant, preparing a robust motion for

15   certification of a litigation class, and petitioning for permission to appeal the Court's

16   denial of class certification.  Hawkins Decl. [*Rudsell* Dkt. 32-1]; Saltzman Decl. [*Rudsell*

17   Dkt. 32-3].  The named Plaintiffs understand their duties as class representatives and do

18   not have any conflicts with the proposed class members.  Saucillo Decl., ¶¶ 3-7; Rudsell

19   Decl., ¶¶ 3-7.  Plaintiff Saucillo also sat for two days of deposition in fulfilling his role as

20   class representative.  Saucillo Decl., ¶ 6.

21            The Court should therefore find that it will likely be able to conclude that Plaintiffs

22   and their counsel are adequate class representatives.

23

24

2.     **Rule 23(b)(3)**

a.     Predominance

"The predominance analysis under Rule 23(b)(3) focuses on 'the relationship between the common and individual issues' in the case and 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'"  *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 545 (9th Cir. 2013) (quoting *Hanlon*, 150 F.3d at 1022).  "When one or more of the central issues in the action are common to the class and can be deemed to predominate, certification may be proper under Rule 23(b)(3) even though other important matters, such as damages or affirmative defenses, will have to be tried separately."  *Gatdula*, 2015 WL 12765542, at *5.

In this case, and for the purposes of settlement, the common issues identified above predominate over any individualized questions.  The entire class was compensated by the same piece-rate mileage-based system, which Plaintiffs contend is facially unlawful. Plaintiffs also allege that the entire class was uniformly deprived of meal and rest breaks and reimbursement of business expenses.  Furthermore, a significant common issue is the impact the December 21, 2018 FMCSA preemption determination and other potential future determinations on the proposed class claims.  If the FMCSA determination is upheld and deemed retroactive, it would preempt the entire class' meal and rest break claims.

Under similar circumstances, courts have not hesitated to find predominance for purposes of a Rule 26(b)(3) settlement class.  *See*, *e.g.*, *Rodriguez*,  2017 WL 4132430, at *7 ("Defendant's policies present several questions common to the class that predominate over any individualized inquiry"); *Nunez v. BAE Sys. San Diego Ship Repair Inc.*, 292 F. Supp. 3d 1018, 1036 (S.D. Cal. 2017) ("the common issues of whether Defendant's

1   policies and practices failed to, for example, compensate Class Members for all time

2   worked, provide an opportunity for compliant meal and rest periods, and provide accurate

3   wage statements predominate over the individual issues such as length of employment

4   and particularized grievances"); *Torchia v. W.W. Grainger, Inc.*, 304 F.R.D. 256, 267

5   (E.D. Cal. 2014) ("In this case, the parties agree that common issues predominate over

6   any individual issues because the 'compensation and reimbursement policies'

7   implemented by Defendant 'uniformly applied to the Class Members'"); *Gatdula*, 2015

8   WL 12765542 at *5 ("Plaintiffs have demonstrated that common issues predominate over

9   individualized concerns").

10              b.    Superiority

11         "The superiority inquiry under Rule 23(b)(3) requires determination of whether the

12   objectives of the particular class action procedure will be achieved in the particular

13   case…This determination necessarily involves a comparative evaluation of alternative

14   mechanisms of dispute resolution." *Hanlon*, 150 F.3d at 1023. **When the parties seek**

15   **certification of a settlement class only, the court need not consider trial**

16   **manageability concerns in addressing superiority**. *Fowler v. Union Pac. R.R. Co.*,

17   2018 WL 6318836, at *5 (C.D. Cal. 2018); *McCrary v. Elations Co., LLC*, , 2015 WL

18   12746707, at *7 (C.D. Cal. 2015).

19         In this case there are over 19,000 proposed class members whose claims involve

20   allegations of non-compliant meal and rest breaks and up to 30 minutes of other unpaid

21   time per day.  Dkt. 32 at p. 20.  In light of the size of the proposed class and relatively

22   small amounts at stake, a comprehensive class settlement is superior to 19,000 individual

23   actions seeking unpaid wages and business expenses and compensation for non-

24   compliant meal and rest breaks.  *See Gatdula*, 2015 WL12765542 at *5 ("Where

1   recovery on an individual basis would be dwarfed by the cost of litigating on an

2   individual basis, this factor weighs in favor of class certification"); *see also Fowler*, 2018

3   WL 6318836 at \*5 ("it would not be economical for individual class members to litigate

4   their claims because of the disparity between the litigation costs and the potential

5   recovery…Accordingly, the Court concludes the superiority requirement is also

6   satisfied").

7         The Court should therefore conclude it will likely be able to find that a class

8   settlement is a superior means of responding the Parties' disputes.

9         For all of the foregoing reasons, the record before the Court permits it to find that it

10   will likely be able to certify a settlement case under Rule 23(b)(3).  Preliminary approval

11   of the Parties' settlement should therefore be granted.

12   **B.**    **The Court Will Likely Be Able to Conclude the Proposed Settlement is Fair,**

13            **Reasonable and Adequate Following a Final Fairness Hearing**

14         A proposed class settlement negotiated at arm's length between counsel comes

15   before the Court with a presumption of fairness.  *Corson v. Toyota Motor Sales U.S.A.,*

16   *Inc.*, 2016 WL 1375838, at \*7 (C.D. Cal. 2016); *Nat'l Rural Telecommunications*

17   *Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004).  The Ninth Circuit has a

18   "strong judicial policy that favors settlements, particularly where complex class action

19   litigation is concerned" that must inform whether a proposed class settlement is fair,

20   reasonable, and adequate.  *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir.

21   2008); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

22         The Ninth Circuit "put[s] a good deal of stock in the product of an arms-length,

23   non-collusive, negotiated resolution" and does not "prescribe[] a particular formula by

24   which that outcome must be tested." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965

(9th Cir. 2009).  "The proposed settlement is not to be judged against a hypothetical or speculative measure of what *might* have been achieved by the negotiators" and "[u]ltimately, the district court's determination is nothing more than 'an amalgam of delicate balancing, gross approximations and rough justice.'" *Officers for Justice v. Civil Serv. Com.*, 688 F.2d 615, 625 (9th Cir. 1982) (quoting *Detroit v. Grinnell Corp.*, 495 F.2d 448, 468 (2d Cir. 1974)).  "It is neither required, nor is it possible for a court to determine that the settlement is the fairest possible resolution of the claims of every individual class member; rather, the settlement, taken as a whole, must be fair, adequate, and reasonable."  *Shy v. Navistar Int'l. Corp.,* No. C3-92-333, 1993 WL 1318607, at *2 (S.D. Ohio 1993).

As discussed above, Rule 23(e)(2) sets forth various factors the Court must consider in determining whether a proposed class settlement merits approval.  Here, the Rule 23(e)(2) factors each weigh in favor of a finding that the Parties' settlement is fair, reasonable, and adequate.

## 1.     "The Class Representatives and Class Counsel Have Adequately Represented the Class"

Plaintiffs and their counsel have vigorously and tenaciously litigated this case over many years.[2]  Over one million pages of documents were produced in discovery, and at least 14 depositions (including **7** Rule 30(b)(6) depositions of Swift) were taken in the long course of this litigation.  *See In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 320 (N.D. Cal. 2018) ("Extensive discovery is … indicative of a lack of collusion, as the

---

[2] The relative lack of activity in *Rudsell* action is explained by the fact that the case was stayed in favor of the *Burnell* action for many years.  *Rudsell* Dkt. 26.  Plaintiff Rudsell had vigorously opposed Defendant's motion for a stay.  *Rudsell* Dkt. 21.

1    parties have litigated the case in an adversarial manner"); *Nat'l Rural*

2    *Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527–28 (C.D. Cal. 2004)

3    ("A settlement following sufficient discovery and genuine arms-length negotiation is

4    presumed fair"); *see also Hanlon*, 150 F.3d at 1026 ("the extent of discovery completed

5    and the stage of the proceedings" relevant to fairness of settlement).  Plaintiff Saucillo

6    and his counsel prepared a lengthy motion for class certification supported by a plethora

7    of evidence and, when the motion was denied, petitioned the Ninth Circuit for permission

8    to appeal under Rule 23(f).  Furthermore, there is no evidence of collusion or any

9    conflicts between Plaintiffs and their attorneys and the proposed class.  The first Rule

10   23(e) factor, whether "the class representatives and class counsel have adequately

11   represented the class," therefore weighs in favor of approval.

12          **2.      "The Proposal Was Negotiated at Arm's Length"**

13          There is no dispute that the Parties' settlement was reached after extensive and

14   lengthy arm's length, adversarial negotiations.  The Parties attended a full day mediation

15   with experienced and well respected mediator Mark Rudy on April 23, 2018, and

16   continued negotiating and haggling over the terms of the settlement (with Mr. Rudy's

17   continued assistance) until it was finally executed ***more than a year later*** in May 2019.

18   *See Glass v. UBS Fin. Servs., Inc.*, 2007 WL 221862, at *5 (N.D. Cal. 2007) (settlement

19   negotiated "with the assistance of a well-respected mediator with substantial experience

20   in employment litigation…supports approval of the settlement."  While both sides surely

21   would have liked to obtain more in the deal, the final agreement is something each Party

22   concluded it can live with and is the result of non-collusive, adversarial negotiations.  *See*

23   *Valdez v. Neil Jones Food Co.*, 2016 WL 4247911, at *8 (E.D. Cal. 2016) ("The Court is

24   to accord great weight to the recommendation of counsel because they are aware of the

1   facts of the litigation and in a better position than the court to produce a settlement that

2   fairly reflects the parties' expected outcome in the litigation"); *see also Lane v. Facebook,*

3   *Inc.,* 696 F.3d 811, 821-23 (9th Cir. 2012) ("[T]he district court properly declined to

4   undermine [the parties'] negotiations by second-guessing the parties' decision as part of

5   its fairness review over the settlement agreement").

6        Thus, the second Rule 23(e) factor, whether "the class representatives and class

7   counsel have adequately represented the class," supports approval of the Parties'

8   settlement.

9        **3.     "The Relief Provided for the Class Is Adequate"**

10        The Ninth Circuit does not require district courts to "specifically weigh[] the

11   merits of the class's case against the settlement amount and quantif[y] the expected value

12   of fully litigating the matter" in order to evaluate the fairness of a class settlement.

13   *Rodriguez*, 563 F.3d at 965.  Nor is the Court required to "find a specific monetary value

14   corresponding to each of the plaintiff class's statutory claims and compare the value of

15   those claims to the proffered settlement award."  *Lane*, 696 F.3d at 823.  The Court

16   further "need not reach any ultimate conclusions on the contested issues of fact and law

17   which underlie the merits of the dispute, for it is the very uncertainty of outcome in

18   litigation and avoidance of wasteful and expensive litigation that induce consensual

19   settlements."  *Officers for Justice v. Civil Serv. Com.*, 688 F.2d 615, 625 (9th Cir. 1982);

20   *see also Eisen v. Porsche Cars N. Am., Inc.*, 2014 WL 439006, at *3 (C.D. Cal. 2014)

21   ("Because absolute precision is impossible, 'ballpark valuations' are permissible,

22   especially when reached after mediated negotiation among non-collusive parties").

23        Here, the $7,250,000.00 settlement amount is fair, reasonable and adequate in light

24   of the posture of the case, rulings by this Court and others in similar matters, the

1   December 21, 2018 FMCSA preemption determination as well as the current political

2   climate in which it is entirely possible, perhaps likely, that other legislative and/or

3   political efforts may further undermine the viability of the claims in the case.   The

4   numbers allocated to Plaintiffs' claims in Plaintiffs' preliminary approval motion reflect

5   the absolute best case maximum recovery conceivably available at trial and do not

6   account for the ***significant obstacles*** will face in establishing such damages.   *See Officers*

7   *for Justice*, 688 F.2d at 624 (9th Cir. 1982) ("Of course, the very essence of a settlement

8   is compromise, a yielding of absolutes and an abandoning of highest hopes.") (quotations

9   omitted); *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) ("The

10  fact that a proposed settlement may only amount to a fraction of the potential recovery

11  does not, in and of itself, mean that the proposed settlement is grossly inadequate and

12  should be disapproved") (quotations omitted).   The numbers reflect an assumption that

13  Plaintiffs would be able to prove a 100% violation rate for the entire class and up to 70

14  minutes of unpaid work time every day, which would be extraordinarily difficult for

15  Plaintiffs to do even if they were somehow able to establish class-wide liability.

16        The Ninth Circuit has directed that district courts are to consider "the risk of

17  maintaining class action status throughout the trial" in evaluating the fairness of a class

18  settlement, which in this case creates a substantial risk that the proposed class will

19  recover ***nothing***.   *See In re Toys-R-Us-Delaware, Inc. – Fair and Accurate Credit*

20  *Transactions Act Litig.,* 295 F.R.D. 438, 452-53 (C.D. Cal. 2014) ("Avoiding the risk of

21  decertification . . . favors approval of [a] settlement); *see also McKenzie v. Fed. Exp.*

22  *Corp.*, 2012 WL 2930201, *4 (C.D. Cal. 2012) ("[S]ettlement avoids all possible risk [of

23  decertification]. This factor therefore weighs in favor of final approval of the

24  settlement").   The Court has already denied certification of a litigation class in the

-23-                                        Case No. 5:10-cv-00809-VAP-OP)

*Burnell* action and in two substantially similar cases against Defendant.  *Burnell v. Swift Transportation Co of Arizona, LLC*, , 2016 WL 2621616 (C.D. Cal. 2016); *Mares v. Swift Transportation Co. of Arizona, LLC*, 2017 WL 10592147 (C.D. Cal. 2017); *McKinsty v. Swift Transportation Co. of Arizona, LLC*, 2017 WL 10059288 (C.D. Cal. 2017). Furthermore, the Ninth Circuit denied petitions for permission to appeal the Court's orders denying class certification in each of these cases.  *Burnell*, Ninth Cir. No. 16-80070, Dkt. 10 *Mares*, Ninth Cir. No. 17-80096, Dkt. 3; *McKinsty*, Ninth Cir. No. 17-80148, Dkt 6.

In order to have any hope of recovering more than $0.00 for the proposed class, Plaintiff Saucillo will need to proceed to final judgment on his individual claims (perhaps requiring a trial), appeal the Court's denial of class certification, and convince the Ninth Circuit that the Court abused its discretion in declining to certify a settlement class; a highly deferential standard of review.  *See Coopers & Lybrand v. Livesay*, 437 U.S. 463 (1978) (denial of class certification appealable only from final judgment); *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 939 (9th Cir. 2009) ("We review a district court's order denying class certification for an abuse of discretion").  For Plaintiff Rudsell, the trek is even longer.  He will have to first move for class certification which will likely will likely be denied in light of the *Burnell*, *Mares*, and *McKinstry* orders), obtain a final judgment on his individual claims (perhaps following trial), and then appeal the denial of class certification.  The Parties are likely years away from resolving the threshold issue of class certification, let alone litigating the merits of Plaintiffs' class claims.  In light of the class certification difficulties Plaintiffs face and the time and expense needed to litigate them, the agreed upon settlement value is within the range of reasonableness. *See In re Toys R Us-Delaware*, 295 F.R.D. at 453 ("Estimates of a fair

JOINT SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF THE PARTIES' CLASS ACTION SETTLEMENT

settlement figure are tempered by factors such as the risk of losing at trial, the expense of litigating the case, and the expected delay in recovery (often measured in years)"; *Marshall v. Nat'l Football League*, 787 F.3d 502, 512 (8th Cir. 2015) (affirming approval of class settlement where "before settling, the parties had already spent three years in litigation and had not yet even achieved class certification").

Even if Plaintiffs are eventually able to overcome the hurdles associated with certifying a class, there is a **substantial** risk that Plaintiffs will not be able to prevail on the merits.  On December 21, 2018, the FMCSA exercised its authority under 49 U.S.C. § 31141 to **preempt** California's meal and rest break laws as applied to truck drivers subject to federal hours of service regulations, which in this case is **every single proposed class member**.  49 U.S.C. § 31141(a) ("A State may not enforce a State law or regulation on commercial motor vehicle safety that the Secretary of Transportation decides under this section may not be enforced")  The FMCSA clarified on March 22, 2019 that its preemption determination is intended to apply **retroactively** to all pending litigation.[3]  At least two federal courts in California have already concluded that the December 21, 2018 preemption determination is retroactive and dispositive of claims arising under California's meal and rest break laws.  *Henry v. Cent. Freight Lines, Inc.*, 2019 WL 2465330, at *4 (E.D. Cal. 2019); *Ayala v. U.S Xpress Enterprises, Inc.*, 2019 WL 1986760, at *3 (C.D. Cal. 2019).  These cases further hold that the district courts are powerless to question the validity of the preemption determination, because 49 U.S.C. § 31141(f) requires petitions for judicial review to be filed directly in an applicable Court of Appeals.  *Id.*  Thus, if Plaintiffs are to have any prospect for success on their meal and

---

[3]  A copy of the FMCSA's March 22, 2019 retroactivity opinion is attached to this supplemental brief as Exhibit B.

1  rest period claims, the Ninth Circuit will need to grant one of several pending petitions

2  for judicial review of the December 21, 2018 preemption determination under the

3  Administrative Procedures Act; a daunting proposition in light of the discretion afforded

4  to the FMCSA under 49 U.S.C. § 31141.[4]  *See* 5 U.S.C. § 706(2) ("agency action,

5  findings, and conclusions" may be set aside if they are "arbitrary, capricious, an abuse of

6  discretion, or otherwise not in accordance with law"); *see also Chevron, U.S.A., Inc. v.*

7  *NRDC, Inc.*, 467 U.S. 837 (1984).  In any event, no decision on any of the pending

8  petitions for judicial review is expected in the near future.

9       It is also worth noting that the political environment leading to the FMCSA

10  determination has not changed and it is entirely possible that further administrative or

11  legislative action could invalidate or severely limit Plaintiffs' other wage-hour claims.

12  **The value of the settlement must be viewed in the light of the possibility (a non-zero**

13  **possibility) that all of Plaintiffs' claims may ultimately be mooted by such action.**

14       Furthermore, this Court has granted summary judgment to the Defendant and

15  another motor carrier in similar cases asserting similar claims to those alleged by Plaintiff

16  here, even prior to the FMCSA determination of preemption.  *See Mares v. Swift*

17  *Transportation Co. of Arizona, LLC* (C.D. Cal. 2018); *Cole v. CRST, Inc.*, 2017 WL

18  1234215, at *1 (C.D. Cal. 2017).  There is significant risk that Plaintiffs' case would

19  ultimately meet the same fate given similarity of the facts, claims and legal theories,

20  which would then require yet another lengthy appeal with an uncertain prospect for

21  success.  *See Nat. Rural Telecomms. Coop v. DirecTV, Inc.,* 221 F.R.D. 523, 527 (C.D.

22   

---

23  [4] The FMCSA preemption determination arguably applies not only to Plaintiffs' claims

24  that Defendant did not provide meal and rest breaks, but also to their claims that
Defendant did not pay for employee time spent of rest breaks.

SMRH:4812-6567-9261.3    JOINT SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL
OF THE PARTIES' CLASS ACTION SETTLEMENT

1   Cal. 2004) ("Avoiding such a trial and the subsequent appeals in this complex case

2   strongly militates in favor of settlement rather than further protracted and uncertain

3   litigation"); *see also* Rule 23(e)(2)(C)(i) ("the costs, risks, and delay of trial and appeal"

4   should be considered in evaluating whether "the relief provided for the class is

5   adequate").

6       In light of the circumstances described above, the maximum exposure amount

7   $211,000,000 must be ***heavily discounted***.[5]  There is a distinct possibility that if the

8   settlement is not approved the settlement class members will walk away with ***nothing***.

9   Accordingly, the settlement sum of $7,250,000 is within the "range of possible judicial

10  approval" for purposes of preliminary approval. *Wright*, 259 F.R.D. at 472.  This sum

11  results in an average gross recovery of approximately $380 (before deductions for fees

12  and administration) per class member, which is fair and reasonable given the uncertainty

13  Plaintiffs will ***ever*** obtain a class recovery even if they spend the next several years

14  litigating the case.[6]  Furthermore, the Court will be in a better position to fully evaluate

15  the fairness of the settlement at a final fairness hearing after hearing from potential

16  objectors. *See Hanlon*, 150 F.3d at 1026 (court should consider "the reaction of the class

17  members to the proposed settlement").

18      Additionally, recognizing the large turnover rate incurred with truck drivers

19  throughout the industry, another manner to view the value of the settlement is to analyze

20  _____

21  [5] As noted in the Court's July 19, 2019 request for supplemental briefing, the maximum
    exposure amount of $211,000,000 consists of $96,000,000 for unpaid wages, half of the

22  unpaid wages claim ($48,000,000) for unpaid rest breaks, half of the unpaid wages claim
    ($48,000,000) for illegal meal breaks, and $19,000,000 for Plaintiffs' wage statement

23  claim.

    [6] $7,250,000 gross settlement amount / 19,000 class members = $381.58 per class

24  member.

1  the recovery in terms of the amount paid to each "full time equivalent" (FTE) position –

2  that is, how much would any driver who may have worked the entire class period

3  recover?  Here, while there are over 19,000 class members, they collectively worked in

4  only between 1,600 and 2,500 driver positions, depending on what part of the class

5  period is analyzed.  From approximately 2006 to 2012, the average number of class

6  member drivers employed by Defendant was approximately 1,600.  *Rudsell* Dkt., 2, ¶ 12;

7  *Burnell* Dkt. 4, ¶ 11.  Later, the average number of class member drivers employed by

8  Defendant increased to approximately 2,500.  *Peck v. Swift Transportation Co. of*

9  *Arizona*, 2:17-cv-06173, Dkt. 3, ¶ 10.  Dividing those numbers by the total gross

10  settlement yields an average FTE recovery of between $2,900 and $4,531.25.

11  For these reasons, under the third Rule 23(e) factor, whether "the relief provided

12  for the class is adequate," the Parties' settlement should be preliminarily approved.

13  **4.  "The Proposal Treats Class Members Equitably Relative to Each**

14  **Other"**

15  The Parties' settlement treats each proposed class member equally and allocates

16  awards based on standard, straightforward workweek basis.  *See Castillo v. Cox*

17  *Commc'ns, Inc.*, 2012 WL 12953434, at *3 (S.D. Cal. 2012) (preliminarily approving

18  wage and hour settlement allocated by workweeks); *see also Moody v. Charming*

19  *Shoppes of Delaware, Inc.*, 2009 WL 10699672, at *15 (N.D. Cal. 2009) ("a work-week

20  calculation is simply one of many ways to allocate a fair settlement in a class action").

21  Notably, the settlement is structured so that if the amount of workweeks the settlement is

22  based on increases, Swift will be required to contribute additional funds.

23  Thus, under the fourth Rule 23(e) factor, whether "the proposal treats class

24  members equitably relative to each other," the settlement should be approved.

-28-

JOINT SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL
OF THE PARTIES' CLASS ACTION SETTLEMENT

# IV.   <u>CONCLUSION</u>

For all the reasons set forth above, the Parties respectfully request that the Court grant preliminary approval of the settlement.

Dated:  July 29, 2019

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP


By       _____
                    /s/ *John Ellis*
                 PAUL S. COWIE
                 ROBERT MUSSIG
                 JOHN ELLIS
                 CORINNE K. HAYS
                 Attorneys For Defendants
             SWIFT TRANSPORTATION CO. OF
                 ARIZONA, LLC and SWIFT
             TRANSPORTATION COMPANY

Pursuant to Local Rule 5-4.3.4, I attest that the signatories listed below, and on whose behalf this filing is submitted, concur in the filing's content and have authorized this filing.

Dated:  July 29, 2019

JAMES HAWKINS, APLC


By       _____
                    /s/ *Gregory Mauro*
                 JAMES HAWKINS
                 GREGORY MAURO
                 Attorneys For Plaintiff
                 JAMES RUDSELL


Dated:  July 29, 2019

MARLIN & SALTZMAN, LLP


By       _____
                    /s/ *Stanley D. Saltzman*
                 STANLEY D. SATLZMAN
                 Attorneys For Plaintiff
                 GILBERT SAUCILLO