**JAMES R. HAWKINS, APLC**
James R. Hawkins, Esq. SBN 192925
Gregory E. Mauro, Esq. SBN 222239
9880 Research Drive, Suite 200
Irvine, CA 92618
TEL:   (949) 387-7200
FAX:   (949) 387-6676

Attorneys for Plaintiff, JAMES R. RUDSELL, on behalf of
himself and all others similarly situated

**MARLIN & SALTZMAN, LLP**
Stanley D. Saltzman, Esq. (SBN 90058)
29800 Agoura Road, Suite 210
Agoura Hills, CA   91301
Telephone:  (818) 991-8080
Facsimile:   (818) 991-8081
ssaltzman@marlinsaltzman.com

**SETAREH LAW GROUP**
Shaun Setareh, (SBN 204514)
315 South Beverly Drive, Suite 315
Beverly Hills, CA 90212
Telephone: (310) 888-7771
Facsimile: (310) 888-0109
shaun@setarehlaw.com

Attorneys for Plaintiffs GILBERT SAUCILLO, et al.

## IN THE UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN BURNELL, JACK POLLOCK, and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SWIFT TRANSPORTATION CO. OF ARIZONA, LLC,<br><br>Defendant. | **CASE NO.  EDCV 12-00692 VAP OPx**<br>Related Case: **5:10-CV-00809-VAP (OPx)**<br>(Assigned to the Hon. Virginia A. Phillips)<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>[Proposed Order and Declarations of S. Saltzman, J. Hawkins, and G.Mauro filed concurrently herewith]<br><br>Date:         July 8, 2019<br>Time:        2:00 p.m.<br>Room:       8A – First Street<br><br>Complaint Filed:    March 22, 2010<br>Trial Date:           None Set |

**TO:  ALL PARTIES HEREIN AND TO THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on July 8, 2019, at 2:00 p.m. or as soon thereafter as the matter can be heard in Courtroom No. 8A in the above entitled courthouse located at 350 First Street, Los Angeles, California, Plaintiff JAMES RUDSELL in Case no. EDCV 12-00692 VAP and Plaintiff GILBERT SAUCILLO in Case no. 10-CV-00809-VAP, which cases are pending consolidation by way of a Stipulation to Consolidate filed herewith, on their own behalf, and on behalf of the proposed settlement class, will move for preliminary approval of a class-wide settlement reached with Defendant Swift Transportation Co., Inc. ("Defendant") in the two cases pending for consolidation. Defendant does not oppose this Motion for Preliminary Approval.

This Motion is based upon this Notice, the accompanying Memorandum of Points & Authorities, the declarations of plaintiffs' attorneys James Hawkins, Greg Mauro and Stanley D. Saltzman, the Settlement Agreement entered into by the Parties which is attached as Exhibit 1 to the Declaration of James Hawkins ("Hawkins Decl."), and upon such further evidence, both documentary and oral, as may be presented at the hearing of said motion.

Plaintiffs hereby request by this motion that the Court enter an Order as follows:

(1) Conditionally certifying a settlement class defined as follows:

> **All Drivers and other similarly-titled employees with similar job duties employed by Defendants to perform work in the State of California who earned mileage based compensation between March 22, 2006 through January 31, 2019.**

(2) Preliminarily approving the proposed settlement, and approving the [Proposed] Order Granting Preliminary Approval of the Class Action Settlement, filed herewith, or such other Order granting the motion as the Court may issue;

(3) Directing that the settlement class be given notice of the settlement in the form of the proposed Notice to be agreed to by the Parties, which is attached as Exhibit 2 to the Hawkins Declaration; and

1        (4) Setting a hearing date for a final fairness hearing, at which hearing the Court

2    will consider final approval of the settlement, entry of a proposed final judgment, and

3    Class Counsels' application for an award of attorneys' fees and reimbursement of

4    costs and expenses, as well as a service award for each of the Class Representatives.

5

6

7

8    DATED:  June 2 , 2019            **JAMES HAWKINS, APLC**

9                                   **MARLIN & SALTZMAN, LLP**
                                    **LAW OFFICES OF SHAUN SETAREH**

10

11                               By:  /s/ Gregory Mauro
                                     James Hawkins, Esq.

12                                   Attorneys for Plaintiffs

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I.     INTRODUCTION AND NATURE OF RELIEF SOUGHT ....................................1

II.    SUMMARY OF THE LITIGATION ...............................................................6

    A.   Nature of the Case............................................................................6

    B.   Litigation History.............................................................................7

        1.   Summary of Significant Events in the Case ............................7

        2.   Brief Summary of the Litigation...........................................8

        3.   The Transition to Legislative Relief by the Industry............................9

    C.   Mediation .......................................................................................10

III.   SUMMARY OF THE SETTLEMENT ..........................................................11

    A.   Summary of Settlement Terms ........................................................11

    B.   Settlement Valuation Considerations...............................................12

    C.   Claim Valuations ............................................................................14

        1.   Unpaid Wage Claims – Labor Code § 1194 and Wage Order ...........14

        2.   Unpaid Rest Break Claim – Labor Code § 226.7/Wage Order ..........15

        3.   Illegal Meal Break Claim.................................................15

        4.   Wage Statement Claim - Labor Code § 226........................................15

        5.   Waiting Time Claim – Labor Code § 203 ............................................16

        6.   Total Valuation of Plaintiffs' Labor Code Claims .............................16

        7.   Private Attorneys General Act Claim – Labor Code § 2698..............17

IV.    CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE............18

V.     THE SETTLEMENT EXCEEDS THE STANDARDS FOR PRELIMINARY APPROVAL.............................................................................................20

VI.    NATURE AND METHOD OF CLASS NOTICE ...................................................23

VII.   CLAIMS ADMINISTRATION....................................................................24

VIII.  ATTORNEYS' FEES AND COSTS ...........................................................24

IX.    SERVICE AWARD FOR NAMED PLAINTIFFS ...........................................25

X.     CONCLUSION....................................................................................25

# **TABLE OF AUTHORITIES**

**Cases**

*Amchem Prod., Inc. v. Windsor,*
521 U.S. 591 (1997)....................................................................................18, 19

*Canela v. Costco Wholesale Corp.,*
2018 WL 3008532 (N.D. Cal. 2018).................................................................17

*Class Plaintiffs v. Seattle,*
955 F.2d 1268 (9th Cir. 1992) ..........................................................................20

*Cotter v. Lyft, Inc.,*
176 F.Supp.3d 930 (N.D. Cal. 2016) ................................................................17

*Dilts v. Penske,*
757 F.3d 1078 (20**) ..........................................................................2, 7, 8, 9

*Hanlon v. Chrysler Corp.,*
150 F.3d 1011 (9th Cir. 1998) ..............................................................20, 21, 23

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.,*
2013 WL 12333442 (N.D. Cal. 2013).................................................................20

*In re Heritage Bond Litigation,*
2005 WL 1594403 (C.D. Cal. 2005) ..................................................................20

*In re Initial Pub. Offering Sec. Litig.,*
226 F.R.D. 186 (S.D.N.Y. 2005) .......................................................................20

*In re Skilled Healthcare Grp., Inc. Sec. Litig.,*
2011 WL 280991 (C.D. Cal. 2011) ....................................................................21

*Jordan v. NCI Grp., Inc.,*
2017 WL 1821122 (C.D. Cal. 2017)..................................................................17

*Lewis v. Green Dot Corp.,*
2017 WL 4785978 (C.D. Cal. 2017)..................................................................19

*Morey v. Louis Vuitton N. Am., Inc.,*
2014 WL 109194 (S.D. Cal. 2014) ....................................................................19

*Nat'l Rural Telecommunication Cooperative v. DirecTv, Inc.,*
221 F.R.D. 523 (C.D. Cal. 2004) ......................................................................21

*Officers for Justice v. Civil Service Com'n of City and County of San Francisco,*
688 F.2d 615 (C.D. Cal. 1982).........................................................................21

*Rodriguez v. West Publishing Corp.,*
563 F.3d 948 (9th Cir. 2009)............................................................................23

*Rosenburg v. I.B.M.*,
    2007 WL 128232 (N.D. Cal. 2007)..........................................................19

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ...................................................................21

*True v. Am. Honda Motor Co.*,
    749 F.Supp.2d 1052 (C.D. Cal. 2010).......................................................21

## Statutes

Fed. R. Civ. P. 23.........................................................................................18, 23

FRCP Rule 23.............................................................................................. passim

Labor Code § 1194............................................................................................14

Labor Code § 203..............................................................................................16

Labor Code § 2699(e)(2)...................................................................................17

## Other Authorities

*Manual of Complex Litigation*, Fourth, § 21.632 (2004)...................................21

Newberg & Conte, *Newberg On Class Actions*, 3d Ed. (1992) § 11.41 ............21

Plaintiffs' Notice of Motion and Motion for Preliminary Approval       CV11-00809-VAP-OP

## MEMORANDUM OF POINTS & AUTHORITIES

## I.   INTRODUCTION AND NATURE OF RELIEF SOUGHT

Plaintiffs and the proposed settlement class, represented herein through the two actions as to which consolidation is being contemporaneously sought by way of the Stipulation for consolidation filed herewith, now move herein for preliminary approval of a non-reversionary "no claim form required" settlement of all claims asserted in the Proposed Joint Consolidated Complaint ("JCC") lodged herewith pursuant to the Stipulation of the Parties. The settlement includes the compromise of all claims that have been alleged to date in the two actions described below. The total monetary value of the proposed settlement is $7,250,000.00.

The Burnell case was extensively litigated from its inception on March 22, 2010 in state court through its removal to this Court and through to the denial of certification by this Court on May 4, 2016. (Docket No. 170). Thereafter, Plaintiffs' Rule 23(f) petition for review was denied.  During this time frame, the Rudsell action was initially involved in discovery and then was subject to a Court-ordered stay, and thus it was not brought to certification proceedings.

Throughout the life of these cases, and continuing without interruption since the denial of certification in 2016, a series of unrelated "truck driver" piece rate wage cases involving similar issues but involving different defendant trucking companies were ongoing and establishing a fairly consistent pattern of court rulings regarding both certification issues and legal liability issues, generally in plaintiffs' favor, and were being actively litigated.  At the same time, operating on an entirely different level, the trucking industry was actively seeking protective relief via sought after Congressional action in Washington, by way of several so-called Denham Amendments, (named after the sponsoring congressman), which amendments were intended to directly impact/limit such cases and their claims.  These Defendant in these "Swift Transportation" actions would have been direct beneficiaries of any such Congressional relief. While various

1  similar amendments were proposed several times over a two year period, each time they
2  either failed to "exit committee" or otherwise pass.

3      Ultimately, as this Court may be aware, after the trucking industry failed to obtain
4  the Congressional relief it had sought, it changed tactics in Washington and petitioned
5  directly to the FMCSA (the Federal Motor Carriers Safety Administration) for new
6  determination" to essentially overturn the Ninth Circuit's ruling in *Dilts v. Penske,* 757
7  F.3d 1078 (20**), wherein the Ninth Circuit had ruled that federal law did not preempt
8  California state meal and rest break laws.  On December 21, 2018 the industry obtained
9  that long-sought relief, when the FMCSA issued a new "determination," reversing its
10 prior conclusions that meal and rest break claims under California law were not
11 preempted, such that unless that determination is ultimately overturned by the Ninth
12 Circuit, such claims will be preempted, much to the dismay of the thousands of truck
13 drivers impacted thereby.  The new determination did not address the piece rate pay
14 issues also raised in these Swift cases and the other trucking cases, although the
15 proposed Denham amendments had attempted to also legitimize under a forced federal
16 rule the piece rate plans attacked in so many of the trucking cases, including the various
17 Swift actions.  This new "determination" was issued by the FMCSA while the settling
18 parties herein were hammering out the very last issues involved in the settlement now
19 before this Court, although the negotiations were always conducted under the cloud of
20 all of the Congressional and Agency level machinations described above.

21     Therefore, to say that this settlement now resolves cutting edge and ever-shifting
22 legal claims and defenses would be an understatement of massive proportions.  Not only
23 were the cases always conducted under the veil of newly developing law in the Ninth
24 Circuit and the federal courts nationwide, but they were also constantly being
25 challenged via legislative and administrative maneuvers taking place in Washington.

26     Against this backdrop, which includes a denial of certification by this Court not
27 only in Burnell, but also in two other later filed follow-on similar matters (i.e. "copy cat

28

Plaintiffs' Notice of Motion and Motion for Preliminary Approval          CV11-00809-VAP-OP

cases" – *Mares v. Swift* (Case no. CV 15-7920-VAP - denied certification on May 23, 2017 under docket no. 80 therein) and *McKinsty v. Swift* (Case no. CV 15-1317- VAP - denied certification on July 12, 2017 under docket no. 56 therein), this settlement addresses all of the issues involved in these piece rate pay plan cases, closes out the cases with finality, and will enable the parties to avoid the individual plaintiff trials which would be required in order to preserve the rights of the plaintiffs to then pursue post-trial appeals of this Court's rulings denying certification.

In addition to the denials of certification in the various Swift matters set forth above, this Court also had occasion to rule on certification in a very similar piece rate trucker pay case, in the matter of *Cole v. CRST, Inc.* (Case no. EDCV – 08-1570-VAP). In that matter, the class was originally certified by this Court, Docket no. 86, but several years later the class was ordered decertified by this Court, Docket no. 184, at 8. The proposed class therein was represented by the same set of law firms representing the plaintiffs herein within the two cases herein, such that they were well aware of this Court's rulings in the CRST matter.

In addition to this Court's rulings on certification of these Swift matters, and the CRST matter, this Court has also had occasion to rule on a motion for summary judgment directed at the Plaintiff MARES' claim that Swift had not "authorized and permitted rest periods." After full briefing, the Court held that Plaintiff MARES' claim and his derivative claim under the UCL were subject to summary judgment in favor of the Defendant, as set forth in Docket no. 110 in said action, cited above. Similarly, in the CRST action discussed above, this Court also granted summary judgment for the defendant under a similar piece rate pay plan, finding again that the employer had met its obligation to provide meal and rest breaks to the drivers. In said ruling, the Court in the CRST matter also found that the Defendant was entitled to summary judgment on the claim that the defendant had failed to pay minimum wages under the piece rate plan, thus ending that claim as well.

Plaintiffs' Notice of Motion and Motion for Preliminary Approval          CV11-00809-VAP-OP

Accordingly, it is simply undeniable that the issues which were litigated in the Burnell (Saucillo) action, and which were raised, initially litigated and then stayed in the Rudsell action, involved numerous novel and cutting-edge legal theories relating to class certification, piece rate liability under California's wage and hour laws, and federal preemption as to meal and rest break laws specifically, and other claims, generally. That never changed during the entire life of these cases. The body of law in this field is and has remained extremely fluid. Even at this time, four separate but now consolidated appeals to the Ninth Circuit are underway challenging the recent change in the view of the FMCSA relating to preemption of meal and rest break laws, as set forth in that Agency's December, 2018 determination.

As this Court's file in the Burnell action amply reflects, the parties therein engaged in extensive litigation, up to and including certification which was denied by the Court, and then the plaintiffs unsuccessfully sought Rule 23(f) review. Outside the purview of this Court, but no less extensively, the "players" in these matters, certainly including counsel for these settling plaintiffs, then engaged in the extensive congressional battles alluded to above. Absent settlement at this time, it is simply beyond question that the appellate battles ongoing in the Ninth Circuit will ultimately impact this matter, for the better or the worse depending on which side of the issues one falls on, and that other issues outside the realm of the recent FMSCA determination will require yet further Ninth Circuit intervention. The playing field is simply constantly evolving. Therefore, absent settlement, the Parties undeniably face many additional years of litigation beyond those already incurred, with ongoing uncertainty relating to certification, liability, and preemption in the Court as well as in Washington. Any relief recently obtained by the "industry" in Washington via the December 2018 FMCSA determination is also subject to being "rolled back" two years from now, when appeals in these matters will certainly still be ongoing, by virtue of the possibility of a change in the Administration in Washington, since it is likely that would result in the FMCSA

Plaintiffs' Notice of Motion and Motion for Preliminary Approval          CV11-00809-VAP-OP

reverting back to its pre-Trump era determination, which was actually first issued during the Bush "43" era, and affirmed during the Obama era. Accordingly, uncertainty is the "name of the game" and settlement is the most logical path for both sides.

Here, the settlement set forth in this motion was set in motion by way of a full day mediation with highly-respected wage and hour class action mediator, Mark S. Rudy, Esq. Although the matter was not fully detailed at that time, it was outlined in some detail and then more fully developed over the ensuing months, resulting in the settlement now before this Court.

Against this very complex set of governing circumstances, the Parties were finally able to reach a proposed class-wide settlement in the amount of $7.25 million. The details of the agreement are set forth in the Class Action Settlement Agreement, attached as Exhibit 1 to the Declaration of James Hawkins ("Hawkins Decl").

For Plaintiffs, the settlement represents a fair and reasonable recovery, factoring in the extreme and realized risks set forth in the case summaries above, including the reality that this Court has denied certification in three separate Swift matters, and has decertified a very similar trucking case in the CRST matter. Although such rulings are subject to post-trial appeal, and thus these matters could yet still obtain certification, such a reversal at the Ninth Circuit is by no means likely, such that a significant compromise of the claims in order to obtain this settlement and enable some relief for the putative class members is a more than reasonable approach.

For Defendant, this settlement represents a bargained for but acceptable compromise, reflecting the risks of reversal of the order of denial of certification, which could then expose the Defendant to a more significant exposure. Accordingly, the Parties have resolved the case to avoid the continued risks and uncertainties of both litigation and Washingtonian politics, and to avoid the reality of expensive and further delays. It is time to close out these risks and these matters.

Importantly, the possibility of reversal on appeal is certainly sufficient reason for

1  the Court to now certify the case for settlement purposes, so that the will of the parties

2  to put this matter to rest on a class-wide basis with true finality can come to pass.

3         The settlement provides for a _**non-reversionary**_ payment of **$7.25 million**. _**No**_

4  _**class members will be required to submit claim forms to receive their share of the**_

5  _**settlement proceeds.**_ All participating settlement class members (i.e. those who do not

6  opt out), will have a check mailed to them once the settlement becomes final.

7         Additionally, the Parties will continue to work on an agreed form of the Notice

8  of Class Action Settlement, and will lodge it sufficiently before the scheduled hearing

9  to allow for its review by the Court.  The Parties have further agreed to the designation

10  of ILYM, Inc. as the Settlement Administrator.  ILYM has estimated that the costs of all

11  notice procedures and payment processes should be about $100,000.00.  The Settlement

12  Agreement also contains all other necessary terms of the settlement.

13         The Parties believe that the proposed settlement satisfies the tests necessary so

14  that it can be determined to be fair, reasonable, and adequate, such that the Court should

15  grant preliminary approval, permit Notice to be mailed to the putative class members,

16  and set a hearing for final approval.

17  **II.    SUMMARY OF THE LITIGATION**

18         **A.    <u>Nature of the Case</u>**

19         Plaintiffs and the proposed settlement Class Members are/were employed by

20  Defendant as employee truck drivers primarily driving within the state of California.  It

21  is that driving time that is being resolved herein.  Plaintiffs have consistently alleged,

22  in both actions, that Defendant utilized/imposed pay plans which violated various

23  provisions of the California Labor Code.  Defendant in turn has consistently maintained

24  that its pay plans are legal and has indicated that it fully intended to seek appellate

25  review of any order finding otherwise.

26         Plaintiffs alleged in both actions that Defendant's mileage-based pay violated

27  California law in that it did not allocate pay for certain tasks drivers had to perform, i.e.

28

pre- and post-trip inspections, loading, unloading, fueling, maintenance, hooking or unhooking trailers, waiting time, and completing paperwork, and because Defendant did not provide paid rest breaks. Plaintiffs also alleged various other violations of California's employment laws, including a failure to reimburse necessary business expenses.  Defendant denied these allegations, and also argued that Plaintiffs' claims were preempted by federal law.  Although the aforementioned *Dilts* decision ruled that preemption was not a valid defense, the recent FMCSA determination, wholly outside the court system, found otherwise, and is now being challenged in the Ninth Circuit. Those appeals will be conducted under a different appellate standard than that which governed the *Dilts* decision, so the end result is anything but certain.  Thereafter, whatever is decided by the Ninth Circuit is likely to be the subject of petitions for review to the United States Supreme Court.

The long and winding path of these many issues amply demonstrates the risks of litigation. Even with the class certification motion denied, Plaintiffs have always intended to see this through to final appellate review, absent a reasonable settlement. Plaintiffs also have representative claims under the Labor Code Private Attorneys' General Act, Cal. Lab. Code §§ 2698, et seq. ("PAGA"), which do not need to be certified.  Such a settlement is now presented—one which will very likely receive broad support from the settlement class members. Accordingly, preliminary approval and notice to the class are requested.

**B.   Litigation History**

**1.   Summary of Significant Events in the Case**

In the past nine years, the following milestone events have occurred:

- The *Burnell* case was filed on March 22, 2010, and thereafter removed to this Court;

- The *Rudsell* case was filed on January 10, 2012, and also removed to this Court;

- The *Rudsell* case was the subject of pre-certification litigation and eventually was

1  stayed by order of this Court, on April 29, 2013;

2  • The Burnell case was the subject of extensive pre-certification litigation, including

3  many depositions of parties and corporate witnesses, as well as extensive

4  productions of records by the Defendant—all of the discovery and investigation

5  went to not only the class claims but also to the representative PAGA claim, which

6  is predicated on the same factual allegations as the class claims;

7  • The *Burnell* plaintiffs filed their motion for class certification on January 22, 2016;

8  • After full briefing, the motion was argued on April 25, 2016, and ultimately denied

9  by the Court on May 4, 2016 (Docket no. 170);

10  • Plaintiffs' filed a petition for review under Rule 23(f), which after briefing was

11  denied by the Ninth Circuit on July 18, 2016;

12  • There has not been any ruling on the PAGA claims asserted in either *Burnell* or

13  *Rudsell*;

14  • The above-noted Denham Amendment was first proposed in late 2016, and

15  thereafter it and various additional iterations of the same failed to be enacted, for

16  various reasons;

17  • On December 21, 2018, the FMCSA issued a new and different "determination" to

18  that which said agency had previously issued, finding that California's meal and

19  rest break laws were preempted, contrary to the Ninth Circuit's ruling in the *Dilts*

20  case, as to which the United States Supreme Court had not granted review;

21  • After all of the above was completed, and more, the Parties reached the settlement

22  now before this Court.

23  **2.    Brief Summary of the Litigation**

24  From its inception, the *Burnell* case was heavily litigated, including extensive

25  pre-certification discovery covering both liability and damages, and production of

26  extensive payroll and pay-related databases, payroll records, Department of

27  Transportation logs, and other driver logs. Plaintiffs also obtained corporate policy

28

Plaintiffs' Notice of Motion and Motion for Preliminary Approval          CV11-00809-VAP-OP

documents relating to Defendant's pay plans and related documents, all geared towards possible certification of the case and/or pursuit of the representative claim under PAGA. Plaintiffs deposed many different multiple corporate witnesses, including Rule 30(b)(6) designees, as well as third party witnesses including for example a corporate witness for the entity which provided the on-board computer software and hardware used by the Defendant in each of the trucks driven by the putative class members. Defendant also deposed the proposed class representatives. Thereafter, Plaintiffs moved for class certification on January 22, 2016.  Dkt. 134. The Court denied the motion on May 4, 2016.  The petition for interlocutory review was then denied.  There has not been any ruling on the propriety of the PAGA claim. Similarly, the Rudsell action engaged in pre certification discovery prior to the Court granting Defendant's motion to stay.

### 3.    The Transition to Legislative Relief by the Industry

Thereafter, while evaluating the most efficient options available to bring the case forward while preserving the ability to appeal the Court's denial of certification, the plaintiffs herein and the plaintiffs' bar generally in similar trucking wage and hour piece rate litigation matters began to face the onslaught of challenges in Washington on the Congressional level described above.  This was by way of the Denham Amendments discussed above, which were brought forth with the goal to preempt state law on meal and break claims and to affirmatively decide that the piece rate plans so often at issue in these cases would be legislatively declared "legal."  Any such result would have doomed not only these cases against Swift, but moreover all such cases.

After an extensive two-year battle on that front, with heavy lobbying on both sides, the end result was that none of the amendments ultimately were ever enacted (several varying ones were proposed over two years, in differing sub-committees).  In the fall of 2018, the mid-term congressional elections brought in a democratic house majority in Congress, effectively ending the trucking industry's hopes for its long sought legislative relief from the impact of the *Dilts* decision.

Plaintiffs' Notice of Motion and Motion for Preliminary Approval          CV11-00809-VAP-OP

Having failed to obtain the relief it sought in Congress, the trucking industry then moved its efforts to the agency level, petitioning the FMCSA for a "determination" that California's meal and rest break laws are preempted.  This time, with a new agency head appointed by the Trump administration, it was successful in obtaining that relief, with the Agency issuing the December 2018 determination in its favor.  While that determination is currently facing multiple appeals in the Ninth Circuit, its ultimately fate is completely unknown.  But as also noted above, that which an agency can give, can apparently be taken back.  So whatever the end result of the current appeals, the ultimate end result may have to await the 2020 round of congressional and presidential elections.  IF the governing power shifts at that time, then it is possible, but by no means certain, that the 2018 determination of the FMCSA could change, yet again.

### C.   <u>Mediation</u>

In early 2018, Defendant in Plaintiff Rudsell's counsel agreed to engage in mediation, to attempt to resolve the long-running claims of the putative class members. Because it had been in a court-ordered stay, the Rudsell action had not yet moved for certification, but it had the benefit of having viewed this Court's approach to certification of these claims on three separate occasions.  The Parties agreed to a date for mediation.  In the meantime, counsel for Rudsell (the Hawkins Firm) reached out to counsel in the first filed action (Marlin & Saltzman/Setareh Law) to join in the mediation, in an attempt to reach a full resolution inclusive of the first filed claims and statute periods.  An agreement was reached to do so.

Under these conditions, the parties in fact engaged in an extended formal day of mediation on April 23, 2018.  While no settlement was reached that day, the parties did make sufficient progress to enable them to continue their negotiations in follow-up telephonic discussions, still under the auspices of the mediator.  Ultimately, on May 14, 2018, an agreement regarding the total amount to be paid was reached.  Negotiations went on for many more months, as to the final agreed terms and conditions.

Plaintiffs' Notice of Motion and Motion for Preliminary Approval          CV11-00809-VAP-OP

## III.   SUMMARY OF THE SETTLEMENT

### A.   Summary of Settlement Terms

The comprehensive terms of the settlement are set forth in the Class Action Settlement Agreement attached to the Hawkins Decl. as Exhibit 1. The primary terms thereof include the following:

- Defendant will pay a total $7,250,000.00, which is the Gross Settlement Amount ("GSA"), all of which is non-reversionary;

- The GSA includes all payments to settlement class members, employee- and employer-side payroll taxes, settlement administration costs, attorneys' fees and costs, service awards, as well as the payment to the LWDA under the PAGA claim.

- There will be no claims process of any kind imposed upon the settlement class members. All settlement class members who do not opt out of the settlement will be mailed their respective settlement checks following final approval;

- As a condition of the settlement, the Parties are also jointly requesting that the Court grant certification of the proposed settlement class of drivers;

- The Parties have agreed that $500,000 of the GSA will be paid to the LWDA to resolve PAGA claims;

- Class Counsel shall apply to the Court at final approval for an award of fees and costs. Said fees include all of the work performed in the nine years to date, and all remaining work in securing Court approval of the Settlement, then making sure that the Settlement is fairly administered, and obtaining dismissal of the action. Defendant will not object to a fee request by Plaintiffs' counsel in an amount not to exceed one-third (1/3) of the Settlement fund, nor will Defendant object to a request by Class Counsel for reimbursement of reasonable costs and expenses in an amount not to exceed $75,000.00, as documented by their cost billings to be submitted at final approval;

- Each of the two representative Plaintiffs will seek a service award of $5,000, to which the Defendant does not object;

- Each class member who does not opt out of the settlement will be entitled to receive a proportionate share of the total Net Settlement Fund based upon his or her respective share of the total class' workweeks;

- The parties have selected ILYM, Inc. as the Claims Administrator.

### B.     Settlement Valuation Considerations

As with all settlements, the settlement represents a compromise. This is especially true where, as here, certification has been denied not once, but actually on three separate occasions, where summary judgment motions on key issues have been granted in favor of the defendant, and where critical claims have now been subjected to federal agency intervention declaring them to be preempted, after both court and congressional efforts failed to achieve that goal. Aside from all those concerns from the plaintiffs' side, there were and still remain significant disagreements between the Parties as to the facts, the law, and the application of both to Defendant's business model.

Because of the unique procedural posture of the cases at the time of settlement, the Parties could not use normal settlement valuation methodologies, because certification had been denied and summary judgment had been granted in a related case. The Parties were left to negotiate a settlement where perhaps the most critical factor was the percentage likelihood of Plaintiffs succeeding on their appeals of (1) the denial of certification, and (2) the reversal of the FMCSA determination, both Ninth Circuit matters. IF those appeals were ultimately successful, then the usual discount factors could be applied. Thus, the negotiations took place under a highly unusual and heavily contested framework.

If the FMCSA appeal and certification appeal were ultimately unsuccessful, then the case value would literally amount to whatever the two plaintiff cases might be worth – in the range of a few thousand dollars each, perhaps. Similarly, the potential value of

the PAGA claim would have to be viewed in the context of the analysis established by this court for the underlying factual claims, which was not a powerful context for the plaintiffs.  It must be recalled that the Court had previously granted summary judgment in favor of the Defendant on the meal and rest break claims of the MARES plaintiffs, as well as in the unrelated but very similar CRST action, plus the minimum wage claim of the individual plaintiff James Cole in the CRST action following the denial of certification.  Finally, as with any alleged PAGA violation, if one could be proven here, it would still be subject to the exercise by the Court of its statutorily granted broad discretion to reduce the amount of any penalties, as is true in all PAGA claims.

Given the extensive case workup, up to and beyond the denial of certification, the Parties were able to develop a deep understanding of the relative strengths (or weaknesses) of the respective class and representative claims (if the class was reinstated by eventual appellate review) and the relative values thereof.  They were able to consider all available information in order to reach their respective evaluations.

However, the primary starting point for any claim valuation herein necessarily had to be the subjective but informed evaluation of the percentage likelihood of eventually obtaining Ninth Circuit reversal of this Court's order(s) denying certification, AND its grant of summary judgment.  Absent such appellate relief, the class claims would be worthless and the PAGA claims would be similarly subject to very minor valuation.  That percentage likelihood, based on historical Ninth Circuit trends and results, was valued by the Plaintiffs in the range of roughly 25%.  So whatever the normally discounted valuation of the rate of recovery might be in terms of settlement value, no less than a further 75% reduction had to then be applied to account for the fact that the case(s) were of no or little value absent Ninth Circuit reversal.

Against this backdrop, the moving parties present what they believe is a reasonable case valuation, against which the settlement negotiations played out. To be clear, it represents a conservative estimation of value, recognizing the palate on which

this particular case "painting" must be presented.  Litigants who have thrice been denied certification, and who have also suffered summary judgment against them, have no place offering "rosy" evaluations of their cases.

**C.   Claim Valuations**

**1.   Unpaid Wage Claims – Labor Code § 1194 and Wage Order**

Plaintiffs long recognized that the available data and/or information would create issues with the presentation of some of the various tasks which they asserted were unpaid.  Plaintiffs' focused on the pre- and post-trip inspections, which were the strongest of the claims, followed by the waiting time for loads and between loads, the fueling time, and finally the time drivers spent completing paperwork.

In terms of valuation, Plaintiffs believe that if they could recover for the stated unpaid tasks, that inspections would likely be in the 20-minute range per day, waiting time which was provable could be in the 30-minute range per day, fueling perhaps 15 minutes per day, and paperwork 5 minutes per day.  This would total about 70 minutes per day, per driver.  With an estimated 2500 drivers per day incurring that allegedly unpaid time, over the course of a year that would total $7,437,500.00 per year, and with 13 years that could reach up to $96 million for unpaid wages.  Allowing for normal trial risks and uncertainties, the trial value of this claim could reasonably be argued to be about 50% of that amount, accounting for trial risk, leaving a value of about $48,500,000.00.  For settlement purposes, given the denial of certification and the necessary appeal of the same, after allowing for that appellate risk factor, with a roughly 25% likelihood of reversing this Court's adverse rulings, that would require the application of the above-stated 75% reduction, reducing the unpaid wages claim down to an estimated $12,000,000.00.  That would be a reasonable starting point for that claim at mediation.  From Defendant's perspective, of course, it viewed the appellate risk much harsher than did the Plaintiffs.  It could reasonably view that risk with a 90% value reduction, leaving that claim with a value of no more than $4,800,000.00.

### 2.     Unpaid Rest Break Claim – Labor Code § 226.7/Wage Order

The value of the claim for the failure to provide paid rest breaks, is much more problematic.  This claim has now been twice disposed of by this Court on summary judgment in the cases mentioned above, and it is of course possible that there are other such rulings by this Court, as there are by other courts.  It is difficult to put anything other than a minimal value on this claim.  Valuing this claim at approximately 50% of the unpaid wages is probably reasonable, such that it could have a value of around $6,000,000,00.

### 3.     Illegal Meal Break Claim

The value of the claim for the failure to provide meal breaks, is as problematic as the analysis of the rest break claims, perhaps more so.  Thus, it is once again difficult to put anything other than a minimal value on this claim.  Valuing it at or just above the range discussed above for the rest breaks is probably reasonable, such that it also could have a value of around $6,000,000,00.

### 4.     Wage Statement Claim - Labor Code § 226

This claim, as with others, presented numerous problems.  Plaintiffs faced defenses relating to whether the alleged violations were "knowing and intentional"— especially since other courts have struggled to find "willfulness."  The gross value of this claim is somewhat uncertain, since there is so much turnover of the Defendant's drivers, as evidenced by just over 19,000 drivers having held the roughly 2,500 driver positions which are available at any one time.  With a 9 to 1 ratio of former to current drivers, it is likely that most drivers, on average, reach about ¼ of the time required to reach the maximum penalty of $4,000.00 each, such that their claims would average about $1,000.00 each.  That would total about $19,000,000.00, based on the 19,000 class members.  Then, applying the normal discount for trial risk, and for having to show intentional conduct, at least 50% must be reduced, bringing the claim value sown to $9.5 million.  Thereafter, the appellate risk reduction factor of 75% must be applied,

given the grave risk of not reversing the certification denial on appeal.  This yields a claim value of $2,375,000.00.

### 5.   Waiting Time Claim – Labor Code § 203

The willful finding required for this claim is once again very problematic.  The reality is that this Court has previously granted summary judgment in favor of the Defendant on meal and rest break claims, as well as on minimum wages in a similar case – the CRST matter.  Thus, it is actually very difficult to see this claim getting to a jury, since this Court's expressed view is not favorable to the plaintiffs. Even if the Ninth Circuit was to reverse and remand, it is unlikely that the 203 claim would ever have any legs in future proceedings.  Thus it is assigned only a nominal value of $100,000.00.

### 6.   Total Valuation of Plaintiffs' Labor Code Claims

Based on the foregoing analysis, one can view the Labor Code and Wage claims as having a total reasonable trial exposure to the Defendant totaling $26,475,000.00. While Plaintiffs of course viewed the claims as much larger when they were being actively pursued, the eventual denials of certification and grants of summary judgment in Defendant's favor (both in Swift and the CRST) now absolutely require that the realistic assessments be reduced by the 75% factor discussed above.  Against this conservative, yet unfortunately realistic assessment, the $7,250.000.00 settlement represents a 27% recovery level – not as against what the case was deemed reasonably valued earlier on in the litigation, but against its actual value as a case in which certification has been repeatedly denied.

In any heavily-contested case involving multiple adverse rulings, and requiring multiple appeals in order to somehow get the case back on track, a 27% recovery would be considered exceptional.  Where, as here, the class has been denied certification and thus there is almost no value (at trial or otherwise) other than in the "value" of the

---

Plaintiffs' Notice of Motion and Motion for Preliminary Approval          CV11-00809-VAP-OP

appeal, this is an excellent recovery, when comparing the settlement value against the trial value.

### 7.    Private Attorneys General Act Claim – Labor Code § 2698

The only claim not factored in above is the PAGA claim.  The Parties have agreed to allocate the rather large and rarely seen sum of $500,000 to this claim, resulting in a 75% payment of that total to the State ($375,000), with the remaining $125,000 being returned to the Net Settlement Fund for distribution to the participating class members.

The evaluation of this claim begins with the recognition that PAGA awards are solely within the discretion of the court. Cal. Lab. Code § 2699(e)(2); *Cotter v. Lyft, Inc.*, 176 F.Supp.3d 930, 939 (N.D. Cal. April 7, 2016). Additionally, there is significant uncertainty about the continued validity of this claim in federal court. First, on August 22, 2018, the Ninth Circuit granted review of the following two certified questions: (1) whether, absent class certification, a PAGA plaintiff in federal court has Article III standing to represent absent aggrieved employees; and (2) whether a PAGA plaintiff in federal court can represent absent aggrieved employees without qualifying for class certification under Rule 23. *See Canela v. Costco Wholesale Corp.*, 2018 WL 3008532, at *1 (N.D. Cal. June 15, 2018). Second, although the weight of authority in federal courts in California supports the argument that there is no "manageability" requirement for PAGA claims, some courts do impose such a requirement. *See Jordan v. NCI Grp., Inc.*, 2017 WL 1821122, at *5 (C.D. Cal. Mar. 22, 2017) (analyzing conflicting cases). Again, this Court denied certification of the class herein. Additionally, if Plaintiffs were ultimately to prevail, the Court may decide to substantially reduce any PAGA penalties because Plaintiffs would already be recovering for the underlying Labor Code violations and any PAGA penalties on top of the amounts already awarded are argued by defendants to essentially be a "double recovery."

Thus, the claim is inherently difficult to "value", but for purposes of this settlement, the Parties have allocated the significant amount of $500,000.00.  Absent

1  recovery under one of the theories of recovery asserted in the underlying claims, there
2  could be no recovery for the PAGA claims.  This Court has expressed its views about
3  the strength, or lack thereof, of the meal and rest break claims, as well as the minimum
4  wage claims under the piece rate challenges.  Those views would not bode well for the
5  PAGA claims asserted herein.  The sum of $500,000.00 attributed to the PAGA claim is
6  a substantial allocation, which the LWDA will certainly find to be an excellent recovery
7  to add to its funding.  Once notice is mailed out, and the LWDA is also notified by the
8  filing of the settlement with the department, if it has any concerns about the recovery,
9  it will be free to express them to the Court.

10 **IV.    CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE**

11        As noted several times above, it is acknowledged that this Court has denied
12 certification of these claims on three occasions.  Those were all contested motions, where
13 the Defendant wished to defeat the class claims.  At this time, the Defendant has joined
14 with the Plaintiffs in seeking approval of the class settlement presented, which would
15 necessarily include certification of a settlement class.

16        Rule 23 (b)(3), under which certification is now sought for this settlement class,
17 is satisfied if "the court finds that the questions of law or fact common to class members
18 predominate over any questions affecting only individual members, and that a class
19 action is superior to the other available methods for fairly and efficiently adjudicating
20 the controversy." Fed. R. Civ. P. 23(b)(3). However, in the context of settlement,
21 courts—including the Supreme Court—have long held that the predominance
22 requirement is relaxed since the Court "need not inquire whether the case, if tried, would
23 present intractable management problems . . . for the proposal is that there be no trial."
24 *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

25        As relevant to this discussion, the Court's Order denying certification as to the
26 minimum wage claims focused on a failure to provide evidence of a general policy not
27 to pay the drivers minimum wage for all work (Burnell Order, at p. 6, Docket no. 170),
28

1  and also discussed the need for individualized inquiries as to both liability and damages,

2  both of which bases are rooted in manageability of the case for trial.  That is the precise

3  issue which the *Amchem* decision above stated was not a concern for settlement classes,

4  because there would be no trial.

5       Similarly, as to the meal and rest break claims, this Court essentially concluded,

6  at p. 8 of its ruling, that there was a lack of class-wide evidence as to "unrealistic"

7  scheduling requirements – again focusing on what is essentially a manageability issue

8  and thus not an issue which would prevent a settlement class from being approved.

9       In light of the guidance of the Supreme Court, as followed by many courts

10  thereafter, such issues are not a consideration when evaluating the appropriateness of a

11  class-wide settlement and the class necessary to facilitate the same. *Amchem*, 521 U.S.

12  at 620; *see also Lewis v. Green Dot Corp.*, 2017 WL 4785978, at *6 (C.D. Cal. June 12,

13  2017) ("[C]ourts need not consider the Rule 23(b)(3) considerations regarding

14  manageability of the class action, as settlement obviates the need for a manageable

15  trial.") (*citing Morey v. Louis Vuitton N. Am., Inc.*, 2014 WL 109194, at *12 (S.D. Cal.

16  2014) ("[B]ecause this certification of the Class is in connection with the Settlement

17  rather than litigation, the Court need not address any issues of manageability that may

18  be presented by certification of the class proposed in the Settlement Agreement."), and

19  *Rosenburg v. I.B.M.*, 2007 WL 128232, at *3 (N.D. Cal. 2007) (discussing "the

20  elimination of the need, on account of the [s]ettlement, for the Court to consider any

21  potential trial manageability issues that might otherwise bear on the propriety of class

22  certification")).

23       The settlement now before the Court eliminates many of the concerns the Court

24  expressed about the risk of individualized testimony being necessary to resolve

25  individual factual issues. In the settlement, the Parties have agreed who should be in the

26  settlement class and how the settlement funds should be allocated, so there will be no

27  need for individual inquiries into each driver's records or driving history to determine

28

---

Plaintiffs' Notice of Motion and Motion for Preliminary Approval          CV11-00809-VAP-OP

1    whether and how much he or she should receive.

2         The central legal question identified at each certification motion herein continues

3    to bind the class together sufficiently for settlement purposes: whether Defendant's

4    mileage-based compensation system complied with California law. Since "it [was] only

5    the difficulty of *answering* that question for plaintiffs . . . that defeat[ed] a finding of

6    predominance," the class should be certified for settlement purposes. *In re Initial Pub.*

7    *Offering Sec. Litig.*, 226 F.R.D. 186, 195 (S.D.N.Y. 2005); *see also In re Dynamic*

8    *Random Access Memory (DRAM) Antitrust Litig.*, 2013 WL 12333442, at *12 (N.D. Cal.

9    Jan. 8, 2013) ("The common issues of liability arising from the . . . alleged illegal

10   conduct predominate over any individual issues especially given that manageability is

11   not an issue insofar as a settlement class is concerned."). As the settlement here

12   eliminates any concerns the Court had with a class trial, Plaintiffs request certification

13   for purposes of settlement only.

14   **V.    THE SETTLEMENT EXCEEDS THE STANDARDS FOR**

15   **       PRELIMINARY APPROVAL**

16        The district court has broad discretion to approve Rule 23 class action

17   settlements, and should do so where the proposed settlement is "fair, adequate,

18   reasonable, and not a product of collusion." *Hanlon v. Chrysler Corp.,* 150 F.3d 1011,

19   1026 (9th Cir. 1998). In determining whether a settlement should be approved, the Ninth

20   Circuit has a "strong judicial policy that favors settlement, particularly where complex

21   class action litigation is concerned." *In re Heritage Bond Litigation*, 2005 WL 1594403

22   (C.D. Cal. June 10, 2005) (citing *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th

23   Cir. 1992)).

24        Court approval involves a two-step process in which the Court first determines

25   whether a proposed class action settlement deserves preliminary approval so that notice

26   of the same can be disseminated, and then after notice is given to Class Members,

27   whether final approval is warranted. *Manual of Complex Litigation*, Fourth, § 21.632

28

(2004); *Hanlon*, 150 F.3d at 1019. At the preliminary approval stage, the Court need only "determine whether the proposed settlement is within the range of possible approval." *True v. Am. Honda Motor Co.*, 749 F.Supp.2d 1052, 1063 (C.D. Cal. 2010). The court's intrusion on what is otherwise a private consensual agreement negotiated between parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice v. Civil Service Com'n of City and County of San Francisco*, 688 F.2d 615, 625 (C.D. Cal. 1982).

At the outset, there is a "strong initial presumption that the compromise is fair and reasonable." *Hanlon,* 150 F.3d at 1019. A class action settlement is presumed to be fair when: (1) the settlement is reached through arm's length agreement; (2) investigation and discovery are sufficient to allow counsel and the court to act intelligently; (3) counsel is experienced in similar litigation; and (4) the percentage of objectors is small. Newberg & Conte, *Newberg On Class Actions*, 3d Ed. (1992) § 11.41

The Court's ultimate fairness determination will include balancing several factors, including some or all of the following:

> (1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and [likely] duration of further litigation; (3) the risk of maintaining class [action status throughout the trial]; (4) the amount of the settlement; (5) investigation and discovery [completed]; (6) the experience and views of counsel; and (7) the reaction of class members.

*In re Skilled Healthcare Grp., Inc. Sec. Litig.*, 2011 WL 280991, at *2 (C.D. Cal. Jan. 26, 2011) (citing *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003).

Not all of the above factors apply to every class action settlement, and one factor alone may prove determinative in finding sufficient grounds for court approval. *Nat'l Rural Telecommunication Cooperative v. DirecTv, Inc.*, 221 F.R.D. 523, 525-26 (C.D. Cal. 2004). As set forth below, it is clear that: (1) this settlement satisfies the criteria for

preliminary approval; and (2) this Court should be entirely comfortable that it will subsequently easily satisfy the criteria for final approval.

The strength of Plaintiffs' case – While Plaintiffs believed that their case was strong, and thus litigated the case thoroughly, this Court did not agree with that assessment, and issued rulings to the contrary in the Burnell case, as well as in the other related matters pending or previously pending before this Court.  Based on these orders, it is clear that the value of these cases has been called into question, thus favoring a substantial discount in the settlement value of the cases.

The risk, expense, complexity and likely duration of further litigation – This factor is also unquestionably met. At this time, the case is over nine years old. By the time the post-trial appeals on certification and liability would be completed, it is undeniable that at least several more years would pass, and then the hoped for reversal of the denial of certification would trigger even more years of litigation. Thus, the risks and expenses of litigation would only continue to mount. Over nine years, and multiple cases later, it is clear that the reality of this litigation dictates that this multi-factor element is met.

The risk of maintaining class action status – The class was denied certification, so this risk factor is more than heightened in this situation.

The amount offered in settlement – As discussed above, the settlement amount of $7,250,000.00 is clearly a substantial payment.  Moreover, it is not an amount that a defendant which has thrice won a denial of certification often offers to settle a case. It is a clear recognition of two key factors – the exposure to the Defendant in the event that the denial of certification ruling was reversed by the Ninth Circuit, and the acknowledgment that the Plaintiffs and their counsel in these two cases have displayed the necessary stamina and financial strength to see the cases through to the end.

The extent of discovery completed and stage of the proceedings – significant pre-certification and liability discovery was completed, including many important

Plaintiffs' Notice of Motion and Motion for Preliminary Approval          CV11-00809-VAP-OP

1  depositions.

2  <u>The experience and views of counsel</u> – Here, seasoned class action litigators on

3  both sides battled on for many years through the district court, and in the appellate court

4  on the Rule 23(f) petition.  Then the battle moved to the Washington congressional and

5  eventually to the agency world.  It just never ended, albeit the latter events were beyond

6  the purview of this Court.  The Parties then finally reached this settlement. The Parties

7  have been locked in what can only be described as ongoing litigation/legislative efforts

8  for almost nine years. Counsel on both sides have obviously advised their clients that

9  this settlement is fair, reasonable and adequate, and in the context of this case and its

10  current posture, rational for both sides.

11  This factor often overlaps with the question of whether the settlement has resulted

12  from arm's length negotiations, since the Ninth Circuit has long supported settlements

13  reached through arms' length negotiation by capable opponents. In *Rodriguez v. West*

14  *Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009), the Court expressly opined that courts

15  should defer to the "private consensual decision of the [settling] parties." *Id.* at 965

16  (citing *Hanlon,* 150 F.2d at 1027). The primary reason for deferring to such settlements

17  is the experience of counsel and the participation of a neutral, and in this case, with Mr.

18  Rudy's supervision and guidance through the mediation efforts, both are present. This

19  factor is therefore satisfied.

20  **VI.    NATURE AND METHOD OF CLASS NOTICE**

21  "For any class certified under Rule 23(b)(3), the court must direct to settlement

22  class members the best notice practicable under the circumstances, including individual

23  notice to all members who can be identified through reasonable effort." Fed. R. Civ. P.

24  23(c)(2)(B). Here, the Parties have agreed upon a Notice which will be mailed to all last

25  known addresses in the Defendant's records, which records and addresses will be

26  updated as necessary. This is the most efficient and effective method for notifying class

27  members, and fully satisfies the legal requirements for notice.

28

As for the content of the notice, the proposed Notice meets all of the criteria set forth in Rule 23(c)(2). It informs prospective settlement class members of (i) the nature of the action; (ii) the definition of the settlement class certified; (iii) the class claims, issues, or defenses, and the settlement class period; (iv) that a class member may enter an appearance through counsel if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on class members under Rule23(c)(3). It also informs them of their right to object, and how to do so. *See* Hawkins Decl., Exhibit 2. Plaintiffs ask that the Notice be approved.

## VII.   CLAIMS ADMINISTRATION

The Parties have agreed to the appointment of ILYM, Inc., a highly experienced wage and hour class administration company, as the Claims Administrator. Hawkins Decl. ¶ 34. ILYM estimates settlement administration will not exceed $100,000.00.

## VIII.   ATTORNEYS' FEES AND COSTS

The Settlement Agreement allows Class Counsel to apply for an award to be paid from the GSA established for the benefit of the settlement class, in an amount not to exceed one third (1/3) of the GSA, as well as costs and expenses not to exceed $75,000.00. This request is set forth in the proposed Notice. Class Counsel will file their motion for an award of fees and costs in a timely manner such that settlement class members will have fourteen days to review the same prior to the expiration of the time to object to or to opt out of this settlement.

At the appropriate time in connection with the motion for approval of attorneys' fees, counsel will address the many reasons why this settlement justifies the fee requested herein, including the many years of devotion to this case and its novel issues; the settlement amount, especially given the posture of the case; that the settlement calls for a completely non-reversionary payment, where no claim forms are required; the many hours expended on this matter by counsel; and the depth of the litigation.

Importantly, a lodestar cross-check will amply support the request. At this time, Plaintiffs request only that the Court approve that the one third fee request may be included in the Notice to be mailed to the settlement class members so that they may comment on that aspect of the settlement should they so desire.

## IX.   SERVICE AWARD FOR NAMED PLAINTIFFS

The Settlement Agreement contemplates that the Plaintiffs will apply for a service award to be paid from the GSA in the amount of $5,000 each, and Defendant has agreed not to object to a request of up to that amount. The request for this award is disclosed in the proposed Notice. Once again, like their counsel, the Plaintiffs have stuck with the case, and the cause, for all these years, one of them has been deposed, they have assisted in all regards as needed throughout, served as fiduciaries for the class, and subjected their good names to the negative impacts of the internet, such that all future prospective employer will easily be able to determine that they have been class representatives in a suit against one of their employers. Plaintiffs will file their motion for these awards along with Class Counsel's application for fees and costs fourteen days before the objection deadline.

## X.   CONCLUSION

The Parties have reached this settlement following extensive litigation and arm's-length negotiations. Plaintiffs respectfully request that the Court permit and order the certification of the case for settlement purposes as requested herein, grant preliminary approval of the proposed settlement and enter the proposed Preliminary Approval Order submitted herewith, and award such other additional relief as this Court should deem proper.

DATED:  June 2, 2019

> **JAMES HAWKINS, APLC**
> **MARLIN & SALTZMAN, LLP**
> **LAW OFFICES OF SHAUN SETAREH**
>
> By:  /s/ Gregory Mauro
>     James Hawkins, Esq.
>     Attorneys for Plaintiffs

**CERTIFICATE OF SERVICE**

I hereby certify that on June 3, 2019 I electronically filed the foregoing with the Clerk of the Court for the U.S. District Court, for the Central District of California using the CM/ECF system. All participants are registered CM/ECF users, and will be served by the CM/ECF system.

Dated: June 3, 2019          /s/ Gregory Mauro

Gregory Mauro

CERTIFICATE OF SERVICE

UNITED STATES DISTRICT COURT      )
                                  )         SS
CENTRAL DISTRICT OF CALIFORNIA    )


 I am employed in the County of Orange, State of California.  I am over the age of 18 and not a party to this action. My business address is: 9880 Research Drive Suite 200, Irvine, CA 92618.

 I hereby certify that on June 3, 2019 I served on the interested parties in this action the following document(s) entitled:

- **PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**

- **DECLARATION OF JAMES HAWKINS IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

- **DECLARATION OF GREGORY MAURO IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

- **DECLARATION OF STANLEY D. SALTZMAN IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIM ARY APPROVAL OF CLASS ACTION SETTLEMENT**

- **[PROPOSED] ORDER CONDITIONALLY CERTIFYING A CLASS FOR SETTLEMENT PURPOSES AND PRELIMINARY APPROVING CLASS SETTLEMENT**

[XX] by placing [  ] the original [XX] a true copy thereof enclosed in a sealed envelope addressed as follows:

SERVICE LIST
See Attached Service List

[XX]  BY OVERNIGHT MAIL: By FEDERAL EXPRESS, following ordinary

business practices for collection and processing of correspondence with said

overnight mail service, and said envelope(s) will be deposited with said

overnight mail service on said date in the ordinary course of  business.

[XX] (FEDERAL) I declare that I am employed in the office of a member of the

bar of this court at whose direction the service was made.

I declare under penalty of perjury under the laws of the State of California and

The United States of America that the above is true and correct.

Executed on June 3, 2019 at Irvine, California.

*/s/ Nicole Miccolis*
Nicole Miccolis

CERTIFICATE OF SERVICE

Law Office of Neal J Fialkow,
Neal Fialkow, Esq.
215 N Marengo Ave Fl 3,
Pasadena, CA 91101-1504

Sheppard Mullin Richter and Hampton LLP
Paul Cowie, Esq.
Robert Mussig, Esq.
333 South Hope Street
Forty-Third Floor
Los Angeles, CA 90071

Marin and Saltzman
Stanley Saltzman, Esq.
29800 Agoura Road
Agoura Hills, CA 91301

Attorneys for Plaintiffs GILBERT SAUCILLO, et al.