**SHEPPARD, MULLIN, RICHTER & HAMPTON LLP**
PAUL S. COWIE, Cal. Bar No. 250131
pcowie@sheppardmullin.com
379 Lytton Ave.
Palo Alto, California 94301
Telephone: 650.815.2600  Facsimile:  650.815.2601

**SHEPPARD, MULLIN, RICHTER & HAMPTON LLP**
JOHN D. ELLIS Cal. Bar No. 269221
jellis@sheppardmullin.com
CORINNE K. HAYS Cal. Bar No. 248576
chays@sheppardmullin.com
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone: 415.434.9100  Facsimile:  415.434.3947

**SHEPPARD, MULLIN, RICHTER & HAMPTON LLP**
ROBERT MUSSIG, Cal. Bar No. 240369
rmussig@sheppardmullin.com
333 South Hope Street, 43rd Floor
Los Angeles, California 90071-1422
Telephone: 213.620.1780  Facsimile:  213.620.1398

Attorneys for Defendants SWIFT TRANSPORTATION CO. OF ARIZONA, LLC, and SWIFT TRANSPORTATION COMPANY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES R. RUDSELL, <br><br>         Plaintiffs, <br><br>    v. <br><br>SWIFT TRANSPORTATION COMPANY OF ARIZONA, LLC, et al. <br><br>         Defendants. <br><br>    and <br><br>JOHN BURNELL, et al. <br><br>         Plaintiffs, <br><br>    v. <br><br>SWIFT TRANSPORTATION COMPANY OF ARIZONA, LLC <br><br>         Defendant | Case No. 5:12-cv-00692 VAP OP; and <br>Case No. 5:10-cv-00809-VAP-OP <br><br>Hon. Virginia A. Phillips <br><br>**DEFENDANTS' REPLY TO LAWRENCE PECK'S OBJECTIONS TO PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF THE PARTIES' CLASS ACTION SETTLEMENT** <br><br>Date of Hearing: July 8, 2009 <br>Time:           2:00 p.m. <br>Room:           8A – First Street |

SMRH:4818-3476-8539.2

Case No. 5:12-cv-00692 VAP (OPx)
REPLY TO LAWRENCE PECK'S OBJECTIONS TO PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF THE PARTIES' CLASS ACTION SETTLEMENT

# TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................. iii

II. ARGUMENT AND AUTHORITIES ................................................................... 2

    A. The Settlement Terms Are Within the Range of Reasonableness and Should Receive The Court's Preliminary Approval ...................................... 4

        1. The Scope of the Release is Appropriate ............................................. 4

        2. Peck's Argument that the Settlement Allocates an Insufficient Amount to the PAGA Claims Fails ........................................................ 6

        3. The Settlement Appropriately Values Plaintiffs' Claims..................... 7

    B. The Settlement is Procedurally Fair and Not the Result of Collusion ............ 9

    C. The Settlement Class Should Be Conditionally Certified ............................. 10

        1. The Settlement Class Definition is Precise and Ascertainable .......... 10

        2. The Denial of Certification in *Burnell* Does Not Preclude Certification of the Settlement Class................................................... 11

III. CONCLUSION ................................................................................................... 12

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Alberto v. GMRI, Inc.*
  252 F.R.D. 652 (E.D. Cal. 2008) ............................................................................ 3, 9

*Allen v. Bedolla*
  787 F.3d 1218 (9th Cir.2015) ..................................................................................... 3

*Amchem Products, Inc. v. Windsor*
  521 U.S. 591 (1997) ................................................................................................. 12

*Batson v. UPS*
  2012 2012 WL 4482782 (S.D. Cal. 2012) ................................................................ 5

*Brewer v. Premier Golf Props.*
  2008 WL 5077666 (Cal. App. 2008) ........................................................................ 5

*Cotter v. Lyft, Inc.*
  176 F.Supp.3d 930 (N.D. Cal. Apr. 7, 2016) ............................................................ 7

*Fort Bend County, Texas v. Davis*
  No. 18–525 ............................................................................................................ 1, 5

*Gonzalez v. CoreCivic of Tenn.*
  LLC, 2018 WL 3689564 (E.D. Cal. 2018) ........................................................... 3, 4

*Hanlon v. Chrysler Corp.*
  150 F.3d 1011 (9th Cir.1998) .................................................................................... 3

*Lane v. Facebook, Inc.*
  696 F.3d 811 (9th Cir.2012) .................................................................................. 7, 8

*Ocampo v. Jack in the Box*
  2016 Cal. Super. LEXIS 221 (Santa Clara County Superior Court, March
  22, 2016, Case No. 2015-1-cv-275634) ................................................................... 5

*Rangel v. PLS Check Cashers of Cal., Inc.*
  899 F.3d 1106 (9th Cir. 2018) ................................................................................... 6

*Rodriguez v. W. Publ'g Corp.*
  563 F.3d 948 (9th Cir. 2009) ................................................................................. 2, 9

*Roe v. SFBC Mgmt.*
   2017 U.S. Dist. LEXIS 57771 (N.D. Cal., April 14, 2017 Case No. 14-cv-03616) .................................................................................................... 3

*Saleh v. Titan Corp.*
   353 F. Supp. 2d 1087 (S.D. Cal. 2004) ........................................................... 3

*Spann v. J.C. Penney Corp.*
   314 F.R.D. 312 (C.D. Cal. 2016) ................................................................ 2, 3

*In re Tableware Antitrust Litig.*
   484 F. Supp. 2d 1078 (N.D. Cal. 2007) ........................................................... 2

*Villacres v. ABM Indus. Inc.*
   189 Cal. App. 4th 562 (2010) .................................................................... 1, 6

*Wright v. Linkus Enters., Inc.*
   259 F.R.D. 468 (E.D. Cal. 2009) ..................................................................... 2

**STATUTES**

California Labor Code § 2699(l) ............................................................................. 7

Federal Rules of Civil Procedure,
   Rule 23 ..................................................................................................... 2, 6, 11
   Rule 23(b)(3) ................................................................................................... 10
   Rule 24 ............................................................................................................... 3

SMRH:4818-3476-8539.2

-iii-

Case No. 5:12-cv-00692 VAP (OPx)
REPLY TO LAWRENCE PECK'S OBJECTIONS TO PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF THE PARTIES' CLASS ACTION SETTLEMENT

## I.  INTRODUCTION

Defendants Swift Transportation Co. of Arizona LLC and Swift Transportation Company hereby reply to Lawrence Peck's objections to Plaintiffs' motion for preliminary approval of the class action settlement entered into by and between the parties to these consolidated actions.  Defendants filed a notice of non-opposition to the motion on June 17, 2019.  Docket No. 43.

Preliminary approval should be granted, and Peck's self-serving objections should be disregarded.  All of Peck's arguments against preliminary approval and conditional certification of the settlement class are without merit.  His primary argument—that the release is overbroad because Plaintiffs do not have "standing" to assert some of the claims encompassed by the release misstates the facts and misapprehends the law.  Specifically, Peck claims Plaintiffs cannot release certain claims under the Private Attorneys' General Act (PAGA) because they did not receive permission from the Labor and Workforce Development Agency (LWDA) to pursue those claims.  This argument ignores the fact that Burnell did receive permission from the LWDA to pursue *all* of the released claims.  While Burnell is not a party to the settlement, the released claims were actually litigated in the *Burnell* action.  Regardless, Peck's argument has nothing to do with "standing"— instead, it is an exhaustion of administrative remedies issue.  Case law is clear that failure to exhaust administrative remedies is an *affirmative defense*, and can be **waived**.  This was recently confirmed by the United States Supreme Court in *Fort Bend County, Texas v. Davis*, No. 18–525.  Indeed, courts have approved the release of PAGA claims where there was **no attempt to exhaust administrative remedies whatsoever**.  See *Villacres v. ABM Indus. Inc.*, 189 Cal. App. 4th 562, 587 (2010).

Peck's other arguments also fail.  His criticism of the methodology used by Plaintiffs to value the case is nothing more than conjecture unsupported by any evidence.  Notably, despite the fact Peck's lawyers have contact information for thousands of the settlement class members, they fail to submit even a single

-1-   Case No. 5:12-cv-00692 VAP (OPx)

SMRH:4818-3476-8539.2   REPLY TO LAWRENCE PECK'S OBJECTIONS TO PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF THE PARTIES' CLASS ACTION SETTLEMENT

declaration opposing the settlement.  Peck's intent is obvious— he hopes to convince the Court to reject the settlement so that Defendants are forced to negotiate with his lawyers.  This is not a legitimate reason to deny preliminary approval.

The Court should grant preliminary approval of the settlement because it (1) results in a payment of $7.25 million to the settlement class members, is non-reversionary, and is fair, reasonable and adequate; (2) arose out of vigorous and contentious litigation; and (3) represents a reasonable settlement of all claims, including the PAGA claims.  Moreover, the Court should grant conditional certification of the settlement class because: (1) contrary to Peck's claims, the proposed class definition identifies a readily ascertainable class (of 19,626 potential members); and (2) the settlement class meets the standards required by FRCP 23, which Peck fails to recognize are relaxed in the context of a settlement.

For all these reasons, and as further detailed below, Defendants respectfully request that the Court grant preliminary approval of the settlement and conditionally certify the settlement class.

## II.   ARGUMENT AND AUTHORITIES

Court approval of a class action settlement involves a two-step process: "a preliminary approval followed by a later final approval." *See, Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 319 (C.D. Cal. 2016).  Importantly, the standard of review differs at each stage.  *Id.*  At the preliminary approval stage, the Court need only "evaluate the terms of the settlement to determine whether they are within a range of possible judicial approval." *Wright v. Linkus Enters., Inc.*, 259 F.R.D. 468, 472 (E.D. Cal. 2009).  "Preliminary approval of a settlement has both a procedural and a substantive component*."  In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal.  2007). Procedurally, the Ninth Circuit emphasizes that the parties should have engaged in an adversarial process to arrive at the settlement.  *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated

resolution…"). "A presumption of correctness is said to attach to a class settlement reached in arm's-length negotiations between experienced capable counsel after meaningful discovery." *Spann*, 314 F.R.D. at 324. Substantively, courts look to "whether the proposed settlement discloses grounds to doubt its fairness or other obvious deficiencies such as unduly preferential treatment of class representatives or segments of the class, or excessive compensation of attorneys." *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 666 (E.D. Cal. 2008).

Peck's objections focus on whether the settlement is "fundamentally fair, adequate, and reasonable." (See Opposition, Dkt 39). This, however, is the inquiry at the ***final*** approval stage. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir.1998); *see also Allen v. Bedolla*, 787 F.3d 1218, 1222 (9th Cir.2015). This inquiry requires the court to balance a number of factors, including: the strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; and the reaction of the class members to the proposed settlement. *Hanlon*, 150 F.3d at 1026. Notably, some of these factors—such as the reaction of class members—are not currently known and cannot even be assessed at the preliminary approval stage.

Peck's objections are premature and should be rejected on that basis alone.[1] Defendants nonetheless address Peck's objections below.

---

[1] Peck does not have standing to object to the settlement at the preliminary approval stage. Because "[p]utative class members are not parties to an action prior to class certification," and class certification does not occur until preliminary approval is granted, Peck is a stranger to this case and has no standing to file anything without first obtaining leave to intervene under FRCP 24. *Saleh v. Titan Corp.*, 353 F. Supp. 2d 1087, 1091 (S.D. Cal. 2004) ("Putative class members are not parties to an action prior to class certification."). Numerous cases hold that the proper time to consider objections is **after** notice of the settlement is distributed and in connection with final approval. *See Roe v. SFBC Mgmt.*, 2017 U.S. Dist. LEXIS 57771, at *20 (N.D. Cal., April 14, 2017 Case No. 14-cv-03616) ("class members' objections are deferred to the final fairness review"); *Gonzalez v. CoreCivic of Tenn.*, LLC, 2018 WL 3689564, at *12 (E.D. Cal. 2018) ("the objections are

A. **The Settlement Terms Are Within the Range of Reasonableness and Should Receive The Court's Preliminary Approval**

The Court should grant preliminary approval of the proposed settlement because the settlement terms are within the range of judicial approval, do not include any obvious deficiencies, and are reasonable and fair to the settlement class members. As discussed in the moving papers, and as disclosed in the stipulated settlement, Defendants have agreed to a non-reversionary, "no claim form required" settlement of all claims in the amount of $7,250,000. *See* Stipulated Settlement Agreement, Hawkins Decl., Ex. 1. Peck argues that the agreement is unfair and that Plaintiffs' motion should be denied because: (1) the Named Plaintiffs lack "standing" to sufficiently represent the settlement class members and the State for certain PAGA violations because they failed to exhaust their administrative remedies and therefore, the release of PAGA claims is overbroad; (2) the PAGA claims are undervalued; and (3) Named Plaintiffs failed to provide the Court with sufficient evidence to evaluate the class clams, including the claims for failure to provide meal and rest periods and failure to provide accurate wage statements. As explained further below, each of these arguments lacks merit.

   1. **The Scope of the Release is Appropriate**

Peck argues that Named Plaintiffs do not have standing to release some or all of the PAGA claims released by the settlement agreement because they did not exhaust their administrative remedies as to those claims, in particular the claim for failure to reimburse business expenses. This argument fails for numerous reasons.

---

premature as no settlement has yet been preliminarily approved."); *Id.* at 3 n.2. ("The court has not yet granted preliminary approval to the settlement, and therefore has not approved any settlement containing PAGA claims. It is not yet time for prospective class members to object to that settlement. The proposed intervenor will have that opportunity if and when the settlement is preliminarily approved and class notice is distributed to the prospective class members."). For the Court's reference, attached to the Chamber's Copy as Case No. 1, please find a true and correct copy of this case as it is unavailable on Westlaw.

Even if Named Plaintiffs failed to exhaust their administrative remedies, the "failure to exhaust administrative remedies under the PAGA is an affirmative defense subject to waiver." *Batson v. UPS*, 2012 2012 WL 4482782, at *6 (S.D. Cal. 2012). A PAGA judgment cannot be set aside for lack of jurisdiction just because the plaintiff failed to exhaust. *See Brewer v. Premier Golf Props*., 2008 WL 5077666, at *12-17 (Cal. App. 2008). For example, *Brewer* held that "although [defendant] could have forced Brewer to comply with Section 2699.3 if it had timely raised the issue, [defendant] waived the exhaustion defense by waiting until after the judgment was entered to assert it."[2] *Id.* In other words, ***only*** **_Defendants_** ***are in a position to assert that Named Plaintiffs failed to exhaust their administrative remedies, and Defendants have waived that argument for purposes of settlement*** *(to the extent even necessary)*. A release of PAGA claims cannot be attacked by a third party on the basis that the plaintiffs purportedly did not identify all alleged violations of the California Labor Code in their letter(s) to the LWDA, particularly where, as here, ***the claims were actually litigated over a period of years***.[3]

---

[2] In an analogous ruling, the Supreme Court recently held that federal courts may hear discrimination claims under Title VII of the Civil Rights Act even if workers do not exhaust administrative remedies with the U.S. Equal Employment Opportunity Commission because such a defect is not jurisdictional in nature. *Fort Bend County, Texas v. Davis*. *See Fort Bend County v. Davis*, No. 18–525.

[3] The Superior Court for the State of California's County of Santa Clara dealt with this issue in *Ocampo v. Jack in the Box*, 2016 Cal. Super. LEXIS 221, *5-6 (Santa Clara County Superior Court, March 22, 2016, Case No. 2015-1-cv-275634). In that case, the plaintiff argued that a settlement of claims in a separate matter could not extinguish various PAGA claims in his case because multiple statutory PAGA requirements were not met. *Id.* Specifically, Plaintiff argued that because the named plaintiff in the settled case never served a PAGA notice on the LWDA, the named plaintiff could not have prevailed on a PAGA claim and had no authority to settle it. *Id.* The court, however, disagreed, stating that "the fact that a party may ultimately be unsuccessful on a claim does not mean that the party cannot settle that claim" and that "the named plaintiff's possible failure to comply with the statutory requirements of PAGA failed to establish that the waiver contained within the settlement agreement was ineffective." *Id.* For the Court's reference, attached to the Chamber's Copy as Case No. 2, please find a true and correct copy of this case as it is unavailable on Westlaw.

Moreover, California courts have expressly held that a broad release of Labor Code claims in a class action can bar subsequent PAGA actions by a class member, even where there was no PAGA claim in the first action and no attempt whatsoever to exhaust administrative remedies. *See Villacres*, 189 Cal. App. 4th at 587. Indeed, the *Villacres* court went further, explaining that not only was the failure to pursue a PAGA claim in the first action irrelevant to the broad interpretation of the release, but the fact that none of the settlement proceeds in the agreement were allocated to PAGA claims was equally irrelevant and meaningless. *Id.*

The Ninth Circuit recently examined a similar issue, namely whether the settlement of a state class action could release claims under the Fair Labor Standards Act ("FLSA"), even though FLSA claims cannot be litigated as class claims. *See Rangel v. PLS Check Cashers of Cal., Inc.*, 899 F.3d 1106 (9th Cir. 2018). The Ninth Circuit ruled that a broad class release of state law claims in a Rule 23 class action did indeed bar related claims under the FLSA, just as the *Villacres* court held that a broad release of California Labor Code claims bars related claims that had not been initially pursued under PAGA. *Id.* Peck's argument that the alleged failure to exhaust administrative remedies renders the settlement overbroad fails, and is does not warrant denial of preliminary approval. Regardless, Mr. Burnell exhausted his administrative remedies by sending a letter to the LWDA on September 11, 2009 and Mr. Pollock exhausted his administrative remedies by sending a letter to the LWDA on October 8, 2010. Mr. Rudsell exhausted his administrative remedies in the same manner on January 11, 2012.

### 2. Peck's Argument that the Settlement Allocates an Insufficient Amount to the PAGA Claims Fails

Peck also argues that the Court should deny preliminary approval on the ground that more than $500,000 should be allocated to the PAGA claims so that the state of California is not "shortchanged." Objection Brief, p. 19. This argument is misplaced and lacks merit. First, a larger allocation would deprive the settlement

-6-   Case No. 5:12-cv-00692 VAP (OPx)
SMRH:4818-3476-8539.2   REPLY TO LAWRENCE PECK'S OBJECTIONS TO PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF THE PARTIES' CLASS ACTION SETTLEMENT

class members of money because 75% of all funds allocated to the PAGA claims will go to the state. Indeed, by making this argument, Peck and his lawyers have violated their fiduciary obligations to the settlement class members.

Moreover, Peck has no standing to challenge the settlement on behalf of the state. The LWDA received notice of Plaintiffs' motion for preliminary approval pursuant to California Labor Code section 2699(l), and did not lodge any objections. The state clearly does not view the amount allocated to the PAGA claims to be inadequate or unfair. Finally, as noted in Named Plaintiffs' motion for preliminary approval, $500,000 is an exceptionally large amount to allocate to PAGA claims. Defendants are confident the Court has granted preliminary approval of many wage-hour settlements with less funds allocated to the PAGA claim. *See, for example, Ramonoa J. Hogue v. YRC, Inc.*, et al, Case No. 5:16-cv-01338-CJC-JEM (C.D. Ca., June 24, 2019) (Order granting final approval of class action settlement for $700,000, designating only $20,000 to claims brought pursuant to PAGA)[4].

### 3. The Settlement Appropriately Values Plaintiffs' Claims

Peck also argues that Named Plaintiffs have submitted insufficient evidence to the Court in support of their valuation of the case. This argument also fails.

"In determining whether [a] proposed settlement falls within the range of reasonableness, perhaps the most important factor to consider is plaintiffs' expected recovery balanced against the value of the settlement offer." *Cotter v. Lyft, Inc.*, 176 F.Supp.3d 930, 935 (N.D. Cal. Apr. 7, 2016) (internal quotation omitted). "*[W]hether a settlement is fundamentally fair within the meaning of Rule 23(e) is different from the question of whether the settlement is perfect in the estimation of the reviewing court*." *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir.2012) (emphasis added). Here, Plaintiffs' motion explains in detail their valuation of the case—presenting evidence sufficient to establish that because the risk of obtaining

---

[4] For the Court's reference, attached to the Chamber's Copy as Case No. 3, please find a true and correct copy of this Opinion.

and then maintaining class action status is extraordinarily high, as is the likely duration of further litigation, settlement is of great importance. As discussed in Named Plaintiffs' motion but *completely ignored by Peck*, the outcome of these claims is far from certain given the ever-changing legal landscape applicable to wage-hour claims in California. Because "recovering at trial would be speculative" and the monetary amount recovered at trial, if any, "could vary widely depending on a number of factors," settlement of all claims is merited. *Id*.

Peck's argument that the settlement amount is insufficient appears to be based on nothing but bravado—essentially, that Named Plaintiffs and their lawyers pursued foolish theories, that he is much smarter and his theories are far more viable, and that he would have settled the claims for more money. *See* Objection Brief, pp. 20-23. Peck devotes a significant portion of his brief to describing how much money he believes he would win at trial without ever acknowledging the possibility (and likelihood) that *he might lose*. He assumes 100 percent success on all of his theories without submitting any evidence whatsoever showing that any of his theories are viable on a class-wide basis—despite the fact he and his lawyers have contact information for thousands of settlement class members. Importantly, Peck has not obtained class certification in either of his cases against Swift nor any ruling on the merits regarding the viability of his claims.[5]

It is very easy for a lawyer to fall in love with his case and become overconfident in its potential for success. It is also easy to second-guess a settlement and argue that some aspect of a case was not properly valued. But that is

---

[5] Peck has argued time and again in his state court PAGA case that he **does not have** sufficient discovery to try his case or properly value his claims. See Mussig Decl. ¶ 2. He has argued that he requires time, pay and other data applicable to *all drivers* in order to effectively try the case. *Id*. Defendants have *not* produced this data and have vigorously opposed Peck's efforts to obtain the data as it would cost Defendants millions of dollars to produce. *Id*. Defendants understand the primary reason Peck and his lawyers agreed to a trial continuance in the state court PAGA case is that they do not believe they have sufficient discovery to go to trial. *Id*.

not the standard for preliminary approval. The standard is whether the overall valuation is reasonable in light of all the circumstances. There can be no doubt that a $7.25 million recovery falls within the range of reasonable recoveries by the settlement class members in the *Rudsell/Burnell* cases, particularly in light of the denials of class certification in *Burnell*, *Mares*, and *McKinstry* and the ever-evolving landscape of the law applicable to truck drivers. Accordingly, Peck's objections to preliminary approval of the settlement should be rejected.

## B. The Settlement is Procedurally Fair and Not the Result of Collusion

The proposed settlement is clearly not the result of collusion. Class counsel has extensive experience litigating wage and hour class actions on the plaintiff side. *See, e.g.*, Declaration of Stanley Saltzman ¶ 18. Further, the *Burnell* action was vigorously litigated over the course of almost ten years, including a contested class certification motion, a dozen 30(b)(6) depositions, and millions of documents. Given the parties' vigorous and often contentious litigation of these cases, it is clear the proposed settlement is not the product of collusion, but "the product of an arms-length, non-collusive, negotiated resolution[.]" *Rodriguez*, 563 F.3d at 965.

Moreover, the parties attended a mediation session on April 23, 2018 with experienced wage-and-hour mediator Mark Rudy, Esq. *See* Hawkins Decl. ¶ 7. And through Mr. Rudy took another month until May 2019, to reach a settlement figure. It took nearly a year to negotiate the terms. The fact that the parties utilized an experienced mediator to reach a settlement supports the fact that it was the product of arms-length negotiation. *See Alberto*, 252 F.R.D. at 666-67.

Peck's allegation that the proposed settlement resulted from collusion is largely based on the fact the parties did not include Peck and his lawyers in the settlement discussions. *See* Objection Brief at p. 30. Peck asserts that Defendants excluded him from the mediation process because his demand for settlement was too high. *Id.* at 31. As a preliminary matter, the parties were under no obligation to disclose the fact that they were discussing settlement to Peck or his lawyers. Peck

complains that the parties mediated on April 23, 2018 and preliminarily agreed on a settlement number on May 14, 2018, but he was not advised of the settlement until May 2019. *Id.* at 30. Peck also complains that Defendants discussed mediating with him after preliminarily agreeing to a settlement number with the *Rudsell/Burnell* lawyers. But Peck ignores the fact **the *Rudsell/Burnell* settlement was not finalized until May 2019**. Until a final agreement is consummated, it is not unreasonable, or even atypical, for a party to continue as if no deal exists—until it is in fact signed. In part, because discussions with the *Rudsell/Burnell* lawyers were contentious, Defendants were absolutely willing to explore a settlement with Peck and his lawyers under the right conditions, including settlement on an individual basis. *See* Mussig Decl. ¶¶ 2-3.

In any event, Peck's claim that his settlement demand was higher than that of the Plaintiffs is irrelevant, as Peck has never made a demand supported by any sort of analysis or evidence. Mussig Decl. ¶ 3. His demand therefore represents nothing more than wishful thinking.

**C.  The Settlement Class Should Be Conditionally Certified**

Named Plaintiffs also seek conditional certification of the class for settlement purposes only pursuant to FRCP 23(b)(3). Peck asserts various argument against conditional certification. All of his arguments fail.

**1.  The Settlement Class Definition is Precise and Ascertainable**

The proposed settlement class is defined in the Agreement as: "All drivers employed by Defendants to perform work in the State of California and who earned mileage-based compensation during the Settlement Class Period [March 22, 2006 through January 31, 2019]. *See* Hawkins Decl., Ex. 1. Peck argues that the class definition is imprecise, and therefore invalid, and that it goes "well beyond what *Burnell* was litigating and far beyond the class definition that was presented for certification which was targeted to California residents assigned to a home terminal in California." *See* Objection Brief, pp. 8-10. These arguments are nonsensical.

The parties have identified all potential class members based on the definition included in the agreement—there are exactly 19,626. *See* Mussig Dec., ¶ 4, Ex. 1. Peck cannot explain how the parties were able to determine the number of members if the definition is so "imprecise" as to be unintelligible.

Moreover, Plaintiff fails to explain how the scope of the case has been expanded beyond "what Burnell was litigating" and it is absurd to suggest that Defendants will seek to expand the scope of the case. The settlement agreement contains a savings clause which precludes Defendants from inflating the number of settlement class members beyond the group included in mediation discussions. Specifically, paragraph 6(ii) of the agreement provides that: "in the event that the workweeks actually accrued during the Settlement Class Period by Class Members exceeds 850,000, the Gross Settlement Amount shall be increased by the percentage difference between that amount and the actual number of workweeks during the Settlement Class Period." *See* Hawkins Decl., Ex. 1. Expanding the scope of the settlement would result in significant additional settlement funds.

Because the parties have identified all potential class members, and the stipulated settlement agreement contains a "savings" clause which essentially prevents Defendants from adding class members without adding money to the settlement fund, Peck's complaints about the class definition should be rejected.

### 2. The Denial of Certification in *Burnell* Does Not Preclude Certification of the Settlement Class

Peck argues that Named Plaintiffs fail to establish that the settlement class meets the standards set forth in Rule 23 because their preliminary approval motion fails to "address the deficiencies with the unsuccessful certification motion in *Burnell*." Objection Brief, p. 10:17-22. However, Peck fails to recognize that the Court denied certification in *Burnell* primarily on manageability grounds. *See* Order Deny Class Certification, Dkt. 170 at p. 16 ("if Plaintiffs claims were litigated as a class action, the case would be **unmanageable**") (emphasis added). As the U.S.

Supreme Court has made clear, manageability **need not be considered** in determining whether to certify a **settlement class**. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . ."). The denial of certification in *Burnell* does not preclude conditional certification of the settlement class.

### III. CONCLUSION

For all the reasons set forth above, Defendants respectfully request that the Court grant preliminary approval of the settlement and conditionally certify the settlement class.

Dated: June 24, 2019

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By      /s/ *Paul Cowie*
PAUL S. COWIE
ROBERT MUSSIG
JOHN ELLIS
CORINNE K. HAYS
Attorneys For Defendants
SWIFT TRANSPORTATION CO. OF ARIZONA, LLC and SWIFT TRANSPORTATION COMPANY