**JAMES R. HAWKINS, APLC**
James R. Hawkins, Esq. SBN 192925
Gregory E. Mauro, Esq. SBN 222239
9880 Research Drive, Suite 200
Irvine, CA 92618
TEL:   (949) 387-7200
FAX:   (949) 387-6676

Attorneys for Plaintiff, JAMES R. RUDSELL, on behalf of himself and all others similarly situated

**MARLIN & SALTZMAN, LLP**
Stanley D. Saltzman, Esq. (SBN 90058)
29800 Agoura Road, Suite 210
Agoura Hills, California  91301
Telephone:   (818) 991-8080
Facsimile:    (818) 991-8081
ssaltzman@marlinsaltzman.com

**SETAREH LAW GROUP**
Shaun Setareh, (SBN 204514)
315 South Beverly Drive, Suite 315
Beverly Hills, CA 90212
Telephone: (310) 888-7771
Facsimile: (310) 888-0109
shaun@setarehlaw.com

Attorneys for Plaintiffs GILBERT SAUCILLO, et al.

# IN THE UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN BURNELL, JACK POLLOCK, and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SWIFT TRANSPORTATION CO. OF ARIZONA, LLC,<br><br>Defendant. | Case. No. EDCV 12-00692 VAP OPx; Related Case: 5:10-CV-00809-VAP (OPx)<br>Hon. Virginia A. Phillips)<br><br>**PLAINTIFFS REPLY TO LAWRENCE PECK'S OBJECTION TO PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date:  July 8, 2019<br>Time: 2:00 p.m.<br>Location: Courtroom 8A – First Street |

# **TABLE OF CONTENTS**

I. INTRODUCTION …………………………………………………………….1

II. LEGAL ARGUMENT……………………..…………………….…..2

    A. The Legal Standard For Preliminary Approval Has Been Met………………………………………………………………..….2

    B. Plaintiff Saucillo and Rudsell Do Not Lack Standing To Represent Aggrieved Swift Employees and the State For All PAGA Violations and to Settle Those Claims…………..……..3

    C. The Scope of Release of PAGA Claims Is Appropriate……….4

    D. The Class Definition is Not Over- inclusive, or Uncertain, and Will Not Cause Confusion…………………………………….6

    E. The Settlement Agreement Does Not Undervalue The PAGA Claims and It Does Fulfill PAGA's Purpose of Deterrence…..6

    F. Thorough and Adequate Investigation Has Been Undertaken by Plaintiffs and Their Counsel for the Claims Being Settled..…10

    G. The Settlement Reached Is Not a Result of Collusion……….11

III. CONCLUSION……………………………………………………,………12

# TABLE OF AUTHORITIES

*Alberto v. GMRI, Inc.,*
    252 F.R.D. 652 (E.D. Cal. 2008) ……………………………………………..12

*Amalgamated Transit Union, Local 1756, AFL-CIO v. Superior Court*
    46 Cal.4th 99 (2009)……………………………………………………………7

*Batson v. UPS*,
    2012 WL 4482782, at *6 (S.D. Cal. 2012)…………………………………….4

*Brewer v. Premier Golf Props.*,
    2008 WL 5077666, at *12-17 (Cal.App. 2008)……………………………….4

*Cal Pak Delivery, Inc., v. United Parcel Service, Inc.,*
    52 Cal. App. 4th 1, 12 (1997)……………………………………………………11

*Campbell v. PricewaterhouseCoopers, LLP*,
    253 F.R.D. 586 (E.D. Cal. 2008)……………………………………………...6

*Fort Bend County, Texas v. Davis*,
    No. 18–525 (2019)……………………………………………………………..2

*lskanian, v. CLS Transportation Los Angeles, LLC*
    58 Cal. 4th 348 (2014)…………………………………………………….passim

*Negrete v. Allianz Life Ins. CO. of N. Am.*
    523 F. 3d 1091 (9th Cir. 2008)……………………………………………...11

*Ochoa-Hernandez v. CJADERS Foods, Inc.*
    2010 WL 1340777, at *4 (N.D. Ca. Apr. 2, 2010)………………………….6

*Rangel v. PLS Check Cashers of Cal., Inc.*,
    899 F.3d 1106 (9th Cir. 2018)………………………………………………4

*Reynolds v. Ben. Nat'l Bank,*
    288 F.3d 277 (7th Cir. 2002)………………………………………………..11

*Rodriguez v. West Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009)……………………………..……………..12

*Simons v. Horowitz*,

　151 Cal. App. 3d 834 (1984)……………………………………………………11

*Tech-Bilt, Inc., v. Wood-Clyde & Associates*,

　38 Cal. 3d 499 (1985)……………………………………...………………11

*Villacres v. ABM Indus. Inc.*,

　189 Cal. App. 4th 562 (2010)…………………………………………….2,4,5

*Ward v United Airlines, Inc.*

　2016 WL 3906077 (N.D. Cal.Jul.19, 2016)…………………………………8

*Wright v. Linkus Enters., Inc.*,

　259 F.R.D. 468 (E.D. Cal. 2009)…………………………………………….2

**Statutes, Rules and Regulations**

Cal. Lab. Code § 226………………………………………………………………….8

Cal. Lab. Code § 2699(a)……………………………………………………………….3

Cal. Lab. Code § 2699(G)……………………………………………………………..6

Cal. Lab. Code § 2699.3……………………………………………………………….3

Cal. Lab. Code § 2699.3(a)………………………………………………………….3,4

Cal. Lab. Code § 2699.3(a)(1)………………………………………………………...3

Cal. Lab. Code § 2699.3(a)(2)………………………………………………………...4

Cal. Lab. Code § 2802…………………………………………………………….4,5,9

# MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs James Rudsell and Gilbert Saucillo ("Plaintiffs"), individually and as class representatives of all Class Members and aggrieved employees (collectively, the "Settling Class"), hereby submit their Reply to Lawrence Peck's ("Mr. Peck" or "Objector") Objection (Opposition) to Plaintiffs' Motion for Preliminary Approval of Class Action Settlement ("Obj'n").

## I. INTRODUCTION

Mr. Peck's Objection fails to present evidence to support his erroneous conclusion that the Class Action Settlement presented to the Court for preliminary approval is not fair, reasonable, and adequate. Plaintiffs and their counsel in this matter have confirmed the reasonableness of the settlement via their due diligence and investigation. Thus any attempts by Mr. Peck to assert that there exist claims both known and unknown that were neither investigated nor actively litigated by the Plaintiffs in this instance are completely false and only serve as distractors intended to scuttle this Settlement. (*See* Obj'n at 1-3).

Further, the efforts exerted by Mr. Peck to raise deficiencies that do not even exist within the settlement or in Plaintiffs' Motion for Preliminary Approval ("MPA") are merely an attempt to squeeze himself into this settlement and a grab at fees, and are based solely on speculative and conclusory figures and assertions unsupported by the history of this litigation. Ironically, unlike Plaintiffs here, Mr. Peck has only provided the Court with inconclusive and purely speculative figures without any specificity to assist the Court in making any independent determination as to the accuracy of Mr. Peck's valuations. The conclusory allegations as to the damages which Mr. Peck puts forth in his Objection should not be given any merit, and must be found baseless.

Moreover, any issues regarding "standing" also do not exist here as the issue is not a "standing" issue at all, but rather a failure to exhaust administrative remedies. In that regard, well settled case law has clearly found that any such

failures to exhaust said administrative remedies are affirmative defenses that can be waived. This was confirmed very recently by the United States Supreme Court on June 3, 2019 in *Fort Bend County, Texas v. Davis*, No. 18–525 (holding that federal courts may hear discrimination claims under Title VII of the Civil Rights Act even if workers do not exhaust administrative remedies with the U.S. Equal Employment Opportunity Commission because such a defect is not jurisdictional in nature). In fact, courts have approved the release of PAGA claims where there was no attempt to exhaust administrative remedies whatsoever and no PAGA claim even pled. *See, e.g.*, *Villacres v. ABM Indus. Inc*., 189 Cal. App. 4th 562, 587 (2010).

Lastly, in the event the Court grants preliminary approval of the settlement, Mr. Peck and members of the class who disagree with the Settlement still have alternative avenues to protect their own interests, such as opting out of the Settlement and pursuing their own claims on an individual basis. Thus, no prejudice would result in the approval of this settlement. Therefore, as Plaintiffs and their Counsel have conducted a thorough analysis of all the claims and the risks presented throughout the many years of litigation of this matter, and through a careful and meticulous valuation of the claims as presented in Plaintiffs' MPA, the Court must find the settlement fair and reasonable, despite Mr. Peck's erroneous contentions to the contrary, and grant the Plaintiffs' Motion for Preliminary Approval.

## II. LEGAL ARGUMENT

### A. The Legal Standard For Preliminary Approval Has Been Met

At the preliminary approval stage, the Court need only "evaluate the terms of the settlement to determine whether they are within a range of possible judicial approval." *Wright v. Linkus Enters., Inc*., 259 F.R.D. 468, 472 (E.D. Cal. 2009).

The gravamen of Mr. Peck's argument rests in his erroneous assumptions and assertions that the Settlement reached is a byproduct of collusion and inadequate investigation and discovery. (Obj'n at 2-3). And yet, the reality of the

circumstances of the Settlement speaks for itself. There is simply nothing in the record to which Mr. Peck can point or has pointed that would even remotely support his blind assertion. The Plaintiffs and their counsel have been transparent in how the valuation of the claims has been reached and they provided a thorough record for the Court to make its own determination that the settlement is in fact fair and reasonable. (*See generally* MPA; Hawkins Decl., ISO MPA). Plaintiffs and their Counsel have performed their due diligence in analyzing all the claims contained in all of the various complaints brought against Defendants and valued each and every claim accordingly; therefore, it is an absurd assertion that this Settlement was based on inadequate discovery, investigation, and/or collusion, and Mr. Peck's position regarding this matter is contrary to the record. Thus, the Court must find the Settlement fair, reasonable, and adequate, and grant the Motion for Preliminary Approval.

### B. Plaintiff Saucillo and Rudsell Do Not Lack Standing To Represent Aggrieved Swift Employees and the State For All PAGA Violations and to Settle Those Claims

PAGA allows an "aggrieved employee" to bring a civil action on behalf of himself or herself and on behalf of other aggrieved employees and the State of California to recover civil penalties which, outside of PAGA, only the LWDA can assess upon and collect from an employer (Cal. Lab. Code § 2699(a)). Before bringing a civil action under PAGA, an employee must comply with California Labor Code section 2699.3. *See* Cal. Lab. Code § 2699(a).

To pursue a PAGA claim, the aggrieved employee must first exhaust the administrative procedures stated in Cal. Lab. Code §2699.3. Cal. Lab. Code §2699(a). Among those procedures is the requirement that the aggrieved employee give notice to the LWDA (so the agency has the opportunity to investigate) and the employer of the specific provisions of the Labor Code alleged to have been violated. *Id*. 2699.3(a)(1). An aggrieved employee may only commence a

representative civil action after she/he receives notice from the LWDA that it does not intend to investigate the violations, or if the LWDA does not respond, after 65 calendar days of the postmark date of the notice to the LWDA. *Id*. §2699.3(a)(2).

Mr. Peck contends that Plaintiffs do not have standing to release some or all of the PAGA claims released by the Settlement Agreement (i.e. Labor Code § 2802 for unreimbursed expenses) because they allegedly failed to exhaust their administrative remedies. First, as demonstrated in the following section, that is simply false. Multiple "PAGA Notices" were in fact served by the plaintiffs in this case. However, even if they had not been served, the failure to exhaust is in fact an affirmative defense which can be waived. *Batson v. UPS*, 2012 WL 4482782, at *6 (S.D. Cal. 2012). In fact, courts in California have held that PAGA judgments are final and as such cannot be set aside simply for lack of jurisdiction as a result of a plaintiff's failure to exhaust. *See Brewer v. Premier Golf Props*., 2008 WL 5077666, at *12-17 (Cal.App. 2008). Furthermore, as a failure to exhaust is an affirmative defense, only a defendant can raise this position. Thus, Mr. Peck cannot assert this defense, as he is simply a third party. *See Id.* As Defendant has clearly waived any purported deficiency in the Notice process, if one even existed, as evidenced by its decision to settle this matter, the Court must find Mr. Peck's argument regarding "standing" a non-issue and moot.

### C. The Scope of Release of PAGA Claims Is Appropriate

Mr. Peck also erroneously argues that the release of PAGA claims under the Settlement Agreement is overbroad as it (1) "does not contain any limitations" and (2) "encompasses predicate violations not alleged in the LWDA notices [i.e. Labor Code §2802] by Plaintiff *Burnell* and *Rudsell* against Swift." (Obj'n at 8:7-9).

Here, well settled case law has already established that "a predispute waiver of PAGA claims in the context of a settlement is enforceable" *Villacres* 189 Cal. App. 4th at 591 ("settlement of bona fide wage dispute does not violate statue prohibiting release of unwaivable pay claims. Were it otherwise, a suit alleging a

- 4 -

**REPLY TO LAWRENCE PECK'S OBJECTION TO PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL**

1  wage claim could only be resolved through a dispositive motion or a trial")
2  (citations omitted).  The Ninth Circuit has also recently examined a similar issue,
3  namely whether the settlement of a state class action could release claims under the
4  Fair Labor Standards Act ("FLSA").  *See Rangel v. PLS Check Cashers of Cal.,*
5  *Inc.*, 899 F.3d 1106 (9th Cir. 2018).  The Ninth Circuit ruled that a broad class
6  release of state law claims in a Rule 23 class action did indeed bar related claims
7  under the FLSA, just as the *Villacres* court held that a broad release of California
8  Labor Code claims bars related claims that had not been initially pursued under
9  PAGA.  *Id.* Thus, despite Mr. Peck's contentions regarding the breadth of the
10 release being inappropriate, releases of PAGA claims as contained in the Settlement
11 Agreement in this instance are in fact valid.

12    Further, Mr. Peck's contention that Labor Code §2802 claims for
13 unreimbursed expenses were not properly exhausted is erroneously posited. (Obj'n
14 at 8:1-3). On September 11, 2009, Plaintiff Burnell submitted the requisite notice to
15 the LWDA via certified mail to the LWDA and Swift, outlining the specific
16 predicate Labor Code violations plus the facts and theories to support each violation
17 (LWDA Case No. LWDA-CM-281439-17). (Mauro Decl., ISO Reply ¶ 2).
18 Thereafter, on October 8, 2010, an amended letter was sent to both the LWDA and
19 Swift, on behalf of Jack Pollock which references the September 11, 2009 LWDA
20 letter for Plaintiff Burnell and reasserts the specific predicate Labor Code
21 violations, specifically including §2802, and the facts and theories to support each
22 violation referenced. (*Id.* ¶ 3, Exh. 1). Finally, on January 8, 2012 Plaintiff James
23 Rudsell submitted his own PAGA Notice letter, and said letter similarly included
24 the claims at issue in this case. (*Id.* ¶ 4, Exh. 2).  Therefore, Mr. Peck's assertions
25 that the settlement encompasses violations not alleged in the LWDA notices (i.e. §
26 2802) is simply another false and incorrect assertion by Mr. Peck and his counsel.
27 For these reasons, the Court must find the release pertaining to PAGA claims valid,
28 and must also find that Labor Code § 2802 has been properly exhausted. Thus, the

Court must find preliminary approval of the Settlement appropriate.

### D. The Class Definition is Not Over-inclusive, or Uncertain, and Will Not Cause Confusion

Mr. Peck contends that the proposed class definition is not precise and is potentially broader than the class the parties have litigated. (Obj'n at 9:1-2). Again, this is simply not true. All proposed class members are determinable directly from Defendant's own records by objective criteria, i.e. Drivers in California during the relevant time period who earned mileage based compensation. *See Campbell v. PricewaterhouseCoopers, LLP*, 253 F.R.D. 586, 593 (E.D. Cal. 2008) (it must be "'administratively feasible' for the court to determine individual class membership"). Therefore, there is no uncertainty as to who belongs to the proposed class for Settlement purposes. Although Mr. Peck asserts that the class definition can be interpreted to include mileage based employees who switched to hourly or salary during the liability period (Obj'n at 9:9-11), no confusion exists as Defendants are currently in the process of devising a separate settlement in another case, specifically for all hourly drivers, thus eliminating Mr. Peck's concerns. (Mauro Decl., ISO Reply ¶ 5).

### E. The Settlement Agreement Does Not Undervalue The PAGA Claims And It Does Fulfill PAGA's Purpose of Deterrence

In the Settlement of PAGA claims, the court's focus is not the monetary amount which aggrieved employees or the State stand to receive, but instead, whether the total settlement amount achieves the PAGA's objectives. The stated purpose of the PAGA is "to incentivize private parties to recover civil penalties for the government that otherwise may not have been assessed and collected by overburdened state enforcement agencies." See *Ochoa-Hernandez v. CJADERS Foods, Inc.* (N.D. Ca. Apr. 2, 2010)*,* 2010 WL 1340777, at \*4 (citing *Arias, supra,* 46 Cal.4th at 986). Penalties recovered under the PAGA are, in part, to "be distributed to the [LWDA] for enforcement of labor laws ... and for education of

1 employers and employees about their rights and responsibilities under this code, to
2 be continuously appropriated to supplement and not supplant the funding to the
3 agency for those purposes." *See* Cal. Lab. Code§ 2699G). The recovery of penalties
4 on behalf of the State, by way of a PAGA claim, is essentially a law enforcement
5 action. See *Amalgamated Transit Union, Local 1756, AFL-CIO v. Superior Court*
6 (2009) , 46 Cal.4th 99, 1003 (stating that the PAGA is a mechanism for "an
7 aggrieved employee to recover civil penalties-for Labor Code violations-that
8 otherwise would be sought by state labor law enforcement agencies"); *see also*
9 *lskanian, v. CLS Transportation Los Angeles, LLC* (2014) 58 Cal. 4th 348, 381.

10       Mr. Peck seeks to deter the Court's attentions from the fairness,
11 reasonableness, and adequacy of the Settlement by attacking the settlement amount
12 based on nothing but ill-conceived theories and mere speculation that he would
13 have settled the claims for more money or obtained more at trial, without ever
14 acknowledging the ever present possibility that the Court may find for the
15 Defendants. (*See generally* Obj'n). The reality of Mr. Peck's arguments is that he is
16 assuming great success on all his theories of liability without any support beyond
17 mere conjecture and speculation, which is clearly displayed throughout his
18 conflicting valuations of the claims that only he believes to be lacking.

19       For instance, Mr. Peck's PAGA and 226 valuations (Obj'n at 12:1;pg.13-14),
20 are strewn with distractors he wishes the Court to focus on. Mr. Peck's apparent
21 goal is to provide various theories of liability which he himself has as yet been
22 unable to prove, despite the years of litigating his own claims. He himself
23 acknowledges that the variables to consider in Defendants' piece rate compensation
24 cannot be calculated by a standard metric, as he notes that the contributing factors
25 vary "wildly from day to day, and trip to trip". (Obj'n at 13:3-5). Mr. Peck's
26 acknowledgement of the difficulty in assessing the piece-rate compensation claims
27 does not in any way assist him in proving that the settlement was undervalued in
28 this instance; instead, it demonstrates the reasonableness of the settlement itself, as

the issues Mr. Peck raises go against the theory that a class can in fact be certified or the PAGA claim can be tried, as his views emphasize that individualized issues are apparent in determining "from the pay stubs what is owed in total compensation to the employee for each pay period and whether or not they have been fully compensated, (Fialkow Decl., ¶17). He in fact asserts that "there are many different types of piece rates (i.e., unloading is sometimes paid as a piece rate and sometimes it is paid hourly) and whether a particular driver was paid a particular type of piece rate on a particular day would vary according to his or her individual circumstances. It is accurate to say the piece is sometimes the trip. But beyond that it is impossible to make generalizations." (Fialkow Dec., Exh. 4 pg 4:9-12).

Mr. Peck also raises speculative territorial concerns (Obj'n at 16-17) based on the "what ifs" of the ever changing legal landscape of wage and hour claims in California, specifically in connection to whether Labor Code § 226 applies to wage statements provided by out-of-state employers to employees that do not principally work in California or any other state but receive pay in California, pay California income tax, and who reside in California. (Obj'n at 16). Mr. Peck tells this court it should find more value in these claims based on an unforeseeable outcome in *Ward v United Airlines, Inc.* 2016 WL 3906077 (N.D. Cal.Jul.19, 2016), which is pending the Ninth Circuit's certification to the California Supreme Court. The Court should not be persuaded by these arguments as the Court must look at the reasonableness of the Settlement as it is today and not look at the "what ifs" of what might come out of a theoretical possible change in California's labor laws, that may or may not change the valuation of these claims in the future. To do so would bring zero finality to any settlement seeking approval as objectors would be free to object based upon the mere possibility of changes in the law.

Mr. Peck's never-ending speculative valuations continue, as he further raises arguments regarding enforcer locks and other business expenses (Obj'n at 17-18). Mr. Peck asserts that "all drivers for Swift, as a condition of employment, had to

- 8 -
**REPLY TO LAWRENCE PECK'S OBJECTION TO PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL**

purchase an Enforcer brand padlock that goes on the trailer back door and a king pin, which is a locking device that attaches to the trailer's wheels." (Obj'n at 17-22-25). Mr. Peck then inexplicably values the penalties to be a total of $28,500,000 for §2802, which he tells the Court to adopt for these calculations. (*Id*. 17:9-12). Ironically, however, whereas Mr. Peck has so vehemently argued that Plaintiffs failed to exhaust their administrative remedies regarding §2802, Mr. Peck himself failed to even posit this theory of liability in his own First Amended Complaint ("Operative Complaint"). (Fialkow Decl., Ex. 1, pg. 5 ¶13) ("Further Defendants have failed to fully reimburse or indemnify Plaintiff and said employees for all their business expenses, including but not limited to cellular phone fees, and fees for truck weight scales as required by Lab. Code §2802."). Nowhere in Mr. Peck's Operative Complaint does he even mention enforcer locks or facts and theories to support liability or provide notice to the LWDA to support a theory of liability for the reimbursement of such expenses. It is indeed puzzling that Mr. Peck now wishes the Court to be persuaded by his calculations for these allegedly unreimbursed items when Mr. Peck did not seem to be pursuing claims pertaining to these locks in the first instance.

These are just a few examples strewn throughout Mr. Peck's objections, which reveal his true ultimate goal to shift the Court's attention away from the fairness, reasonableness and adequacy of the proposed Settlement, without merit. As the Court's focus is not on the monetary amount which aggrieved employees or the State stand to receive, but instead, whether the total settlement amount achieves the PAGA's objectives, the Court must find that the $500,000.00 PAGA allocation out of the $7,250,000.00 gross settlement amount, undisputedly achieves PAGA's goal of deterring employers from engaging in policies and practices unsuitable to the provisions of the California Labor Code.

///

///

## F. Thorough and Adequate Investigation Has Been Undertaken by Plaintiffs and Their Counsel for the Claims Being Settled

Mr. Peck continues his unsupported attacks and alleges that Plaintiffs and their Counsel have failed to show adequate discovery and investigation in valuing the claims being released by the Settlement, despite declarations from Plaintiffs' counsel to the contrary and the breakdown of their efforts in the Motion for Preliminary Approval (Obj'n at 18-22). In support of his position, Mr. Peck contends that an appropriate investigation and discovery of the claims could not have been undertaken because Mr. Peck's calculations are contrary to the data and evidence produced by Defendants and proffered by Plaintiffs and their counsel, specifically with regard to the workweek calculations. (*Id.* at 19:6-17).[1] However, Mr. Peck's assertions are again incorrect and misguided. For one, Mr. Peck's use of 2,500 Full Time Equivalents ("FTEs") assumes that 100% of drivers during the liability period worked every week with absolutely zero account of changes in circumstances. Taking such a position is an unrealistic view of the employment circumstances of any industry and does not provide a fair and accurate assessment for the Court to rely on. Because Mr. Peck has assumed that all 2,500 FTEs basically never missed a day of work during the week, Mr. Peck's workweek calculations are distortedly high and are therefore unreliable and again purely speculative, and mere conjecture, which the Court should not rely upon.

Furthermore, Mr. Peck's use of his inflated calculations to show the alleged undervaluation of the Settlement is again without merit, as he himself notes that per the Settlement Agreement, "If the number of workweeks actually accrued during the Settlement Class Period by Class Members exceeds 850,000, the Gross Settlement Amount shall be increased by the percentage difference between the amount and the actual number of workweek during the Settlement Class Period."

---

[1] Mr. Peck has calculated the total workweeks to be 1,690,000 instead of the 850,000 as presented in the Settlement Agreement and Motion for Preliminary Approval.

(Agreement at pg. 15, (ii)). This built-in pro-rata basis to increase the award is a safeguard negotiated by counsel for the Settlement Class in the event the number of workweeks in fact exceed the confirmed 850,000 workweeks. Therefore, any arguments Mr. Peck wishes to raise regarding total workweek discrepancies and and supposed undervaluation of these claims based on workweeks is already addressed and taken into consideration in the Settlement. In fact, IF MR. PECK WAS CORRECT THAT THERE WERE INDEED ALMOST TWICE AS MANY WORKWEEKS, then under this clause in the Agreement, the settlement amount would actually almost double, per the pro-rata increase clause.  So his feigned concern is clearly unfounded.

Plaintiffs and their Counsel provided a thorough record and discussion of the causes of action and claims at issue throughout ***all the actions against Defendants***, along with the valuation of potential liability of these claims based on thorough and meticulously analyzed discovery. (*See generally* MPA; Hawkins Decl., ISO MPA). This provided the Court with the necessary information it requires to make an independent assessment of the adequacy of the Settlement terms. *See Tech-Bilt, Inc., v. Woodward-Clyde & Associates*, 38 Cal. 3d 488, 499 (1985). Therefore, the Court must find approval of the Motion for Preliminary Approval just and appropriate.

### G. The Settlement Reached Is Not A Result of Collusion

In an attempt to discredit the good faith efforts of Plaintiffs' and their Counsel's adequacy of representation in reaching the Settlement, Mr. Peck argues the Settlement was a by-product of a "reverse auction" (Obj'n at 22:9-12) in which the defendant favors a settling group of plaintiffs that gives the defendant the lowest settlement costs. *See Negrete v. Allianz Life Ins. CO. of N. Am.* 523 F. 3d 1091 (9th Cir. 2008); *Reynolds v. Ben. Nat'l Bank,* 288 F.3d 277, 282 (7th Cir. 2002). However, this is clearly not true and is an absurd position unsupported by the record.

1  As with all class actions, plaintiffs and their counsel have a duty to adequately protect the interests of the class as a whole, which includes Mr. Peck. *Simons,* 151 Cal. App. 3d at 846; *Cal Pak Delivery, Inc.,* 52 Cal. App. 4th at 12. Plaintiffs' counsel have clearly demonstrated that they possess extensive experience litigating wage and hour class actions on behalf of plaintiffs, with great success. (*See, e.g.*, Saltzman Decl., ISO MPA ¶ 18). Further, the Parties in this matter have vigorously litigated both the *Burnell* and *Rudsell* actions over the course of almost ten years. Indeed, Plaintiffs even filed a motion to certify the *Burnell* class *Id.* ¶ 5, which the Court denied on May 4, 2016, finding in part that the case was unmanageable as a class action) and the Ninth Circuit subsequently declined to review the denial. *Id.* Given the parties' vigorous and often contentious litigation of these cases, it is clear the proposed settlement agreement is not the product of collusion, but "the product of an arms-length, non-collusive, negotiated resolution[.]" *Rodriguez*, 563 F.3d at 965. Thus, on April 23, 2018, with a highly experienced wage-and-hour mediator, Mark Rudy, Esq., serving as the Parties' mediator, the Parties engaged in arms-length negotiations in an attempt to find a resolution of this matter. (*See* Hawkins Decl. ISO MPA ¶ 7).

Ultimately, with the informative and necessary assistance of Mark Rudy in the settlement process, the Parties were finally able to conclude a final settlement agreement in May of 2019. Every step in the settlement process was done at arms-length with the help of an experienced mediator, which supports the notion that the settlement was not a by-product of collusion. *See Alberto v. GMRI, Inc.,* 252 F.R.D. 652, 666-67 (E.D. Cal. 2008) (noting the parties' enlistment of "a prominent mediator with a specialty in [the subject of the litigation] to assist the negotiation of their settlement agreement" as an indicator of non-collusiveness).

### III. CONCLUSION

For all of the reasons above and as presented in the record, Plaintiffs respectfully request that the Court grant preliminary approval of the Settlement.

There is no evidence of collusion. There is sufficient evidence before the Court to establish the settlement was negotiated at arm's length pursuant to a full investigation and consideration of the claims. The Settlement provides a reasonable settlement value to the class members; and the overall Settlement is fair reasonable and adequate.

Dated: June 24, 2019                                    JAMES HAWKINS APLC
                                                        MARLIN & SALTZMAN, LLP
                                                        LAW OFFICES OF SHAUN SETAREH

                                                        By:/s/ Gregory Mauro
                                                           GREGORY MAURO, ESQ.
                                                           Attorneys for Plaintiffs individually and
                                                           on behalf of all others similarly
                                                           situated.

## CERTIFICATE OF SERVICE

I hereby certify that on June 24, 2019 I electronically filed the foregoing with the Clerk of the Court for the U.S. District Court, for the Central District of California using the CM/ECF system. All participants are registered CM/ECF users, and will be served by the CM/ECF system.

Dated:   June 24, 2019           /s/ Gregory Mauro_____ _
                                            Gregory Mauro