Joseph Clapp, Esq., SBN 99194
Aiman-Smith & Marcy
7677 Oakport Street, Suite 1150
Oakland, California 94621
Telephone: 510/590-7115
Facsimile: 510/562-6830
Email: jc@asmlawyers.com
Attorneys for Sadashiv Mares

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN BURNELL, JACK POLLOCK, and all others similarly situated,<br><br>　　　　Plaintiffs,<br><br>　vs.<br><br>SWIFT TRANSPORTATION CO. OF ARIZONA, LLC,<br><br>　　　　Defendant. | Case No. 5:10-cv-00809-VAP (OP)<br><br>Hon. Virginia A. Phillips<br><br>**Objection of Sadashiv Mares to Certification and Settlement**<br><br>Date: August 12, 2019<br>Time: 2:00 p.m.<br>Room: 8A<br>Courtroom 2 |

### The Proposed Settlement of Rest Period Claims Is Unreasonably Low.

As counsel for *Mares*, I am actively prosecuting an appeal of this Court's judgment on the rest period claims. *Mares v. Swift Transportation,* Ninth Cir. Case No. 19-55065. I have recently filed the appellant's opening brief. Thus, as far as the rest period claims go, I feel uniquely qualified to assist the Court in assessing whether the *Rudsell/Burnell* analysis accurately estimates the potential exposure on the rest period claims.[1]

**A. The Potential Exposure for Rest Period Claims is About $350 Million, Not $48 Million.**

To begin, the *Rudsell/Burnell* analysis is not at all transparent about its method for calculating rest period exposure, and so it must be reverse engineered. For some unexplained reason the analysis begins not with rest period exposure, but with wage claim exposure. It states that 2500 drivers losing 70 minutes of time each day would be owed $7,437,500 of unpaid wages in a year. *Rudsell* Dkt. 32 at 20. Divide this annual amount owed ($7,437,500) by the number of drivers (2500), and you find that each year an individual driver would be owed $2,975. Divide this amount ($2,975) by the number of days in a year (365), and you find that each day a driver would be owed $8.15 – for 70 minutes of work. It follows that the hourly rate underpinning this entire analysis is $6.99 ($8.15 x [60 min/70 min]).

How did the *Rudsell/Burnell* analysis determine this hourly rate of $6.99? There is no explanation provided. It is, of course, much less than the minimum wage rate, and drivers typically make much, much more than the minimum wage. Nevertheless, this absurdly-low

---

[1] Although I am not here assessing the valuations of other claims (*e.g.,* unpaid wages, meal period, etc.), I should note that the *Rudsell/Burnell* analysis of these other claims is similarly flawed because it relies on the same unreasonable hourly rate ($6.99/hr) and the same unreasonable number of workweeks (850,000). *See* text, *infra.*

$6.99 per hour rate is a fundamental pillar of the entire exposure analysis.

The other pillar of the analysis is the number of workweeks. According to the settlement agreement, there were 850,000 workweeks. *Rudsell* Dkt. 32-1 at 17. But according to the original *Rudsell/Burnell* analysis, there were actually 1,690,000 workweeks (2500 drivers x 52 wks/yr x 13 years), almost double the amount upon which the settlement was based. *Rudsell* Dkt. 32 at 14. The *Rudsell/Burnell* parties partially walked back this number in their revised analysis, indicating that there were only 1,362,400 workweeks ([1600 drivers x 52 wks/yr x seven years] + 2500 drivers x 52 wks/yr x six years]). *Burnell* Dkt. 193 at 28. No attempt was made, however, to explain why the parties based their settlement on the absurdly-low and admittedly unsupported estimate of 850,000 workweeks.

After using the low hourly rate and the low workweek figure to estimate the loss of unpaid wages, the *Russell/Burnell* analysis then turns to the rest period exposure. Here is its entire analysis: "Valuing this claim at approximately 50% of the unpaid wages is probably reasonable. . . ." *Rudsell* Dkt. 32 at 21. That is it. That is the complete analysis. Since it valued the unpaid wages exposure at $96 million, it valued the rest period claim exposure at $48 million – because doing so was "probably reasonable." *Id.* at 20-21.

By way of contrast, how would I value the potential exposure for the "one additional hour of pay" remedy for rest period violations? I would certainly not begin with an analysis of lost wages and then cut that figure in half. Instead, I would multiply the total number of workdays (total possible violations) by the average hourly wage ("one additional hour of pay"). Labor Code Sec. 226.7(c). If we assume that the latest *Rudsell/Burnell* estimate of workweeks is the best estimate, then there were 9,536,800 workdays (1,362,400 workweeks x

seven days/wk). If we assume the more realistic hourly rate of $22/hr, then the "one additional hour of pay" remedy would total about $210 million (9,536,800 workdays x $22/day).

But this is not the entire exposure because the proposed settlement lumps in PAGA penalties as well. The maximum PAGA penalties for Labor Code Section 226.7(c) violations would be (at least) $100 per pay period. Labor Code Sec. 2699(f)(2). Thus, if there were 1,362,400 workweeks, and a weekly pay period, then there would be an exposure to penalties totaling $136,240,000.

Thus, I estimate that the total exposure on the rest period claims is approximately $350 million ($210,000,000 + $136,000,000), more than seven times the $48 million exposure estimated by the *Rudsell/Burnell* analysis.

### B. The Proposed $1.65 Million Settlement of Rest Period Claims Would Discount These Claims by 99.5%.

According to the *Rudsell/Burnell* analysis the total exposure for all claims, wage, rest period, etc., is $211 million. *Burnell* Dkt. 193 at 27. The portion allocated to rest periods is $48 million. *Id.* By multiplying the proposed settlement amount ($7,250,000) by the ratio of rest period exposure to total exposure, we can calculate the amount the settlement allocates to rest period claims: $1.65 million ($7,250,000 x $48M/$211M).

$1.65 million is a discount of about 97% from the *Rudsell/Burnell* exposure estimate of $48 million. It is a discount of 99.5% from the more realistic exposure estimate of $350 million.

## Conclusion.

The total exposure in this case for rest period claims alone is approximately $350 million. In my view, settling the rest period claims for a mere $1.65 million would ill-serve the interests of the class members.

Respectfully submitted,

Dated: August 2, 2018                     aiman-smith & marcy

/s/ Joseph Clapp
Joseph Clapp, Esq.
Attorneys for Plaintiff

# PROOF OF SERVICE

I, the undersigned, hereby declare: I am employed in the County of Alameda, California; I am over eighteen years of age and not a party to the within action. I am either admitted to practice before this Court or employed in the Office of an attorney admitted to practice in this Court. My business address is 7677 Oakport, Suite 1150, Oakland, California 94621.

I hereby certify that on this date, the foregoing:

**Objection of Sadashiv Mares to Certification and Settlement**

was filed electronically with the Clerk of the court to be served by operation of the Court's ECF/PACER electronic filing system to all counsel of record. Parties may access documents through the Court's system, or as indicated below:

| | |
|---|---|
| Paul S. Cowie, Esq.<br>Sheppard, Mullin, Richter & Hampton LLP<br>379 Lytton Avenue<br>Palo Alto, CA 94301 | Attorneys for Defendant Swift Transportation Co. of Arizona, LLC, and Swift Transportation Company |
| John D. Ellis, Esq.<br>Corinne K. Hays, Esq.<br>Sheppard, Mullin, Richter & Hampton LLP<br>Four Embarcadero Center, 17th Floor<br>San Francisco, CA 94111-4109 | Attorneys for Defendant Swift Transportation Co. of Arizona, LLC, and Swift Transportation Company |
| Robert Mussig, Esq.<br>Sheppard, Mullin, Richter & Hampton LLP<br>333 South Hope Street, 43rd Floor<br>Los Angeles, CA 90071-1422 | Attorneys for Defendant Swift Transportation Co. of Arizona, LLC, and Swift Transportation Company |
| James R. Hawkins, Esq.<br>Gregory E. Mauro, Esq.<br>James R. Hawkins, APLC<br>9880 Research Drive, Suite 200<br>Irvine, CA 92618 | Attorneys for Plaintiff, James R. Rudsell, on behalf of himself and all others similarly situated |
| Stanley D. Salzman, Esq.<br>Marlin & Saltzman, LLP<br>29800 Agoura Road, Suite 210<br>Agoura Hills, CA 91301 | Attorneys for Plaintiff, James R. Rudsell, on behalf of himself and all others similarly situated |
| Shaun Setareh, Esq.<br>Setareh Law Group<br>315 South Beverly Drive, Suit 315<br>Beverly Hills, CA 90212 | Attorneys for Plaintiff, James R. Rudsell, on behalf of himself and all others similarly situated |
| Neal J. Fialkow, Esq.<br>James S. Cahill, Esq.<br>Law Office of Neal J. Fiaklow, Inc.<br>215 N. Marengo Avenue, 3rd Floor<br>Pasadena, CA 91101<br>nfialkow@pacbell.net | Attorneys for Lawrence J. Peck, in re *Peck v. Swift Transportation Company of Arizona, LLC*<br><br>Service by US Mail and Email, only |

Proof of Service
*Burnell v. Swift Transportation Co., et al.*     Case No. 5:10-cv-00692 VAP (OP)
Page i

\_X\_   [By Mail]   I caused such envelope, with postage fully prepaid, to be placed in the United States mail at Oakland, California.

\_X\_   [By E-Mail ]   I caused such document to be electronically transmitted via the Internet to (email address) from Oakland, California.

\_X\_   [By Electronic Transmission]   I hereby certify that on this date, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System for filing and service via transmittal of a Notice of Electronic Filing.

\_\_\_\_   [By Overnight Delivery, UPS Next Day Air, C.C.P. § 1013(c)]   UPS is a provider of overnight delivery services.  I placed the above described document(s) in an envelope or package designated for use by UPS and delivered said designated envelope to an authorized Office or drop box of UPS at Oakland, California, with delivery fees for overnight delivery fully prepaid, and addressed to the addressee(s) above.

\_\_\_\_   [By Personal Service]   I caused such envelope to be delivered by hand to the above address.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated: August 2, 2019                        /s/ Norma Dale
                                             Norma Dale

Proof of Service
*Burnell v. Swift Transportation Co., et al.*          Case No.  5:10-cv-00692 VAP (OP)
Page ii