**JAMES R. HAWKINS, APLC**
James R. Hawkins, Esq. SBN 192925
Gregory E. Mauro, Esq. SBN 222239
9880 Research Drive, Suite 200
Irvine, CA 92618
TEL:   (949) 387-7200
FAX:   (949) 387-6676
Attorneys for Plaintiff, JAMES R. RUDSELL, on behalf of
himself and all others similarly situated

**MARLIN & SALTZMAN, LLP**
Stanley D. Saltzman, Esq. (SBN 90058)
29800 Agoura Road, Suite 210
Agoura Hills, California   91301
Telephone:   (818) 991-8080
Facsimile:    (818) 991-8081
ssaltzman@marlinsaltzman.com
**SETAREH LAW GROUP**
Shaun Setareh, (SBN 204514)
315 South Beverly Drive, Suite 315
Beverly Hills, CA 90212
Telephone: (310) 888-7771
Facsimile: (310) 888-0109
shaun@setarehlaw.com
Attorneys for Plaintiffs GILBERT SAUCILLO, et al.

## IN THE UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN BURNELL, JACK POLLOCK, JAMES RUDSELL, and all others similarly situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>SWIFT TRANSPORTATION CO. OF ARIZONA, LLC,<br><br>        Defendant. | **CASE NO.  EDCV 12-00692 VAP OPx**<br>Consolidated with Related Case:<br>**5:10-CV-00809-VAP (OPx)**<br>(Assigned to the Hon. Virginia A. Phillips)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES ISO PLAINTIFFS' MOTION FOR FINAL  APPROVAL OF CLASS ACTION SETTLEMENT; ATTORNEYS' FEES, COSTS, SERVICE AWARDS, AND** |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ADMINISTRATION COSTS**

[Proposed Order and Declarations of James Hawkins, Stanley D. Saltzman, James Rudsell, and Gilbert Saucillo filed concurrently herewith]

Date:            December 2, 2019
Time:            2:00 p.m.
Room:            8A – First Street
Complaint Filed:    March 22, 2010
Trial Date:         None Set

# **TABLE OF CONTENTS**

I.      INTRODUCTION…………………………………………..………………………1

II.     THE PARTIES AND CLASS……………………....……………….…………....1

    A.      Plaintiff………...…………………………........…………………………..1

    B.      Defendants………………………………………..…………………………2

    C.      The Settlement Class ……………………………………………………….2

III.    MEDIATION AND SUMMARY OF PROPOSED SETTLEMENT…………..….2

    A.      Mediation…………………………………………………..……….…2

    B.      The Settlement Terms……………………………..………………………..3

IV.     PRELIMINARY APPROVAL AND CLASS NOTICE………………..…………4

V.      FINAL APPROVAL OF THE SETTLEMENT SHOULD BE GRANTED…...…..4

    A.      Class Settlements are Subject to Court Review and Approval………..……4

    B.      Class Action Settlement Approval Has Three Steps…………………….….5

    C.      The Court Should Exercise Discretion to Approve a Settlement…………...5

    D.      The Settlement is Fair, Adequate, and Reasonable………………………...6

    E.      The Settlement Satisfies Ninth Circuit Final Approval Standards……..…..7

        1.      Strength of Plaintiff's Case and the Risk, Expense, Complexity and Likely Duration of Further Litigation…………………….……….7

        2.      The Stage of Proceedings and Extent of Discovery Support Settlement………………………………………….…………....…10

        3.      The Experience and Views of Counsel……………..……………..11

        4.      Objections and Reactions to the Settlement …………………..……12

VI.     THE COURT SHOULD APPROVE THE REQUESTED ATTORNEYS' FEES AND LITIGATION EXPENSES AND THE CLASS REPRESENTATIVE ENHANCEMENT PAYMENTS………...………………………………..……..13

    A.      A Percentage Fee Award is Warranted…………….……..…………….....13

    B.      One- Third of the Common Fund Is A Reasonable Fee……………………16

Memorandum of Points & Authorities ISO Motion for Order Granting Final Approval
of Class Action Settlement - Case No. CV10-00809-VAP-OP

C.   Ninth Circuit Factors for Evaluation Reasonableness of the Fee
Request…………………………………..……………………………18

1.   The Results Achieved Support the Fee Request……………………18

2.   Strength of Plaintiff's Case and the Risk, Expense, Complexity and
Likely Duration of Further Litigation……………….………………19

3.   The Contingent Nature of the Fee and the Financial Burden
Carried…………………………………………………………….………19

4.   Awards in Similar Cases……………………….……………………21

5.   The Reaction of the Class Supports the Fee Request……………..22

D.   Although Not Required, Class Counsel's Fee Request Is Reasonable when
Cross-Checked With the Lodestar………………………………………22

1.   Class Counsel's Hourly Rates Are Reasonable……………………..23

2.   Class Counsel's Total Hours are Reasonable…………………….…24

3.   Multiplier………………..……………………………………………24

E.   Class Counsel's Litigation Expenses Should be Reimbursed…………..…24

F.   The Class Representative Enhancement Payment Are Reasonable……...…25

G.   The Administration Expenses Are Reasonable………………..………...25

VII.   CONCLUSION…………………………………...………………………26

Memorandum of Points & Authorities ISO Motion for Order Granting Final Approval
of Class Action Settlement - Case No. CV10-00809-VAP-OP

# TABLE OF AUTHORITIES

## CASES

*Aguirre v. Genesis Logistics, Inc.*,
   2014 U.S. Dist. LEXIS 184617 (C.D. Cal. Nov. 29, 2017) ...……...….……16,21

*Barbosa v. Cargill Meat Solutions Corp*,
   297 F.R.D. 431 (E.D. Cal. July 2, 2013)……………………..……………...….22

*Bowles v. Dep't of Ret. Sys.*,
   847 P.2d 440 (Wash. 1993)……………………………………………………14

*Boyd v. Bank of America Corp.*,
   2014 U.S. Dist. 162880 (C.D. Cal. Nov. 18, 2014)………....……...….……....21

*Boyd v. Bechtel Corp.*,
   485 F. Supp. 610 (N.D. Cal. 1979)……………….………....……...…10,11,12

*Brown v. American Honda Motor Co., Inc.*,
   2010 U.S. Dist. LEXIS 145475 (C.D. Cal. July 29, 2010)…..……………..…..12

*Chavez v. Netflix, Inc.*
   162 Cal. App. 4th 43(2008)………………..……………………………………16

Children's *Hospital and Med. Center v. Bonta*,
   97 Cal. 4th 740 (2002)…………………………………...………….23

*Class Plaintiffs v. City of Seattle*,
   955 F.2d 1268 (9th Cir. 1992)…………………..…….……..…………..6

*Dennis v. Kellog Co.*,
   455 U.S. 326 (1980)……………………………………………………..16

*Deposit Guar. Nat'l Bank v. Roper*,
   445 U.S. 326 (1980)………………………..……….....18

*Dunleavy v. Nadler*,
   213 F.3d 454  (9th Cir. 2000)………………………….……..………..5

*Ellis v. Naval Air Rework Facility* .
   87 F.R.D. 15, (N.D. Cal. 1980)……………….…….…...…....11

*Emmons v. Quest Diagnostics Clinical Labs., Inc.*,
   2017 U.S. Dist. LEXIS 272249 (E.D. Cal. 2017)……………….…………..…13

*Fisher Bros. v. Cambridge Lee Industries, Inc.*
   630 F.Supp. 482 (E.D. Pa. 1985)………………………………..…………..11

*Flannery v. California Highway Patrol*,
   61 Cal. App. 4th 629 (1998)………………………………….…………….23

*Garner v. State Farm Auto Ins. Co.*,
   2010 U.S Dist. LEXIS 49477 (N.D. Cal. Ap. 22, 2010)………………..……….6

*Glass v. UBS Financial Services, Inc.*,
   2007 WL 221862 (N.D. Cal. Jan. 26, 2007)…………………..………..……22

*Grillo v. Key Energy Services, LLC*,
   2017 U.S. Dist. LEXIS 42682 (C.D. Cal. Oct. 13, 2017)………………..……16,21

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998)……………………………………………5,6

*Harris v. Marhoefer*,
   24 F.3d 16 (9th Cir. 1994)…………………………………..…………..…..24

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983)……………………………………….…………..18

*Hopson v. Hanesbrands Inc.*,
   2009 U.S. Dist. LEXIS 33900 (N.D. Cal. Apr. 3, 2009)…………………….23

*In re Activision Securities Litigation*,
   723 F. Supp. 1373……………………………………..…...……......15,16,17

*In re Bluetooth Headset Products Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011)………………………………..…………24

*In Re DJ Orthopedics, Inc. Secs. Litig.*,
   2004 U.S. Dist. LEXIS 11457 (S.D. Cal. June 21, 2004)…………..………25

*In re Heritage Bond Litig. v. U.S. Trust Co. of Tex., N.A.*,
   2005 U.S. Dist. LEXIS 13627 (C.D. Cal. June 10, 2005)……………….18,22

4

Memorandum of Points & Authorities ISO Motion for Order Granting Final Approval
of Class Action Settlement - Case No. CV10-00809-VAP-OP

*In re Mego Fin. Corp. Sec. Litig.*,

    213 F. 3d 454 (9th Cir. 2000)…………………………………..…………19

*In re Omnivision Technologies, Inc.*,

    559 F. Supp. 2d 1036 (N.D. Cal. 2007)……………………….…..……...11,15

*In Re Oracle Secs. Litig.*,

    131 F.R.D. 688, 689 (N.D. Cal. 1990)……………………………………...15

 *In re Pacific Enterprises Security Litigation*,

    47 F.3d 373 (1995 U.S. App. LEXIS 2330)…………………..……….…...17

*In re Quantum Health Resources, Inc.*

    962 F. Supp. 1254 (1997)………………………………………...……19,20

*Karapetyan v. ABM Industries Incorporated and ABM Security Services, Inc*,

    2015 U.S. Dist. LEXIS 24210 (C.D. Cal. Sept. 7, 2017) ……...……...………16,21

*Ketchum v. Moses*,

    24 Cal.4th 1122 (2001)………………………………….…………...…23

*Laffitte v. Robert Half International, Inc.*,

    1 Cal.5th 480 (2016)………………………………………….……………13,14

*Linney v. Cellular Alaska Partnership*,

    151 F.3d 1234 (9th Cir. 1998)…………………………………..…………5,19

*Lopez v. Youngblood*,

    2011 WL 10483569 (9th Cir. 1998)…………………………..…………...…22

*Mangold v. California Public Utils. Comm'n*,

    67 F.3d 1470 (9th cir. 1995)…………………………………………....…13

*Margolin v. Regional Planning Commission*,

    134 Cal.App.3d 999 (1982)……………………………………….…...23

*Martin v. AmeriPride Servcs.*,

    2011 U.S. Dist. Lexis 61796 (S.D. Cal. June 9, 2011)…………….................……..12

*Moore v. Jas. H. Matthews & Co.*,

    682 F.2d 830 (9th Cir. 1982)……………………………….…………24

*Murillo v. Pac. Gas & Elec. Co.*,

    266 F.R.D. 468 (E.D. Cal. 2010)……………………….……….……………5

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,

    221 F.R.D. 523 (C.D. Cal. 2004)…………………………………...………11

*Officers for Justice v. Civil Serv. Comm'n. of the City and County of San Francisco*

    688 F. 2d 615 (9th Cir. 1982), cert. den. (1983) 459 U.S. 1217…..…………..5,6,19

*Paul, Johnson, Alston & Hunt v. Graulty*,

    886 F.2d 268 (9th Cir. 1989)…………………………………..……....…..15

*PLCM Group, Inc. v. Drexler,*

    22 Cal. 4th 1084 (2000)………………………………………….……..23

*Powers v. Eichen*,

    229 F.3d 1249 (9th Cir. 2000)…………………..……………………….……18

*Rodriguez v. West Publishing Corp.,*

    563 F.3d 948 (9th Cir. 2009). …………………………….......…….5,7,25

*Shiferaw v. Sunrise Senior Living Management, Inc.,*

    2016 U.S. Dist. LEXIS 187548 (C.D. Cal. Jul. 17, 2017) ……….…...………17,21

*Skelton v. General Motors Corp*.,

    860 F. 2d 250 (7th Cir. 1988)…………………….…………….…………..20

*Smith v. CRST Van Expedited, Inc.*,

    2013 WL 163293 (S.D. Cal. Jan. 14, 2013)…………..…………………………..16

*Staton v. Boeing Co.*,

    327 F. 938 (9th Cir. 2003). ……………………………...…...……5,23

*Taylor v. Shippers Transp. Express, Inc.*,

    2015 WL 12658458 (C.D. Cal. May 14, 2015) ……………………….……21

*Torrisi v. Tucson Elec. Power Co*.,

    8 F.3d 1370 (9th Cir. 1993)……………………………………...……..6

*Vasquez v. Coast Valley Roofing, Inc.*

    266 F.R.D. 482, 491 (E.D. Cal. 2010)…………………………………15

*Vizcaino v. Microsoft Corp*.,

    290 F.3d 1043 (9thx Cir. 2002)……………………………….......13,14,16,18,21

*Wershba v. Apple Computer, Inc.*,
      91 Cal. App. 4th 224 (2001)……………………………………..……..……..24
*West v. Circle K Stores, Inc.*,
      2006 U.S. Dist. LEXIS 76558 (E.D. Cal. Oct. 19, 2006)………..……….………24
*Wooldridge v. Marlene Industries Corp*
       898 F.2d 1169 (6th Cir. 1990)……………………………………….……....…24

## STATE RULES AND STATUTES

PAGA Private Attorney General Act………………………..………………….3,7,8,10,25

## FEDERAL RULES

Fed. R. Civ. P. Rule 23(e)……………………………………..……….………………4,5
Rule 23(e)(1)(C)……………………………………………………………………4,5

## SECONDARY SOURCES

1 Alba Conte, Attorney Fee Awards (3d ed. 2004) ………………..……………….……5,20
Manual for Complex Litigation (Fourth), …………….…………………..…………5,17
4 Newberg on Class Actions (5th ed. 2014) ………………………………….......5,15

7

## I.  INTRODUCTION

Plaintiffs James Rudsell and Gilbert Saucillo as appointed Class Representatives ("Plaintiffs" or "Class Representatives") seek final approval of a non-reversionary Gross Settlement Amount of $7,250,000 on behalf of the 19,533 drivers employed by Swift Transportation Co. of Arizona, LLC and/or Swift Transportation Co., Inc. ("Swift" or Defendants") to perform work in the State of California and who earned mileage-based compensation during the period March 22, 2006 to January 31, 2019. ("Class Period", "Settlement Class").   The Settlement was preliminarily approved on August 16, 2019. [Dkt. No. 212.].  Pursuant to the Court's Preliminary Approval Order, the Court-approved Notice of Class  Action Settlement was disseminated to the Class on September 6, 2019, informing them of their rights and benefits under the Settlement and of the deadline  to submit requests for exclusion or objections.  At the close of the deadline to act, four (4) members filed objections[1] and only eleven (11)[2] of the Settlement Class Members excluded themselves. Following the grant of final approval, and the effective date of Settlement, pursuant to the terms of the Settlement, Participating Class Members will receive an average payment of approximately $217.50 and highest payment of approximately $3,458.17.00.  Declaration of Nathalie Hernandez Regarding Class Notification and Claims Administration ("Hernandez Decl."), ¶ 15).

An overwhelming majority of the Class has embraced the Settlement as fair, adequate and reasonable. Class Counsel requests that the Settlement be finally approved, and Service Awards, attorneys' fees and costs, and Administrator's Costs be awarded in the requested amounts.

## I.     THE PARTIES AND CLASS

### A.      Plaintiffs

Plaintiffs and the Class  Members worked as drivers employed by Swift and earned mileage based compensation during the Class Period. Plaintiffs, as

---

[1] Defendants will file responses to the objections-which objections should be overruled.
[2] These 11 individuals filed timely and valid exclusions.

class representatives, share with all other class members that they were employed by Defendants as drivers earning mileage-based pay during the class period. (Doc. No. 193, at 15). (Hawkins Decl. ¶ 4).

### B.    Defendants

Defendants own and operate a logistics business that employ drivers who earned mileage-based compensation during the class period of March 22, 2006 to January 31, 2019. ( Hawkins Decl. ¶ 4.)

### C.    The Settlement Class

The certified class for settlement purposes is defined as all drivers employed by Swift Transportation Co. of Arizona, LLC and/or Swift Transportation Co., Inc. ("Swift or Defendants") to perform work in the State of California and who earned mileage-based compensation during the period March 22, 2006 to January 31, 2019.

There are 19,533 Settlement Class Members. (Hernandez Decl. ¶ 14).

## II.    MEDIATION AND SUMMARY OF PROPOSED SETTLEMENT

### A.  Mediation.

Defendants deny and continue to deny the allegations in this Action.  After conducting comprehensive discovery, many meetings, and ongoing formal and informal exchanges of documents and information, and review of records, on April 23, 2018, the Parties participated in a mediation session before mediator Mark Rudy, Esq. an experienced mediator who has mediated numerous wage-hour class actions.  The parties were unable to reach a resolution at mediation that day but continued negotiations through mediator Mark Rudy and eventually agreed upon the $7.25 million settlement on or about May 14, 2018. Thereafter, the Parties continued to negotiate the additional terms of the settlement that is presented here for final approval. (Hawkins Decl. ¶¶ 5-14, see also generally [Dkt. Nos. 197-Motion for Preliminary Approval, [Dkt 193- Supplemental Brief ISO Motion for Preliminary Approval; Dkt. No. 202-Plaintiffs' Reply to Peck's Objections]).

2

Memorandum of Points & Authorities ISO Motion for Order Granting Final Approval
of Class Action Settlement - Case No. CV10-00809-VAP-OP

**B.    The Settlement Terms**

The Parties have agreed (subject to Court approval), that the Class claims will be settled and compromised for a Gross Settlement Amount ("GSA") of $7,250,000, no part of which may revert to Defendants, and which includes: (a) Settlement Class individual settlement payments; (b) attorneys' fees of up to $2,416,666.67 (33-1/3% of GSA) to compensate Class Counsel for work performed and all work remaining to be performed in documenting and administrating the settlement and securing final Court approval; (c) Class Counsel's litigation costs of $67,551.61; (d) Class Representative Service Awards of $5,000 each to Plaintiffs Saucillo and Rudsell in consideration and recognition of their initiation and prosecution of the action, serving as Class Representatives, work performed, risks undertaken for the payment of costs in the event the actions had been lost, the benefits conferred on the Class Members, and a general release of all claims which they personally are providing; (e) Settlement Administrator expenses to ILYM Group, Inc. in the amount of $100,000; and (f) payment of 500,000 to the Labor and Workforce Development Agency for PAGA penalties, with 75% ($375,000) being paid to the LWDA from the GSA and 25% ($125,000) remaining for pro rata distribution to the Participating Class Members. (Settlement at ¶ 4.)

After all Court-approved deductions, the remaining non-reversionary Net Settlement Amount ("NSA") is estimated at $4,273,333.33[3].  To determine a Participating Class Member's individual settlement award payment, the Net Settlement Fund shall be divided by the total workweeks worked by all Settlement Class Members during the Class Period to determine a multiplier. The Individual Settlement Amount payable to each Class Member shall be equal to that individual's number of workweeks worked during the Class Period versus the total workweeks worked by all Class Members during the Class Period.  Based on these calculations, the Participating Class Members will receive an estimated average gross payment of $217.50 and the estimated

---

[3] Litigation costs are $67,551.61 which would increase the NSA to $4,305,781.72.

highest gross payment being $3,458.17. (Hernandez Decl., ¶ 15). No portion of the
Settlement funds will revert to Defendant under any circumstances. *Id.* at ¶ IX 4. The
Settlement Administrator shall follow the procedures set by the State of California
Unclaimed Property Fund with respect to non-negotiated checks, with an identification of
the Settlement Class Member(s) to whom the funds belong. *Id*. at ¶  IX 12.

## III.   PRELIMINARY APPROVAL AND CLASS NOTICE

On August 16, 2019, the Court found the Settlement to be fair, adequate and
reasonable, and entered its Order Granting Plaintiff's Motion for Preliminary Approval
of Class Action Settlement. [Dkt. No. 212].  The Court approved the Notice of Class
Action Settlement ("Notice") and directed its distribution to the Class by first-class mail
pursuant to the terms of the Settlement.

On September 6, 2019, the Administrator mailed the Notice Packet to 109,544
members of the Class. (Hernandez Decl. ¶¶ 7-14, Exh. A).  The Notice advised Class
Members of (1) the pendency of the Class Action; (2) of the Settlement terms; (3) of the
automatic payment of a proportionate share of the Settlement monies if the Class
Members did not request exclusion; (4) of the released claims; (5) of the estimated
amount each may expect to receive pursuant to the Settlement; (6) of their right to
submit objections or requests for exclusion and of the manner and timing for doing
either of these acts; and (7) of the date and time set for the final approval hearing.  *Id*.

In response to the Class Notice, four (4) objections to the Settlement were
received which shall be addressed in the Defendants' response to objections, and 11
individuals validly and timely requested exclusion.  (Hernandez Decl. ¶¶ 12-13).

## IV.   FINAL APPROVAL OF THE SETTLEMENT SHOULD BE GRANTED

### A.   Class Settlements are Subject to Court Review and Approval

"A class action shall not be dismissed, settled, or compromised without the
approval of the Court, and notice of the proposed dismissal, Settlement or compromise
shall be given as the Court directs." Fed. R. Civ. P. Rule 23(e). A class action Settlement
is approved when the district court finds it is fair, adequate, and reasonable. Rule

23(e)(1)(C); *Staton v. Boeing Co.*, 327 F. 938, 952 (9th Cir. 2003).

## B.   Class Action Settlement Approval Has Three Steps

Rule 23(e) Settlement approval includes three distinct steps: (1) preliminary approval of the proposed Settlement; (2) dissemination of a notice of the Settlement to the class; and, (3) a formal fairness hearing at which counsel may introduce evidence and argument supporting the fairness, adequacy, and reasonableness of the Settlement, and class members may be heard. *Murillo v. Pac. Gas & Elec. Co.*, 266 F.R.D. 468, 473 (E.D. Cal. 2010). This procedure safeguards class members' due process rights and enables the Court to fulfill its role as the guardian of class interests. *See* William Rubenstein, Alba Conte & Herbert Newberg, *4 Newberg on Class Actions* (5th ed. 2014) ("*Newberg*"), §§ 13:39, *et seq.*

The first two steps are now complete. The first step was completed on August 16, 2019 when the Court preliminarily approved the Settlement. The second step – dissemination of the Class Notice – was completed as described above. The third and final step in the approval process is the final approval hearing, at which the Court determines whether the Settlement is fair, adequate, and reasonable.

## C.   The Court Should Exercise Discretion to Approve a Settlement

The decision whether a Settlement is fair, reasonable, and adequate is committed to the Court's sound discretion. *Dunleavy v. Nadler*, 213 F.3d 454, 458 (9th Cir. 2000) (citing *Linney v. Cellular Alaska Partnership,* 151 F.3d 1234, 1238 (9th Cir. 1998); Manual for Complex Litigation (4th ed. 2004) § 21.61 at 308, *Officers for Justice v. Civil Serv. Comm'n. of the City and County of San Francisco* (9th Cir. 1982) 688 F. 2d 615, 625, cert. denied (1983) 459 U.S. 1217.)

Although the Court has discretion to determine whether a proposed class Settlement is fair, the Ninth Circuit has "long deferred to the private consensual decision of the parties." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965(9th Cir. 2009) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998)). "[T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to

5

Memorandum of Points & Authorities ISO Motion for Order Granting Final Approval of Class Action Settlement - Case No. CV10-00809-VAP-OP

a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the Settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice v. Civil Serv.Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). "[I]n evaluating whether the Settlement is fair and adequate, the Court's function is not to second guess the Settlement's terms." *Garner v. State Farm Auto Ins. Co*., No. CV 08 1365 CW (EMC), 2010 U.S. dist. Lexis 49477, *21 (N.D. Cal. Ap. 22, 2010).

A "[s]ettlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon*, 150 F.3d at 1027 (9th Cir. 1998).

### D.    The Settlement is Fair, Adequate, and Reasonable

The Court's determination of whether a proposed Settlement is fair, adequate, and reasonable involves a balancing of factors. These factors may include, among others: "the strength of plaintiff's case; the risk, expense, complexity, and the likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in Settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the Class Members to the proposed Settlement. This list is not exclusive and different factors may predominate in different factual contexts." *Torrisi v. Tucson Elec. Power Co*., 8 F.3d 1370, 1375-76 (9th Cir. 1993) (citation omitted).  Some of these factors were addressed in the Preliminary Approval Motion and supporting declaration. [Dkt. Nos. 193, 197 and 202].

The law favors Settlement, particularly in class actions and other complex cases, where substantial resources can be conserved by avoiding the time, cost, and rigors of formal litigation. See *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1275 (9th Cir. 1992).

"In the Ninth Circuit, a court affords a presumption of fairness to a Settlement if:

6

Memorandum of Points & Authorities ISO Motion for Order Granting Final Approval
of Class Action Settlement - Case No. CV10-00809-VAP-OP

'(1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the Settlement are experienced in similar litigation; and (4) only a small fraction of the class objected.'" (citation omitted) *Rodriguez v. West Publishing Corp.,* No. CV-05-3222 R(MCx) 2007 *Rodriguez v. W. Pub. Corp.*, 2007 WL 2827379, at *7 (C.D. Cal. Sept. 10, 2007).

### E.   The Settlement Satisfies Ninth Circuit Final Approval Standards

At the preliminary approval stage, the Court was provided with information satisfying all but the last and final *Rodriquez* factor. Based on that, the Court preliminarily approved the Settlement as fair, adequate and reasonable. *See,* Order Granting Preliminary Approval. [Dkt. No. 212.] The fourth factor, number of objectors, is now satisfied with only 4 objections[4], addressed concurrently herewith as lacking merit so as to disturb the overall reasonableness of the settlement, and only 11 valid and timely exclusions, entitling the Settlement to a presumption of fairness. (Hernandez Decl. ¶¶ 12-14).

### 1.   Strength of Plaintiff's Case and the Risk, Expense, Complexity and Likely Duration of Further Litigation

While Plaintiffs believe in the merits of their case, they also recognize the inherent risks and uncertainty of litigation, including that the Class could receive nothing, and understand the benefit of providing a significant settlement sum now. The specific risks include: (i) a denial of certification [Dkt No. 170]; (ii) if class certification were overturned on appeal, that the Court may later decertify the Class; (iii) the possibility of an unfavorable, or less favorable, result at trial on the class or PAGA claims; (iv) the

---

[4]Peck's objections regarding potential class certification and the overall fairness of the award were addressed by the Court-ordered supplemental briefing, (Doc. No. 193), and the Court addressed these same issues in its Order granting preliminary approval. Further, the Court addressed the Mares' objections regarding the specific claim valuations and determined preliminarily the Settlement falls within the range of possible approval, which, the Court found was satisfied. [Dkt. No. 212]. Similarly, the other objections make similarly arguments which are more fully discussed in detail in Defendants' filed response to objections.

7

Memorandum of Points & Authorities ISO Motion for Order Granting Final Approval of Class Action Settlement - Case No. CV10-00809-VAP-OP

possibility post-trial motions may result in an unfavorable, or less favorable, result at trial; and, (v) the possibility of an unfavorable, or less favorable result on appeal, and the certainty that process would be lengthy. Additionally, if Plaintiffs were ultimately to prevail, the Court may decide to substantially reduce any PAGA penalties because Plaintiffs would already be recovering for the underlying Labor Code violations and any PAGA penalties on top of the amounts already awarded are argued by defendants to essentially be a "double recovery."

Throughout the negotiations and the litigation process in general, Plaintiffs recognized that the issues of liability and class certification presented significant uncertainty and risk.  This was further borne out by the outcome of the certification motion in the later filed cases in *Mares* and *McKinsty*, where this Court thrice denied certification of the claims asserted.  Moreover, this Court also granted defense summary judgment in the *Mares* case and in the unrelated but similar *CRST* matter, wherein both sets of Plaintiffs' counsels herein were also counsel for the class therein.  For certain this case has spanned an entire decade thus far with several subsequent and related cases being unable to progress any further. (Hawkins Decl. ¶ 8).

Plaintiffs' claims involve complex and disputed legal issues and fact-specific arguments which the parties have litigated since the inception of the action. While Plaintiffs firmly believe in the strength of their claims, Defendants have strong defenses to Plaintiffs' claims, and those defenses create a possibility the claims might not be certified or fail on the merits.  Indeed,  *Id*.

The Plaintiff's claims on behalf of the class against Defendant centered around whether Defendants paid all wages, provided duty free meal periods, permitted and authorized rest periods, and resultant penalties.  (Hawkins Decl., ¶¶ 11-14; [Dkt Nos. 193, 197 and 202].

As discussed and analyzed thoroughly in the motion for preliminary approval [Dkt No. 197], supplemental briefing [Dkt No. 193] and Reply to Objections [Dkt. No. 202], the Settlement provides Class Members immediate relief, after nine years of litigation,

8

Memorandum of Points & Authorities ISO Motion for Order Granting Final Approval of Class Action Settlement - Case No. CV10-00809-VAP-OP

while avoiding further significant legal and factual obstacles that otherwise may prevent them from obtaining any recovery at all.  Indeed, as noted above, certification of this and two other similar classes has been denied on three separate occasions, summary judgment motions on key issues have been granted in favor of the defendant, and critical claims have now been subjected to federal agency intervention through the recent determinations of the Federal Motor Carrier Safety Administration (FMCSA) declaring meal and rest breaks to be preempted by federal law, and therefore class certification, trial and any attendant appeals, are inherently uncertain.

Aside from the attacks on the merits of the Plaintiffs' claims, Defendant also asserted that Plaintiffs' meal and rest break and wage/hour claims may be subject to federal preemption based on the December 21, 2018 Federal Motor Carrier Safety Administration ("FMCSA") granting the American Trucking Association ("ATA") petition finding that California's meal and rest break laws are preempted under 49 U.S.C. 31141. (Section 31141 for property-carrying commercial drivers that are covered by the Department of Transportation ("DOT")).  On March 22, 2019, the FMCSA issued a clarifying decision stating that its December 21, 2018 decision "precludes courts from granting relief pursuant to the preempted State law or regulation at any time following issuance of the decision, regardless of whether the conduct underlying the lawsuit occurred before or after the decision was issued, and regardless of whether the lawsuit was filed before or after the decision was issued." If such regulations pass judicial scrutiny at the 9th Circuit or U.S. Supreme Court, as to which several appeals are already occurring, those claims would immediately be worthless.

This case also has the potential to impose enormous litigation costs on all of the parties, as Defendant is expected to continue challenging Plaintiffs' allegations.  Although it is difficult to foresee the ultimate result of a trial, we anticipate an expensive, complex and time-consuming process.  We foresee the possibility of a lengthy and costly appeal regardless of the outcome of trial given the ever changing legal landscape governing this case.

Proceeding with litigation would impose a significant risk of no recovery for the Class. The PAGA claim for penalties was dependent on the success of the underlying claims, and, even if successful, the amount of penalties was also uncertain as the Labor Code permits Courts the discretion to decide the amount of penalties awarded, if any, which sometimes has been nominal. Plaintiffs and Class Counsel have given serious consideration to all facts and arguments they face in this matter and have ensured a reasonable and realistic settlement value based upon the discovery, case law, the related case litigation and procedures, and the analysis of the overall strengths and weaknesses of Plaintiffs' class claims. If Settlement were not achieved, continued litigation would take substantial time and possibly confer no benefit on Class Members. There were many hurdles Plaintiffs will have to navigate to obtain class-wide relief. By contrast, the Settlement will yield a prompt, certain, and substantial recovery for Class Members, which also benefits the Parties and the Court. (Hawkins Decl. ¶¶ 11-14.)

In light of these uncertainties, the Parties agreed to a compromise of a very reasonable non-reversionary settlement of $7,250,000. This recovery is certain and substantial for absent Class Members.

## 2. The Stage of Proceedings and Extent of Discovery Support Settlement

As shown by the litigation and discovery histories detailed in the Motion for Preliminary Approval, [Dkt. Nos. 193, 197, 202] and incorporated by this reference, the Parties thoroughly investigated and evaluated the case and engaged in sufficient investigation and discovery to support the Settlement. The discovery enabled the parties to have a clear view of the strengths and weaknesses of their cases sufficient to support the Settlement. *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979).

With extensive exchange of discovery completed and analyzed, and the mediation with experienced wage and hour class action mediator, the procedural history of these cases support Settlement. (Hawkins Decl. ¶ 7.)

10

Memorandum of Points & Authorities ISO Motion for Order Granting Final Approval of Class Action Settlement - Case No. CV10-00809-VAP-OP

### 3.     The Experience and Views of Counsel

"Great weight" is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation…This is because 'parties represented by competent counsel are better positioned than courts to produce a Settlement that fairly reflects each party's expected outcome in the litigation.'" (internal citations omitted) *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc*., 221 F.R.D. 523, 528 (C.D. Cal. 2004).

Class Counsel, James Hawkins APLC and Marlin and Saltzman, LLP both have significant experience in litigating wage cases, and rest and meal period cases, misclassification cases, and other wage and hour and consumer class actions and have obtained certification and settlement approval in many such cases. (Hawkins Decl. ¶ 16; Saltzman Decl. ¶¶ 2-8). Defendants' counsel are also well experienced in wage and hour law and class actions.

Experienced counsel, operating at arm's-length, have weighed the strengths of the case and examined all of the issues and risks of litigation and endorse the proposed Settlement. The view of the attorneys actively conducting the litigation "is entitled to significant weight" in deciding whether to approve the Settlement.   *Fisher Bros. v. Cambridge Lee Industries, Inc.* (E.D. Pa. 1985) 630 F.Supp. 482, 488; *Ellis v. Naval Air Rework Facility* (N.D. Cal. 1980) 87 F.R.D. 15, 18, *aff'd*. 661 F.2d 939 (9th Cir. 1981). "The recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *In re Omnivision Technologies, Inc*., (N.D. Cal. 2007), 559 F. Supp. 2d 1036, 1043, citing *Boyd v. Bechtel Corp., supra*, 485 F.Supp. 610, 622.)

Class Counsel, having prosecuted numerous wage and hour class action cases, are experienced and qualified to evaluate the Class claims and to evaluate the risks and potential outcome of further litigation and the propriety of Settlement on a fully-informed basis. *Id.*  Counsel on both sides share the view this is a fair and reasonable Settlement in light of the complexities of the case, the ever changing state of the law, and of the uncertainties of the outcome of class certification and further litigation. The

11

Memorandum of Points & Authorities ISO Motion for Order Granting Final Approval of Class Action Settlement - Case No. CV10-00809-VAP-OP

opinion of counsel in support of the proposed Settlement is based on a realistic assessment of the strengths and weaknesses of their respective cases, extensive legal and factual research and substantial discovery.  Further, the Court preliminarily deemed Class Counsel adequate. [Dkt No. 212 at p. 6, 7].

The opinion of counsel is further based on an assessment of the risks of proceeding with the litigation through trial and, if a verdict were recovered, through appeal, as compared to the value of a settlement at this time. Given the risks inherent in litigation and the defenses asserted herein, this Settlement is fair, adequate, and reasonable and in the best interests of the Class and should receive final approval.

### 4. Objections and Reaction to the Settlement

The deadline to postmark an opt out request or an objection expired on October 18, 2019.  Four (4) objections have been received by the Administrator, by Counsel for the Parties, or filed with the Court through the present and only eleven (11) Class Members timely opted out.  (Hernandez Decl. ¶¶ 13, 14).  As discussed in detail in the Defendant's response to objections and the supplemental briefing in regard to the overall settlement valuation [Dkt. No. 193], the Court has already considered and preliminarily approved the reasonableness of the overall settlement value in its August 16, 2019 order granting preliminary approval.  The absence or small number of objections supports a strong presumption of fairness and that the Settlement is fair, adequate and reasonable. *Martin v. AmeriPride Servcs*., 2011 U.S. Dist. Lexis 61796 at *21 (S.D. Cal. June 9, 2011); see also *In re: Omnivision Techs*., 559 F. Supp.2d, 1036, 1043 (N.D. Cal. 2007), ("By any standard, the lack of objection of the Class Members favors approval of the Settlement."); see also *Brown v. American Honda Motor Co., Inc*., 2010 U.S. Dist. Lexis 145475, at *49 (C.D. Cal. July 29, 2010) ("The comparatively low number of opt-outs … indicates that generally, class members favor the proposed settlement and find it fair."   The lack of objections or small number of objections provides persuasive evidence of its reasonableness. *Boyd v. Bechtel Corp*., 485 F. Supp. 610, 624 (N.D. Cal. 1979).

The Class Members have overwhelmingly embraced and approved the proposed Settlement.  Only a fraction of the Class Members objected and/or elected to opt-out. (Hernandez Decl., ¶¶ 14, 15; Hawkins Decl. ¶ 11).

Class Counsel is convinced the Settlement continues to remain fair and reasonable and is in the best interest of the Class based on a detailed knowledge of the issues presented in this action and the negotiations. The length and risks of trial and perils of litigation already suffered in this action and in related actions, that affect the value of the claims were all carefully weighed. In addition, the affirmative defenses asserted by Defendants, the denial of class certification,  in this matter and related matters, as well as summary judgment to certain claims in Defendants' favor, the difficulties of complex litigation, the lengthy process of establishing specific damages and various possible delays and appeals, were also carefully considered by Class Counsel in arriving at the proposed Settlement. (Hawkins Decl. ¶¶ 6-14). Class Counsel respectfully requests the Court find the proposed Settlement to be fair, adequate and reasonable and grant final approval and enter final judgment accordingly.

## V.   THE COURT SHOULD APPROVE THE REQUESTED ATTORNEYS' FEES AND LITIGATION EXPENSES AND THE CLASS REPRESENTATIVE ENHANCEMENT PAYMENTS

### A.    A Percentage Fee Award is Warranted

In a diversity action such as this under the Class Action Fairness Act, federal courts apply state law to determine both the right to fees and the method of calculating them. *See Vizcaino v. Microsoft Corp*., 290 F.3d 1043, 1047 (9thx Cir. 2002); *Mangold v. California Public Utils. Comm'n*, 67 F.3d 1470, 1478 (9th cir. 1995); *Emmons v. Quest Diagnostics Clinical Labs., Inc.*, 2017 U.S. Dist. LEXIS 272249 (E.D. Cal. 2017).

The California Supreme Court recently affirmed that trial courts properly grant attorneys' fees in a common fund case based on a percentage of the recovery. *Laffitte v. Robert Half International, Inc.*, 1 Cal.5th 480, 503 (2016). A fee award based on a percentage of the common fund recovery here is proper as it spreads the attorneys' fees among all beneficiaries of the fund, aligns the incentives between Plaintiffs' counsel and

13

Memorandum of Points & Authorities ISO Motion for Order Granting Final Approval of Class Action Settlement - Case No. CV10-00809-VAP-OP

the Class, is a better approximation of the market conditions in a contingency case, and encourages class counsel to seek early settlement and avoid unnecessarily prolonging the litigation. *Id*. The Court also approved the use of a lodestar cross-check at the option of the trial court to double check "the reasonableness of the percentage fee through a lodestar calculation." *Id*. at 504.

Given that the Supreme Court declined to adopt a 25% benchmark, it would seem that such a benchmark should no longer apply in federal court, either, in cases in which California law governs the fee motion. In *Vizcaino,* the lead Ninth Circuit decision adopting the 25% benchmark, both the claims and the fee motion were governed by Washington law, and the Ninth Circuit relied on a Washington Supreme Court decision in which a 25% benchmark was adopted. *Vizcaino*, 290 F.3d at 1047 (citing *Bowles v. Dep't of Ret. Sys.,* 847 P.2d 440, 451 (Wash. 1993)). After *Laffitte*, there is no reason for the Ninth Circuit to continue to apply this benchmark in cases governed by California law where this Court sits.

With the guiding principle that even early class action settlements are favored and may not diminish an award of attorneys' fees, Class Counsel submits the $2,416,666.67 fee request should be awarded, in light of the substantial hours expended to achieve this result, the litigation risks and complexities of prosecuting these types of cases, the contingent nature of any fee, their experience in handling cases of this type, the fees commonly awarded in these cases, and the vindication of the Class' rights.

To the extent these state law claims can be measured against the Ninth Circuit benchmark, the payment of back wages and increased post-settlement wages to Class Members, among other facts, support an upward departure from a 25% fee award. Indeed, *Robert Half* recognized the Ninth Circuit's 25% benchmark but did not adopt a benchmark for awarding common fund attorney fees under California law. *Laffitte v. Robert Half Internat., Inc., supra*, 1 Cal.5th at 495, 503-06.

The Ninth Circuit common fund principles also support a percentage award here. This common fund doctrine applies when: (1) the class of beneficiaries is sufficiently

identifiable; (2) the benefits can be accurately traced; and, (3) the fee can be shifted with some exactitude to those benefitting. *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 271 (9th Cir. 1989). These criteria are easily met when each member of the class has an "undisputed and mathematically ascertainable claim" to part of a lump-sum settlement recovered on his behalf. *Id.* at 271, *citing Boeing*, 444 U.S. at 479. These factors are met here.

First, the class of beneficiaries is identifiable. The Parties identified 19,544 members of the Class from Defendants' employment records and provided the Court-approved Notice to them. Second, the benefits are easily traceable. The benefits consist entirely of monetary payments to each Class Member upon final approval of the Settlement. Each Class Member has an "undisputed and mathematically ascertainable claim" to a share of the Settlement based on the earned compensation over the class period. Third, the fee can be precisely shifted because it is a specific percentage of the Settlement benefit each Class Member receives.

Historically, attorneys' fee awards have ranged from 20% to 50% of the total settlement, depending on the circumstances of the case. *Newberg on Class Actions*, § 15:83. Though the Ninth Circuit established a "benchmark" fee of 25% in common fund cases, the exact percentage varies depending on the facts of the case and, in "most common fund cases, the award exceeds that benchmark." *Vasquez v. Coast Valley Roofing, Inc.* 266 F.R.D. 482, 491 (E.D. Cal. 2010); *In Re Activision Sec. Litig.* 723 F. Supp. 1373, 1377 (N.D. Cal. 1989) ("[a] review of recent reported cases discloses that nearly all common fund awards range around 30%"); *In Re Omnivision Techs.*, 559 F. Supp.2d 1036, 1047.

District courts in California have held the percentage method is far preferable to the lodestar method because: (1) it aligns the interests of Class Counsel and the Class; (2) it encourages efficient resolution of the litigation by providing an incentive for early, yet reasonable, settlement; *and*, (3) it reduces the demands on judicial resources. *In Re Oracle Secs. Litig.*, 131 F.R.D. 688, 689 (N.D. Cal. 1990) (Walker, J.) (noting the

lodestar method has been "thoroughly discredited by experience"); *In Re Activision Secs. Litig.*, 723 F.Supp. 1373, 1375, 1378-79.

Accordingly, Plaintiff seeks a percentage award of 33-1/3% of the GSA.

### B. One-Third of the Common Fund Is a Reasonable Fee

"In common fund cases, attorneys whose compensation depends on their winning the case must make up in compensation in the cases they win for the lack of compensation in the cases they lose." *Vizcaino v. Microsoft Corp., 290 F.3d at 1051.*

Some courts have found that an award of 33% of a common fund represents the "benchmark" when applying California law in diversity cases. *Smith v. CRST Van Expedited, Inc.*, 10-CV-1116-IEG WMC, 2013 WL 163293, at *5 (S.D. Cal. Jan. 14, 2013) ("These percentages compare favorably with both California (33%) and federal (25%) benchmarks."); *Dennis v. Kellog Co.*, 09-CV-1786-L WMC, 2013 WL 6055326, at *7 (S.D. Cal. Nov. 14, 2013).

Several studies have found the median common fund fee award is approximately one-third of the total settlement fund. See, e.g., *Chavez v. Netflix, Inc.* 162 Cal. App. 4th 42, 66, n. 11 (2008) (numerous studies show "fee awards in class actions average around one-third of the recovery."); Reagan W. Silber and Frank E. Goodrich, Common Funds and Common Problems: Fee Objections and Class Counsel's Response, 17 Rev. Litig. 525, 546 (1998); T. Willing, L. Hooper and R. Niemic, Empirical Study of Class Actions in Four Federal District Courts: Final Report to the Advisory Committee on Civil Rules, 90 (1996) (finding attorneys' fees in class litigation "were generally in the traditional range of approximately one-third of the total settlement").

Attorneys' fees in the amount of 33-1/3% or more of the common fund are commonly awarded in the Central District. *Karapetyan v. ABM Indus., No. 2:15-cv-08313-GW-E, 2015 U.S. Dist. LEXIS 24210 (C.D. Cal. Sept. 7, 2017)* (awarding 33-1/3% in $5,000,000 wage and hour class action); *Aguirre v. Genesis Logistics, Inc., No. 8:12-cv-00687-JVS-KES, 2014 U.S. Dist. LEXIS 184617 (C.D. Cal. Nov. 29, 2017)* (awarding 33-1/3% in $7,000,000 wage and hour class action); *Grillo v. Key Energy Services, LLC*,

16

Memorandum of Points & Authorities ISO Motion for Order Granting Final Approval of Class Action Settlement - Case No. CV10-00809-VAP-OP

No. 2:14-cv-000881-AB-AGR, 2017 U.S. Dist. LEXIS 42682 (C.D. Cal. Oct. 13, 2017) (awarding 33-1/3% in $3,000,000 wage and hour class action); and *Shiferaw v. Sunrise Senior Living Management, Inc., No. 2:13-cv-02171-JAK-PLA, 2016 U.S. Dist. LEXIS 187548 (C.D. Cal. Jul. 17, 2017)* (awarding 33-1/3% in $2,180,000 wage and hour class action).

Class Counsel's request for attorneys' fees of one-third of the GSA, is justified under the facts of this case for undertaking complex, risky, expensive and time-consuming litigation on a contingency fee basis. *In re Pacific Enterprises Security Litigation*, 47 F.3d 373, 379, (1995 U.S. App. LEXIS 2330); *In re Activision Securities Litigation*, 723 F. Supp. at 1375.

Class Counsels' expertise in class actions weighed heavily in obtaining a benefit to each member of the Class. After extremely extensive litigation, specifically in the Burnell action although also to a fair extent in the Rudsell action, and after certification was moved for, fully briefed, argued and ultimately denied by this Court, and Rule 23f review was denied, settlement negotiations were finally entered into.  In addition, the Burnell action involved motions for Judgment on the Pleadings as to critical issues, and those too were fully briefed.  Additionally, 7 comprehensive PMK depositions were taken in the Burnell action, the plaintiffs therein were deposed (Suacillo was twice deposed), and third party witnesses were also deposed.  Thus, settlement negotiations followed the Parties' exchange of substantial discovery on merits and class discovery, all of the above listed motions and the certification briefing and ruling.

Given the complexities and uncertainties of continuing to litigate these cases following certification denials in several matters, as well as summary adjudications in Defendants' favor on several issues, the requested fees are warranted. "Indeed, one purpose of the percentage method is to encourage early settlements by not penalizing efficient counsel, ensuring that competent counsel continue to be willing to undertake risky, complex, and novel litigation." Manual for Complex Litigation (Fourth), § 14.121, p. 193.

17

Memorandum of Points & Authorities ISO Motion for Order Granting Final Approval of Class Action Settlement - Case No. CV10-00809-VAP-OP

This is not a case where a substantial settlement and a recovery of a large attorneys' fee was a foregone conclusion. *See Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338-339 (1980) (recognizing the importance of a financial incentive to entice qualified attorneys to devote their time to complex, time-consuming cases in which they risk nonpayment). In light of the risks of loss at any stage of this litigation, i.e., denial of Rule 23 certification as here, an unfavorable result on the merits of a summary judgment or at trial and/or appeal, the recovery for the Class, or attorneys' fees, was never a foregone conclusion.  In fact, it was placed in total jeopardy by the Court's rulings described above.

### C.   Ninth Circuit Factors for Evaluating Reasonableness of the Fee Request

Whether the Court uses the common fund or the lodestar method, the main inquiry is whether the end result is reasonable. *Powers v. Eichen*, 229 F.3d 1249, 1258 (9th Cir. 2000). The Ninth Circuit has articulated five factors as pertinent criteria for evaluating the reasonableness of a fee request: (1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of the work; (4) the contingent nature of the fee and the financial burden carried by the Plaintiffs; and (5) awards made in similar cases. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002).

### 1.   The Results Achieved Support the Fee Request

The most critical factor to be considered in granting a fee award is the success obtained. *In re Heritage Bond Litig. v. U.S. Trust Co. of Tex., N.A.*, No. 02-ML-1475 (RCx), 2005 U.S. Dist. LEXIS 13627, at *27 (C.D. Cal. June 10, 2005) (*citing Hensley v. Eckerhart*, 461 U.S. 424 (1983)). In the face of the uncertainties associated with continued litigation on Plaintiffs' claims, and Defendant's vigorous denials and affirmative defenses, there is no question but that the results achieved are more than fair, adequate and reasonable to the Class. Class Counsel successfully negotiated a common fund of $7,250,000 (inclusive of attorneys' fees and costs) for Class Members who were unlikely to have ever received any compensation or redress.

A Settlement must not be judged against a speculative measure of what might

have been achieved, nor does the settlement have to provide 100% of the damages to be fair and reasonable. *Linney v. Cellular Alaska Pshp*, 151 F.3d 1234, 1242 (9th Cir. 1998), *In re Mego Fin. Corp. Sec. Litig*., 213 F. 3d 454, 459 (9th Cir. 2000). When analyzing the amount offered in settlement, the court should examine "the complete package taken as a whole," and the amount is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Officers for Justice v. Civil Serv. Comm'n. of the City and County of San Francisco*, 688 F.2d 615, 625, 628 (9th Cir. 1982). The adequacy of the amount recovered must be judged as "a yielding of absolutes…Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation ..." *Id.* at 624 (citation omitted), "[I]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not ... render the settlement inadequate or unfair," *Id.* at 628. Class Counsel submits that the Settlement provides an excellent recovery for the Class and that this factor strong supports approving the fee request.

## 2. Strength of Plaintiff's Case and the Risk, Expense, Complexity and Likely Duration of Further Litigation

Plaintiffs believe in the merits of their case, but recognize the inherent risks and uncertainty of litigation and understand the benefits of providing significant payments to the Class now with denial of class certification, a risk of unfavorable appeal, an unfavorable summary judgment ruling, and other risks in complex litigation generally and this case in particular. (See Section V. E. 1, *supra*.)

## 3. The Contingent Nature of the Fee and the Financial Burden Carried

"[A]n attorney should be compensated both for services rendered and for the risk of loss or nonpayment assumed by accepting and prosecuting the case." *In re Quantum Health Resources, Inc.* 962 F. Supp. 1254, 1257 (1997).

Class Counsel undertook all of the risks of this litigation on a contingent fee basis. They accepted the risks of dispositive motions, obtaining and maintaining certification,

19

Memorandum of Points & Authorities ISO Motion for Order Granting Final Approval of Class Action Settlement - Case No. CV10-00809-VAP-OP

proving liability and damages at trial, and surviving post-trial motions and appeals. They faced the risk of litigating this case for years and spending hundreds of thousands of dollars in attorney and staff time and costs, or more, without pay or reimbursement. To meet their responsibility to the Class, Class Counsel had to assure at all times they had sufficient resources to prosecute this action.   The cases are now over nine years old.

Many contingent fee cases result in no compensation to plaintiff's counsel because cases are dismissed at the pleadings stage, lost at certification, summary judgment or after a trial on the merits, or reversed on appeal. Many hard-fought lawsuits ultimately produce no fee because of the discovery of facts unknown when the case was commenced, changes in the law while the case was pending, or decisions of judges or juries following a trial on the merits, despite the tremendous efforts by plaintiff's counsel. Here, even following denial of certification and denial of 23f relief, the Plaintiffs were still able to obtain a substantial settlement.

District Courts within the Ninth Circuit recognize that "[t]he rationale behind awarding a percentage of the fund to counsel in common fund cases is the same that justifies permitting contingency fee arrangements in general." *In re Quantum Health Resources, Inc. Sec. Litig.*, 962 F. Supp. at 1257 (citing *Skelton v. General Motors Corp.*, 860 F. 2d 250, 252 (7th Cir. 1988). "The underlying premise is the existence of risk—the contingent risk of non-payment." *In re Quantum Health Resources, Inc., supra* at 1257. Because payment is contingent upon receiving a favorable result for the class, an attorney should be compensated both for services rendered and for the risk of loss or nonpayment assumed by accepting and prosecuting the case." *Id.* (*citing*, 1 Alba Conte, Attorney Fee Awards (3d ed. 2004) § 1.09).

Unlike counsel for Defendants, who are regularly paid a fair-market hourly rate, Class Counsel received no compensation for their services for over nine years and have received no reimbursement of the expenses required to prosecute this case. The contingent nature of the representation, and the risks of this litigation, fully warrant judicial approval of the fee request.

20

Memorandum of Points & Authorities ISO Motion for Order Granting Final Approval of Class Action Settlement - Case No. CV10-00809-VAP-OP

### 4.   Awards in Similar Cases

The requested fee falls in the mid-range of common fund fee awards, which range from 20% to 50%, and is fair compensation for undertaking complex, risky, expensive, and time-consuming litigation.

Courts often look to fees awarded in comparable cases to determine if the fee requested is reasonable. *Vizcaino*, 290 F.3d at 1050 n.4. In analogous wage and hour lawsuits and settlements, the Central District Courts have awarded attorneys' fees in amounts equal to or greater than Class Counsel's fee request. Hawkins Decl. ¶ *Karapetyan v. ABM Indus.*, No. 2:15-cv-08313-GW-E, 2015 U.S. Dist. LEXIS 24210 (C.D. Cal. Sept. 7, 2017) (awarding 33-1/3% in $5,000,000 wage and hour class action); *Aguirre v. Genesis Logistics, Inc.*, No. 8:12-cv-00687-JVS-KES, 2014 U.S. Dist. LEXIS 184617 (C.D. Cal. Nov. 29, 2017) (awarding 33-1/3% in $7,000,000 wage and hour class action); *Grillo v. Key Energy Services, LLC*, No. 2:14-cv-000881-AB-AGR, 2017 U.S. Dist. LEXIS 42682 (C.D. Cal. Oct. 13, 2017) (awarding 33-1/3% in $3,000,000 wage and hour class action); *Shiferaw v. Sunrise Senior Living Management, Inc.*, No. 2:13-cv-02171-JAK-PLA, 2016 U.S. Dist. LEXIS 187548 (C.D. Cal. Jul. 17, 2017) (awarding 33-1/3% in $2,180,000 wage and hour class action); *Boyd v. Bank of America Corp.*, 2014 U.S. Dist. 162880 at *22 (C.D. Cal., Nov. 18, 2014) (awarding 33-1/3% in $5,800,000 wage and hour class action); and *Taylor v. Shippers Transp. Express, Inc.*, No. CV1302092BROPLAX, 2015 WL 12658458, at *17 (C.D. Cal. May 14, 2015) (awarding one-third of the $11,040,000 gross settlement amount in a wage and hour class action).

If this were individual litigation, the customary fee arrangement would be one-third to 40% of the recovery[5].   Class Counsel's fee request is in line with, if not lower than, awards in similar cases. This factor also supports Class Counsel's fee request.  See Section VI.B., *supra*.

---

[5] Plaintiffs each signed a retainer agreement providing for an attorneys' fee of 33-1/3% of any recovery achieved.

### 5.     The Reaction of the Class Supports the Fee Request

District courts in the Ninth Circuit may also consider the reaction of the Class when deciding whether to award the requested fee. *In Re Heritage Bond*, 2005 U.S. Dist. LEXIS 13627, at *48 ("The presence or absence of objections from the class is also a factor in determining the proper fee award."). Here, the Notice stated the total amount the Class, and each member, would receive in settlement, Class Counsel's intention to request 1/3 of the GSA in attorneys' fees, and provided the manner and deadline to file objections. At the close of the deadline, not a single Class Member had objected to this request. (Hernandez Decl., ¶ 12). The absence of objections specifically to the fee request supports the fee request.

### D.     Although Not Required, Class Counsel's Fee Request is Reasonable when Cross-Checked With the Lodestar

Class Counsel seek approval of a fee on a percentage of the common fund recovery, not a lodestar. While a percentage fee may be cross-checked against a lodestar increased by a risk multiplier, courts are not required to engage in this exercise, and many California district courts decline to do so. See, e.g., *Glass v. UBS Financial Services, Inc.*, No. 06-4066-MMC, 2007 WL 221862 (N.D. Cal. Jan. 26, 2007) (finding "no need to conduct a lodestar cross-check [as] [c]lass counsel's prompt action in negotiating a settlement while the state of the law remained uncertain should be fully rewarded"); *Lopez v. Youngblood*, No. 07-0474-DLB, 2011 WL 10483569 (E.D. Cal. Sep. 2, 2011) ("A lodestar cross-check is not required in this circuit, and in a case such as this, is not a useful reference.")

Where the cross-check is used, the "calculation need entail neither mathematical precision nor bean-counting" and is not intended to be a "full-blown lodestar inquiry." "Where the use of the lodestar method is used as a cross-check, it can be performed with a less exhaustive cataloguing and review of counsel's hours." *Barbosa v. Cargill Meat Solutions Corp*, 297 F.R.D. 431, 451 (E.D. Cal. July 2, 2013).

The lodestar method is calculated by multiplying the number of hours reasonably

22

expended on the litigation by a reasonable hourly rate.  *Staton*, 327 F.3d at 965. A reasonable hourly rate is the prevailing rate charged by attorneys of similar skill and experience in the relevant community. *PLCM Group, Inc. v. Drexler,* 22 Cal. 4th 1084, 1095 (2000); *Hopson v. Hanesbrands Inc.*, 2009 U.S. Dist. LEXIS 33900 (N.D. Cal. Apr. 3, 2009).

Class Counsel have hours of attorney and para-professional time prosecuting the case  resulting in a lodestar fee of $2,164,347.83. The hours expended were reasonable in light of the complexity of the litigation. (Hawkins Decl. ¶ 23-25, Exh. 2; Saltzman Decl. ¶ 9; David Spivak Declaration ¶ 15; Shaun Setareh Decl. to be supplemented).

### 1.     Class Counsel's Hourly Rates Are Reasonable

Class Counsel is entitled to hourly rates charged by attorneys of comparable experience, reputation, and ability for similar litigation. *Ketchum v. Moses*, 24 Cal.4th 1122, 1133 (2001); Children's *Hospital and Med. Center v. Bonta*, 97 Cal. 4th 740, 783 (2002) (affirming rates that were "within the range of reasonable rates charged by and judicially awarded comparable attorneys for comparable work"). When determining a reasonable hourly rate, Courts may consider factors such as the attorney's skill and experience, the nature of the work performed, the relevant area of expertise and the attorney's customary billing rates. *Flannery v. California Highway Patrol*, 61 Cal. App. 4th 629, 632 (1998). Prior determinations of counsel's rates are strong evidence of their reasonableness. *See Margolin v. Regional Planning Commission*, 134 Cal.App.3d 999, 1005 (1982).

Class Counsel's skill and experience support their hourly rates, ranging from $800 to $925, which are in line with rates typically approved in wage and hour class action litigation in California and have been specifically approved by numerous state and federal courts in California. Plaintiff's Counsel's practice is limited exclusively to litigation, focusing on the representation of employees and consumers in wage and hour and consumer class action matters and have been appointed Class Counsel or co-Class Counsel in many of these cases. (Hawkins Decl. ¶ 16; Saltzman Decl. ¶¶ 3-8). Plaintiffs'

counsel continually monitors the prevailing market rates charged by both defense and plaintiff law firms and set the billing rates of their attorneys and paralegals/law clerks to follow the prevailing market rates in the private sector for attorneys and staff of comparable skill, qualifications and experience.

### 2.    Class Counsel's Total Hours are Reasonable

Hours are reasonable if "at the time rendered, [they] would have been undertaken by a reasonable and prudent lawyer to advance or protect his client's interest." *Moore v. Jas. H. Matthews & Co.*, 682 F.2d 830, 839 (9th Cir. 1982). "[T]he standard is whether a reasonable attorney would have believed the work to be reasonably expended in pursuit of success at the point in time when the work was performed." *Wooldridge v. Marlene Industries Corp.*, 898 F.2d 1169, 1177 (6th Cir. 1990); *see also*, *Norman v. Housing Auth.*, 836 F.2d 1292, 1306 (11th Cir. 1988) ("The measure of reasonable hours is determined by the profession's judgment of the time that may be conscionably billed and not the least time in which it might theoretically have been done"). The time spent by Class Counsel on this litigation was necessary, reasonable, and non-duplicative.

### 3.    Multiplier

Where a fee must be based on lodestar, a court may adjust it upward by using a positive multiplier to reflect "reasonableness" factors, including: (1) quality of representation, (2) class benefits, (3) complexity and novelty of issues presented, and (4) risk of nonpayment. *In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 941-42 (9th Cir. 2011). "Multipliers can range from 2 to 4 or even higher." *Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 255 (2001). Here, based on the hours worked, Plaintiffs request a modest multiplier of 1.12.

### E.    Class Counsel's Litigation Expenses Should be Reimbursed

"There is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation expenses from that fund." *West v. Circle K Stores, Inc.*, No. Civ. S-04-0438, 2006 U.S. Dist. LEXIS 76558, at *25 (E.D. Cal. Oct. 19, 2006).

24

Memorandum of Points & Authorities ISO Motion for Order Granting Final Approval of Class Action Settlement - Case No. CV10-00809-VAP-OP

Class Counsel incurred costs of $67,551.61 to successfully prosecute this Action. (Hawkins Decl. ¶ 26, Exh. 3; Saltzman Decl. ¶ 10, Exh. 2; Spivak Declaration ¶ 16, Exh. 1).  These expenses were incidental and necessary to the effective representation of the Class. *See Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994); *In Re DJ Orthopedics, Inc. Secs. Litig.*, No. 01-CV-2238-K (RBB), 2004 U.S. Dist. LEXIS 11457, at *21 (S.D. Cal. June 21, 2004). These costs were incurred for such things as filing fees for pleading and motions,  service of process, , copying, postage, messenger services, mediation fees, preparing for and participating in mediation, travel, attorney service fees, etc. *Id*.

### F.    The Class Representative Enhancement Payments Are Reasonable

A district court may award enhancement payments to named plaintiffs in class actions. *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009). The purpose of incentive awards is to "compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaking in bringing the action, and sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958-59.

Subject to this Court's approval, Class Counsel requests the modest sums of $5,000 each to be awarded to Plaintiffs for their commitment to prosecuting this Action, their efforts, risks undertaken for the payment of attorneys' fees and costs if the action had been lost, general releases of all claims arising from their employment, stigma upon future employment opportunities for having sued a former employer, as well as the recoveries for every Settlement Class Member, who if not for the settlement, would have received nothing, and benefits to current and future employees. *See generally*, Declarations of Plaintiffs Saucillo and Rudsell filed in support of the motion for final approval filed concurrently herewith.

### G.    The Administration Expenses Are Reasonable

Class Counsel also seeks payment of $100,000 to ILYM Group, Inc., the appointed Administrator. (Hernandez Decl. ¶ 15). The Hernandez Declaration details the extensive work the Administrator performed and will continue to perform following

25

Memorandum of Points & Authorities ISO Motion for Order Granting Final Approval of Class Action Settlement - Case No. CV10-00809-VAP-OP

final approval to calculate settlement payment awards, print and mail settlement payment checks, tax reporting to the appropriate agencies, and to respond to inquiries. See Hernandez Declaration. The requested amount is fair and reasonable and should be awarded.

## VII.   CONCLUSION

Class Counsel respectfully requests the Court to grant final approval of the proposed Settlement, and to award the Class Representative Service Awards, Class Counsels' attorneys' fees and litigation expenses, the PAGA Payment, and the Administrator's expenses, in the requested amounts.

Respectfully submitted,

Dated: November 18,  2019          **JAMES HAWKINS, APLC**
**MARLIN & SALTZMAN, LLP**
**LAW OFFICES OF SHAUN SETAREH**

By:  /s/ Gregory Mauro
James Hawkins, Esq.
Attorneys for Plaintiffs